Brent O. Hatch (5715)
  bhatch@hjdlaw.com
Shaunda McNeill (14468)
  smcneill@hjdlaw.com
Hatch, James & Dodge, P.C.
10 West Broadway, Suite 400
Salt Lake City, Utah 84101
Telephone: (801) 363-6363
Facsimile:  (801) 363-6666

I. Neel Chatterjee (*pro hac vice*)
  nchatterlee@orrick.com
Alyssa Caridis (*pro hac vice*)
  acaridis@orrick.com
Frances Cheever (*pro hac vice*)
  fcheever@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, California  94025

Alex V. Chachkes (*pro hac vice*)
  achachkes@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
51 West 52nd Street
New York, NY 10011

Attorneys for Defendants

DISH NETWORK L.L.C, DISH NETWORK CORP.,
ECHOSTAR CORP., AND ECHOSTAR TECHNOLOGIES L.L.C.

**UNITED STATES DISTRICT COURT**
**District of Utah Central Division**

| | |
|---|---|
| CLEARPLAY, INC.,<br><br>                              Plaintiff<br><br>vs.<br><br>DISH NETWORK LLC, DISH NETWORK CORP., ECHOSTAR CORP., and ECHOSTAR TECHNOLOGIES LLC.,<br><br>                              Defendants. | **DEFENDANTS' REPLY TO PLAINTIFF'S RESPONSE TO MOTION FOR STAY PENDING INTER PARTES REVIEW**<br><br>Case No.:2:14-cv-00191<br><br>**Judge David Nuffer** |

Defendants DISH Network L.L.C., DISH Network Corp., EchoStar Corp., and EchoStar Technologies L.L.C. (all four, collectively, "Defendants") submit this reply to Plaintiff ClearPlay Inc.'s ("ClearPlay" or "Plaintiff") Response to Defendants' Motion for Stay Pending Inter Partes Review ("Response"). Defendants respectfully request that the Court stay this lawsuit pending resolution of the *inter partes* review (IPR) proceedings covering the patents-in-suit.

## INTRODUCTION

Three of ClearPlay's five patents – the '318, '282 and '784 patents – are currently subject to *inter partes* review by the Patent Trial and Appeals Board ("PTAB"). This, alone, warrants staying the pending patent infringement action. Courts frequently stay patent infringement litigations where fewer than all the patents-at-issue are subject to review, given the profound impact that Patent Office review can *and usually does* have on the scope of the patents being reviewed. It is highly probably that the patents ClearPlay has put at issue in this case will not have the same scope or claims after PTAB review. Waiting until the parties know what this case is about is the appropriate, and economical, course of action.

ClearPlay does not dispute any of the foregoing. Rather, ClearPlay argues against a stay because the claims of one of its patents – the '970 patent – survived review. But the conclusion of the '970 review does not preclude the review of the '318, '282, and '784 patents from being informative to this Court. In fact, quite the opposite is true. During the course of the IPRs (including the '970 IPR), ClearPlay made arguments to the PTAB about the scope of the ClearPlay patents in order to avoid prior art. These arguments are binding on ClearPlay in this litigation and materially affect ClearPlay's ability to allege that Defendants infringe. Furthermore, during the IPR, the PTAB issued claim constructions of certain terms of the '970 patent, using the "broadest reasonable construction standard" (a standard more friendly to ClearPlay than in federal court). The PTAB's constructions will be instructive to this Court during *Markman*. And even using the PTAB's broad constructions, Defendants would not infringe the claims of the '970

1

patent. Thus, it is reasonable to assume that the review by the PTAB of the remaining three patents at issue here might eliminate ClearPlay's claims, and will at least narrow those claims.

ClearPlay also suggests that Defendants could have brought their stay motion earlier. ClearPlay, however, ignores that Defendants did not file the requests for review, other entities not parties here did. The IPRs at issue here were instituted in July and August of this year. By October, it was clear that the reviews would have a substantial impact on the analysis and claims at issue in this case and Defendants moved for a stay.

In sum, this is a case whose very scope and viability depends on the results of the Patent Office's review of ClearPlay's patents. The review of the '970 patent has already shown this. A stay will prevent the expenditure of unnecessary and counterproductive litigation costs and conserve judicial resources.

## ARGUMENT

A stay is warranted. The early stage of the case favors a stay, and ClearPlay has not demonstrated that a stay would cause undue prejudice. Although the claims of the '970 patent survived review, the remaining IPRs are still likely to simplify the issues in this case.

### A. A Stay Will Likely Simplify or Eliminate the Issues Before the Court

In analyzing whether a stay will simplify issues, Courts do not require that IPRs be capable of disposing of the case *entirely*. Rather, they look to whether the IPRs "could make this litigation simpler and more efficient." *Intellectual Ventures II LLC v. Commerce Bancshares, Inc.*, No. 2:13-CV-04160-NKL, 2014 WL 2511308, at *3 (W.D. Mo. June 4, 2014).

#### 1. The Claims Are Reasonably Likely to Be Canceled or Amended

For the three asserted patents still under review, the PTAB already determined that there is reasonable likelihood that the petitioner will succeed in challenging the validity of at least one of the claims. 35 U.S.C. § 314(a); *see also* Mot. Exs. 1-3; *see also Gioello Enterprises Ltd. v. Mattel,*

2

Case 2:14-cv-00191-DN-CMR   Document 69   Filed 12/01/14   PageID.1045   Page 4 of 10

*Inc.*, No. C.A. 99-375 GMS, 2001 WL 125340, at *2 (D. Del. Jan. 29, 2001) ("It is not for the court to second guess the PTO's decision to reassess the prior art."). Courts frequently stay patent litigation pending the PTO's review of fewer than all of the patents at issue in the litigation.[1]

ClearPlay responds that because the PTAB allowed claims of the '970 patent, it follows that the remainder of ClearPlay's claims will survive review. ClearPlay does not, however, provide any basis for its assumption. Indeed, the grounds for the PTAB's decision on the claims of the '970 patent do not apply to the patents still subject to review – nor does ClearPlay so contend. In denying the '970 IPR, the PTAB relied on the claim terms "configuration identifier" and "disabling a navigation object." *See* Resp. Ex. 1 at 10, 12-13. But this ruling has <u>no bearing</u> on 60 of the remaining 62 claims that are subject to IPR. "Configuration identifier" does not appear in any claim of the '784 or '282 patents, and appears only in two dependent claims of the '318 patent; none of the remaining claims before the PTAB involves the "disabling a navigation object" term. Thus, save two of the 62 challenged claims, the PTAB's analysis of the validity of the remaining patents cannot be affected by its analysis of the '970 patent.

---

[1] *Intellectual Ventures II LLC v. Commerce Bancshares, Inc.*, No. 2:13-CV-04160-NKL, 2014 WL 2511308, at *3 (W.D. Mo. June 4, 2014); *Robert Bosch Healthcare Sys., Inc. v. Cardiocom*, LLC, No. C-14-1575 EMC, 2014 WL 3107447, at *5 (N.D. Cal. July 3, 2014) ("Even though not all claims are in IPR, the value of simplification still obtains."); *Destination Maternity Corp. v. Target Corp.*, 12 F. Supp. 3d 762, 769 (E.D. Pa. 2014) ("courts have found significant potential for issue simplification even in cases where some but not all of the asserted claims are subject to PTO review"); *Bonutti Skeletal Innovations, L.L.C. v. Zimmer Holdings, Inc.*, No. 12-CV-1107 (GMS), 2014 WL 1369721, at *5 (D. Del. Apr. 7, 2014) (granting stay when four out of six patents-in-suit were the subject of *inter partes* review petitions); *Neste Oil OYJ v. Dynamic Fuels*, LLC, No. CV 12-1744-GMS, 2013 WL 3353984, at *5 (D. Del. July 2, 2013) ("while the court recognizes that this case likely presents certain questions that simply cannot be addressed through *inter partes* review, it notes that the 'issue simplification' factor does not require complete overlap"); *Microsoft Corp. v. Tivo Inc.*, No. 10-CV-00240-LHK, 2011 WL 1748428, at *5 (N.D. Cal. May 6, 2011) (the "fact that the PTO will likely modify or cancel many of the claims at issue . . . will simplify the litigation even if it does not fully resolve it"); *KLA-Tencor Corp. v. Nanometrics, Inc.*, No. C 05-03116 JSW, 2006 WL 708661, at *4 (N.D. Cal. Mar. 16, 2006) ("even though the PTO has not determined yet whether it will reexamine the '330 patent, a stay of the entire suit is warranted because the reexamination of the '580 and '656 patents may significantly affect the litigation of the '330 patent").

Moreover, ClearPlay has already informed the PTAB that it anticipates amending one or more of claims of the '282 patent as part of the IPR process. *See* Ex. 1. Proceeding with this case while ClearPlay intends to modify some of its claims would be prejudicial to Defendants. *Lifetime Products, Inc. v. Russell Brands, LLC*, No. 1:12-CV-26 DN, 2013 WL 5408458, at *3 (D. Utah Sept. 25, 2013) ("if the case is not stayed, [defendant] may suffer prejudice from participating in claims construction while the underlying prosecution history of each of the Patents is changing").

### 2. The IPRs Have Already Supplied Binding Arguments and Narrowing Analysis

As noted above, the PTAB's recent Final Written Decision on the '970 patent was based on the third-party petitioner's failure to establish that the prior art disclosed two elements: a "configuration identifier" and "disabling a navigation object." Resp. Ex. 1 at 10, 12. To come to that decision, the PTAB gave those terms their *broadest reasonable interpretation*. *Id.* at 8, 11-12. During *Markman*, this Court can use the PTAB's ruling as guidance. *See, e.g.*, *St. Clair Intellectual Prop. Consultants, Inc. v. Canon Inc.*, 412 F. App'x 270, 275-76 (Fed. Cir. 2011) ("The reexamination procedure serves an important role in providing a district court with an expert view of the PTO"); *E.I. du Pont de Nemours & Co. v. Phillips Petroleum Co.*, 849 F.2d 1430, 1439 (Fed. Cir. 1988) (noting that statements made by the examiner during reexamination are "relevant prosecution history when interpreting claims."). And, as explained below, even if this Court were to adopt the same broad interpretations, Defendants clearly do not infringe.[2] As a result, on November 6, 2014, Defendants requested confirmation that ClearPlay is not asserting any claims with these limitations – *i.e.*, both a "configuration identifier" and "disabling a navigation object." Ex. 2. ClearPlay has not responded.

---

[2] Claim construction in federal court is narrower. Courts are instructed to give terms their ordinary and customary meaning as understood by a "person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005) (*en banc*). Thus, because the narrower standard applies here, it is conceivable that this Court would construe certain terms *more narrowly* than the PTAB.

Specifically, in the '970 IPR, the PTAB explained that a configuration identifier "identifies the hardware and software configuration of a consumer system to which the navigation object applies." *See* Resp. Ex. 1 at 8. In doing so, the PTAB relied on the description of a "configuration identifier" in the specification of the '970 patent, which states: "different consumer systems may introduce variations on how navigation objects are processed." *Id.* This is because ClearPlay's patented technology can purportedly be used on many different devices (e.g. DVD players from different manufacturers). An indication of which device is being used is therefore necessary for the technology to work. By contrast, AutoHop is designed for and used with only one consumer system—the Hopper. Ex. 3 at ¶59. As such, there has never been any need to identify hardware configurations for other consumer systems, and AutoHop has never included any feature that remotely resembles the "configuration identifier" of the '970 patent.

Similarly, the PTAB discussed "disabling of one or more of the navigation objects such that the specific filtering action specified by the disabled navigation object is ignored." *See* Resp. Ex. 1 at 11-12. That is, the PTAB interpreted claim 27 to require the disabling to ignore "a specified filtering action during playback, not at some earlier time." In other words, *during* playback of a movie, the viewer could decide to, for example, stop muting swear words (*i.e.* ignore the "mute" action). By contrast, AutoHop cannot be selectively disabled *during* a playback session of a specific program. Ex. 3 at ¶¶59-63. Either AutoHop is enabled at the beginning of a playback session, and no commercials are played during the playback of a given program, or the feature is not enabled and every commercial is played. *Id.* Thus, the PTAB's broadest reasonable construction makes it clear that the disabling step is never performed by AutoHop.

ClearPlay's own submissions during the IPR proceedings, about, for example, "navigation objects," have also narrowed the issues in this case. The term "navigation object" is central to the claims of the '799, '784, and '318 patents, as well as the '970 patent.[3] In the pending IPRs, the

---

[3] The '282 patent calls for "filtering information" that includes the same elements as the "navigation object" of the other patents.

5

PTAB construed "navigation object" to be "*information that defines* both (1) a portion of multimedia content to filter and (2) *the filtering action* to be taken on the defined portion of multimedia content." Mot. Ex. 1 at 6; Mot. Ex. 3 at 7.  (In the claims, start and stop positions are the information that defines the "portion of multimedia content to be filtered.")  In attempting to distinguish over the prior art, ClearPlay stated that "for each associated start and stop position, there must also be *information directly associated with the start and stop positions that defines how to filter the content* between the start and stop positions during playback." Ex. 4 at 15-16. This is, of course, because ClearPlay's patents discuss different types of filtering actions for different types of video segments (e.g. *muting* a swear word and *skipping* a scene of violence); the system in ClearPlay's patents needs to know what action to perform when.  Mot. Ex. 1 at 3; Mot. Ex. 2 at 3; Mot. Ex. 3 at 4; Mot. Ex. 4 at 9.  In contrast, AutoHop functions by way of a simple data structure that identifies the beginning and end of programming segments.  Ex. 3 at ¶¶67, 83-84.  There is no specific filtering action directly associated with the start and stop positions of filtered content.  Again, the reason for this is readily understood:  AutoHop only fast forwards commercials.  It has no ability to select from multiple filtering actions, and therefore no need to include a specific filtering action for any specific video segment.  Thus, ClearPlay's account of its own claims to the PTAB during review of its patents will be definitive in demonstrating in this Court that AutoHop does not infringe.  *See In re Katz Interactive Call Processing Patent Litig.*, 639 F.3d 1303, 1324–25 (Fed.Cir.2011) (holding that distinctions the patentee made over prior art during reexamination narrowed the scope of the claims); *Cheetah Omni, LLC v. Level 3 Commc'ns, Inc.*, No. 5:06CV101, 2013 WL 3865593, at *8 (E.D. Tex. July 24, 2013) ("To the extent that Plaintiff disclaimed claim scope in order to distinguish prior art during reexamination, such disclaimers should be given effect during claim construction.").

       In sum, ClearPlay's and the PTAB's statements during the review of the '970 patent will affect ClearPlay's ability to assert infringement against Defendants.  And there are still three

pending IPRs that will likely produce further statements and analysis by ClearPlay and the PTAB that will further simplify or eliminate issues before the Court.

### B. A Stay Is Warranted Because Discovery Has Only Just Begun

In addition to the high likelihood of simplification of issues, the early stage of this case weighs heavily in favor of a stay. *Microsoft Corp. v. Tivo Inc.*, No. 10-CV-00240-LHK, 2011 WL 1748428, at *6 (N.D. Cal. May 6, 2011) (weighing in favor of stay "[e]ven though the parties have exchanged initial disclosures, interrogatory responses and document discovery"). Because the parties have only conducted minimal discovery so far, the Court's grant of a stay now will maximize the litigation costs savings. *Neste Oil OYJ v. Dynamic Fuels, LLC*, No. CV 12-1744-GMS, 2013 WL 3353984, at *5 (D. Del. July 2, 2013) ("Staying a case in its early stages can be said to advance judicial efficiency and maximize the likelihood that neither the Court nor the parties expend their assets addressing invalid claims."). Indeed, ClearPlay does not dispute that this litigation is in its early stages. No contentions have been served. There has been no extensive document production. No party has noticed depositions. Nor has ClearPlay started its review of the EchoStar source code—despite the fact that EchoStar offered that code *months ago* on terms identical to its past productions. *See* Defs.' Mot. for Entry of Protective Order, Dkt. 42, at 3-4.

### C. There Is No Undue Prejudice to ClearPlay

No undue prejudice to ClearPlay would result from a stay.[4] ClearPlay argues against a stay based on how fast the review process is, claiming discovery should continue because the IPR review process may be complete before claim construction takes place. But the goal of a stay is to reduce unnecessary litigation and discovery. *See, e.g.*, *Ignite USA, LLC v. Pac. Mkt. Int'l, LLC*, No. 14 C 856, 2014 WL 2505166, at *4 (N.D. Ill. May 29, 2014) ("If the USPTO cancels, or simplifies the claims, the parties in all likelihood will have *engaged in unnecessary discovery*.")

---

[4] Even the delay associated with reexamination, which could be much longer than the one year anticipated for an IPR, does not constitute undue prejudice by itself. *Buttercup Legacy LLC v. Michilin Prosperity Co.*, No. 2:11-CV-262 TS, 2012 WL 1493947, at *1 (D. Utah Apr. 27, 2012).

(emphasis added). Defendants (and this Court) should not be subject to the costs and burdens associated with discovery when there is a significant likelihood that ClearPlay's infringement allegations will not survive the IPR proceeding (either as a result of invalidation of claims or narrowing of claim scope). Indeed, if anything, the speed of the review process weighs in favor of a stay because it will not unduly delay the resolution of this case.

Furthermore, Defendants moved for a stay as soon as it became clear to them that the IPRs would have a substantial impact on the analysis and claims at issue in this case.[5] The present IPRs were not instituted until this summer and Defendants have no connection to the parties who initiated those reviews. By the present motion, Defendants seek to reduce the burden of this litigation. This is not only a permissible objective, it is viewed by courts as a *benefit*. *See, e.g.*, *Softview Computer Products Corp. v. Haworth, Inc.*, No. 97 CIV. 8815 KMW HBP, 2000 WL 1134471, at *2 (S.D.N.Y. Aug. 10, 2000) (listing reduced costs for both the parties and the Court as one advantage of a stay). ClearPlay cites no prejudice from Defendants' alleged delay in moving for a stay, and there is none. The only material activity in which the parties have engaged in the past few months is to try to negotiate a protective order, which otherwise would have had to occur after the stay is lifted and, thus, did not undermine any efficiencies that a stay would accomplish. The parties and the Court would benefit if a stay were granted.

Finally, ClearPlay admits that it "does not directly compete with Defendants" (Resp. at 7 n.4); so a stay will not impact ClearPlay's core business. Therefore, there is no contention that a stay would cause irreparable harm. Defendants have a litigation hold in place, so the source code

---

[5] Plaintiff cites *Ever Win Int'l Corp. v. Radioshack Corp.*, 902 F. Supp. 2d 503 (D. Del. 2012) to argue that "the less time that a party waits to file a motion to stay pending reexamination, the less that the movant's conduct gives rise to an inference that the delay in so doing was impermissibly tactical." 902 F. Supp. 2d at 508. Here, as in *Ever Win*, there is no suggestion as to what that improper tactical motive might be. In *Ever Win*, the Court found no improper tactical motive when the defendant filed its requests for reexamination months after the Complaint was filed. 902 F. Supp. 2d at 508, 509. Defendants in this case have not filed any such requests, and instead timely filed their motion in response to CustomPlay's petitions. The *Ever Win* Court noted that in the two cases cited to show improper tactical motives, defendants waited *years* before filing for a stay. 902 F. Supp. 2d at 509 n.2. There has been no such delay in this case.

and other evidence will be preserved during the time of the stay. ClearPlay alleges no other undue prejudice. Under these circumstances, a stay is appropriate.

## CONCLUSION

A stay remains likely to simplify the issues before the Court even after the PTAB's decisions regarding the '970 patent. The case is still in the earliest stages of litigation, and no undue prejudice to ClearPlay will result from a stay. For these reasons, as discussed above and in Defendants' motion, Defendants respectfully request the Court stay this case in its entirety pending final resolution of the IPRs of the '784, '318, and '282 patents.

DATED this 1st day of December, 2014

By:  */s/ Brent O. Hatch*
HATCH, JAMES & DODGE, PC
Brent O. Hatch
Shaunda L. McNeil

ORRICK, HERRINGTON & SUTCLIFFE, LLP
I. Neel Chatterjee
Alex V. Chachkes
Alyssa M. Caridis
Frances S. Cheever

*Attorneys for Defendants*