Brent O. Hatch (5715)
 bhatch@hjdlaw.com
Shaunda McNeill (14468)
 smcneill@hjdlaw.com
Hatch, James & Dodge, P.C.
10 West Broadway, Suite 400
Salt Lake City, Utah 84101
Telephone: (801) 363-6363
Facsimile:  (801) 363-6666

Alex V. Chachkes (*pro hac vice*)
 achachkes@orrick.com
Briggs M. Wright (*pro hac vice*)
 bwright@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
51 West 52nd Street
New York, NY 10019

Alyssa Caridis (*pro hac vice*)
 acaridis@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
777 S. Figueroa St., Suite 3200
Los Angeles, California 90017

*Attorneys for Defendants DISH Network L.L.C. and
EchoStar Technologies L.L.C.*

---

## UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH CENTRAL DIVISION

| | |
|---|---|
| CLEARPLAY, INC.,<br><br>               Plaintiff<br><br>         vs.<br><br>DISH NETWORK L.L.C., and<br>ECHOSTAR TECHNOLOGIES L.L.C.,<br><br>               Defendants. | **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT**<br><br><br>Case No.:  2:14-cv-00191<br><br>Judge David Nuffer |

# <u>REDACTED</u>

## I.    INTRODUCTION

Defendants DISH Network L.L.C. ("DISH") and EchoStar Technologies L.L.C. ("EchoStar Technologies") (collectively, "Defendants") hereby move this Court for summary judgment of non-infringement for all patents asserted by ClearPlay, Inc. ("ClearPlay"). Defendants are entitled to summary judgment because the products accused in ClearPlay's infringement contentions lack a claim limitation present in every asserted claim—the "filtering action" in the "navigation object."

Plaintiff's patents are directed to a technology that allows users to bowdlerize third-party video content.  In other words, objectionable content is automatically removed from movies or TV shows.  ClearPlay's patents describe and claim the way to accomplish this—by creating and using something it calls "navigation objects."  "Navigation objects" are a set of precise instructions that, according to the express language of the claims, must contain three things:  a start point, a subsequent stop point, and a "*filtering action*" to be undertaken between those start and stop points (e.g., skipping or muting).  ClearPlay repeatedly emphasized this precise three-part structure of the "navigation object" in its patents.  Indeed, ClearPlay told the Patent Office—over and again—that having a "navigation object" that *expressly identifies* a "filtering action" associated with the start and stop times distinguishes its claimed invention from the prior art.

Defendants provide television services and related equipment, including the Hopper whole-home HD DVR.  A DISH subscriber with a Hopper DVR can choose to use the AutoHop feature, which will cause the Hopper DVR to automatically skip over commercial breaks during playback of certain recorded content.  A Hopper DVR uses something called Announcement files to determine where the commercials in a broadcast start and stop.  In its Final Infringement

1

Contentions, ClearPlay points to the Announcement files (and the data derived therefrom) as the "navigation object." But ClearPlay identifies *absolutely no structure* in this so-called "navigation object" that corresponds to identifying the "filtering action." Nor is there any.

Because there is no specific filtering action identified in what ClearPlay calls the "navigation object" in the Accused Products, ClearPlay's contentions use semantic sleight-of-hand to suggest this limitation is *implicitly* present. There is no principle in patent law, however, that permits a patentee to ignore a claim limitation by asserting that it is "implicit" in an accused product. Imagine, by way of analogy, a patent covering a very specific sort of clothing assembly line for *personalized* jackets, that required the assembly line to receive data specific to each jacket defining the sizing for *each* jacket. ClearPlay's allegations are as if the patentee in this hypothetical accused a one-size-fits-all assembly line that made only size 40R jackets—calling the requirement of data on the unique sizing of each jacket "implicit" because some sort of sizing occurred somewhere in the assembly line. Here, it may be true that the software somewhere in the Accused Products may execute a skip at some point. But the patents require something specific that ClearPlay does not and cannot identify. That is, a data structure (called a navigation object) that names a specific filtering action for a specific media segment defined by a start and stop time—not a data structure that is *missing* the identification of a filtering action, but where the media happens to be subject to a one-size-fits-all filtering action somewhere down the line.

Additionally, ClearPlay expressly distinguished its claims from art that, like the Accused Products here, had "start" and "stop" information for digital editing but no associated information for any filtering action. This constituted a clear and express disclaimer of the

subject matter that it cannot now reclaim. ClearPlay cannot tell the Patent Office that the "filtering action" needed to be explicit to save its patents from rejection and then come to this Court and say the exact opposite.

No question of fact exists and the Court should grant summary judgment of non-infringement.

## II.   FACTS

### A.   Asserted Patents and "Navigation Objects."

ClearPlay currently asserts four patents, all relating to bowdlerizing video content.[1]  As the '799 Patent explains, "[o]ften, movies and other multimedia content contain scenes or language that are unsuitable for viewers of some ages."  Ex. 1 at 1:14-16 (the '799 Patent). "Many consumers may prefer an alternate version of the multimedia content, such as a version that has been modified to make the content more suitable for all ages."  *Id.* 1:38-40.  The alleged invention of the Asserted Patents is meant to provide a solution by "automatically identifying and filtering portions of multimedia content during the decoding process."  *Id.* at 4:33-35.

The patents have their differences, but they all share one feature: a "**navigation object**" that includes each of the following three things:

- a starting point;

- a stopping point; and

---

[1] The application for the United States Patent No. 7,543,318 (the "'318 Patent") was filed as a continuation of the application for United States Patent No. 7,526,784 (the "'784 Patent"), and contains similar "navigation object" claim language as that in the '784 Patent.  Similarly, the application for United States Patent No. 7,577,970 (the "'970 Patent") was filed as a continuation of the application for the United States Patent No. 6,898,799 (the "'799 Patent"), and each patent contains similar "navigation object" claim language.

- **a "filtering action" to be taken between that starting and stopping point.**

The following language from an asserted claim is representative:

> In a computerized system for enabling a consumer to filter multimedia content… loading a **plurality of navigation objects** into the memory of the consumer computer system, each of which defines a portion of the multimedia content that is to be filtered by defining a start position and a stop position and a **specific filtering action to be performed on the portion of the multimedia content defined by the start and stop position for that portion**….

Ex. 2 at claim 16 (the '970 Patent) (emphasis added).  This claim, as with all asserted claims, requires a "navigation object" that contains a "filtering action."

So what is a "navigation object" and its "filtering action" in practice?  Take the example of the movie "The Nice Guys."  A "navigation object" might be directed to Ryan Gosling cursing around the 12-minute mark.  This "navigation objection" might specify:  *starting* at 12 minutes and 13 seconds, *stopping* at 12 minutes and 17 seconds, and *filtering* by muting the sound.  Or, a "navigation object" directed to a violent scene might specify:  *starting* at 67 minutes and 2 seconds, *stopping* at 71 minutes and 44 seconds, *filtering* by skipping this portion of the movie.

This is precisely what the patents say.  "The present invention includes the creation of navigation objects to define portions of multimedia content that should be filtered.  Each navigation object contains a start position, a stop position*, and a filtering action to be performed on the portion of the multimedia content* that is defined by the start and stop position."  *Id.* at 4:47-52 (emphasis added).  The patents describe certain specific "filtering actions."  For example, the patents describe the "skip" filtering action as follows:

> *For example, one type of filtering action is skip*.  When the navigator determines that the time code for the multimedia content currently being decoded has reached the start position of a navigation object with a skip filtering action, the navigator

4

> instructs the decoder to discontinue decoding at the current multimedia position and to resume decoding at the stop position of the navigation object.

*Id.* at 4:64-5:7 (emphasis added).  Or, similarly, for the "mute" filtering action:

> *Mute is another type of filtering action*.  When the navigator determines that the time code for the multimedia content currently being decoded has reached the start position of a navigation object with a mute filtering action, the navigator suppresses the audio decoding.

*Id.* at 5:21-25 (emphasis added).  The patents contemplate other filtering actions as well.  *See, e.g.*, *id.* at 5:38-43 (describing the filtering action of a "reframe").

### B.     The Patent Office's Review of ClearPlay's Patents in 2016

The Court stayed this case when the Patent Office, at the request of a third party, agreed to an *inter partes* review ("IPR") to determine whether it should have granted ClearPlay's patents in the first instance.  Ultimately, the Patent Office rejected many of ClearPlay's claims.  However, the currently asserted claims survived the IPRs because ClearPlay argued to the Patent Office that the "navigation object" distinguished the claims from the prior art.

Specifically, at the heart of the IPRs was prior art United States Patent No. 6,408,128 ("Abecassis").  The party that initiated the IPRs (a ClearPlay competitor) argued that Abecassis alone or combined with other references rendered various claims invalid.  *See, e.g.,* Ex. 3 at 2 (Petition for *Inter Partes* Review).  Abecassis, like the patents here, discloses a multimedia device that identifies offensive content in audio and video using particular coding.  Ex. 4 at 16:15-18 (Abecassis).  Like the patents here, the viewer can determine certain categories of content to be skipped during playback and, according to these preferences, the device will skip playback of segments of content that meet the selected categories.  *See, e.g.*, *id* at 33:48-56.  In Abecassis, "the application of the viewer's content preferences to the video map results in the

automated logical selection of sequential and non-sequential segments" for viewing.  *Id*.  This

has the effect of "skip[ping] over parallel segments" of undesired content.  *Id* at 33:60-61.

ClearPlay argued that its claims were valid over Abecassis because—despite carrying out

a skipping function in the system as a whole—Abecassis did not disclose navigation objects that

included an express "filtering action":

> Abecassis discloses nothing similar to a specific filtering action "to be performed
> on the portion of the multimedia content defined by the start and stop positions for
> that portion." As addressed above, this filtering action must be directly associated
> with the start and stop positions. Stated another way, ***for each associated start
> and stop position, there must also be <u>information directly associated with the
> start and stop positions that defines how to filter</u>*** the content between the start
> and stop positions during playback*.

Ex. 5 at 15-16 (IPR2014-00339, Patent Owner's Preliminary Response Under § 42.107)

(emphasis added).  This argument saved ClearPlay claims that are currently being asserted

against DISH.  The Patent Office found that Abecassis did not disclose navigation objects that

defined specific filtering actions.  For example, the Patent Office wrote:

> [W]*e are not persuaded that Abecassis discloses* a method or computer program
> product having navigation objects that not only define the start and stop positions,
> or the start position and duration, of the content to be filtered, but also ***define the
> filtering action to be performed***, *as called for in the claims of the '970 patent*.

Ex. 6 at 19 (IPR2013-00484, Institution of *Inter Partes* Review) (emphasis added).  There are

multiple other instances in which ClearPlay and the Patent Office made it clear that the

"navigation object" must contain the actual defined filtering action.  *See, e.g.*, Ex. 7 at 11

(IPR2014-00339, Institution of *Inter Partes* Review) (similar); Ex. 8 at 11 (IPR2014-00383,

Institution of *Inter Partes* Review) (similar).

### C. DISH's AutoHop Feature

ClearPlay accuses DISH's "AutoHop" feature of infringing the Asserted Patents. AutoHop allows the consumer to skip commercials upon DVR playback of certain programs.

[redacted]

[redacted]

> [redacted]

[redacted]

| | | | |
|---|---|---|---|
| [redacted] | [redacted] | [redacted] | [redacted] |

> [redacted]

[redacted]

| | | | | | | |
|---|---|---|---|---|---|---|
| [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] |



[redacted]

[redacted]

| [redacted] | [redacted] | [redacted] |
|---|---|---|
| [redacted] | [redacted] | [redacted] |

[redacted]

[redacted]

███████████████████████████████████████

████████████████████

███████████████████████████████████████

██████████████████████████████████████

████████████

### D.    ClearPlay's Infringement Contentions

ClearPlay's Final Infringement Contentions (excerpts attached as Ex. 9) identify the

AutoHop "*announcement file(s) associated with a particular program and all data and data*

*structures therein or derived therefrom*" as being the claimed "navigation object" for that

program. *See*, *e.g.*, Ex. 9 at 10-11.[2]  The contentions, however, identify no part of the

Announcement file (or data structure derived therefrom) that identifies a "filtering action."[3]

Simply put, ClearPlay does not point to any information "directly associated" with any start and

stop positions that "defines how to filter," despite arguing during IPRs that that is exactly what is

required.  ClearPlay's contentions use semantic sleight-of-hand to dodge this omission:



---

[2] The '970 Patent, claim 16, is used as an example in the text *supra*.  ClearPlay uses the same language in each of its asserted claims, identifying the "announcement file" as the source of the "navigation object."  Ex. 9 at 5-7, 10, 15, 20-21,  24-27, 31-32, 36, 39-40, 42-43, 47-48, 55, 65, 69-72, 75, 78-81, 88-90, 93, 96-97, 103-104, 106, 108-109, 122-124.

[3] *See* Declaration of Danny Minnick ("Minnick Decl.") ¶ 11.



*Id.* (emphasis added, footnote and citations removed). ████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████ But what ClearPlay never finds

is the prior art-distinguishing identification of the "filtering action" inside the "navigation

object." Rather, ClearPlay suggests that the filtering action is implicit if one has the start and

stop information. According to ClearPlay, if there is only a start and a stop, that information

nonetheless is "understood by the STB" to be an instruction to skip. ████████████████

████████████████████████████████████████████████████████████████████

████████████

    From the beginning of this case, Defendants have made it clear to ClearPlay that the

AutoHop functionality does not have anything that could be called a "navigation object" with an

identification of a "filtering action." Ex. 10 (12/28/16 Letter from N. Chatterjee to L. Andelin).

ClearPlay clearly understood the significance of navigation objects when it expressly argued in

the IPRs that the "filtering action" data could not be implicit. ClearPlay cannot represent one

thing to the U.S. Patent Office and the exact opposite to this Court.

---

[4] ClearPlay even has this wrong. What it identifies are, at best, the start and the stop for the
material that is *not* skipped, the opposite of what its patents claim.

### III.    STATEMENT OF ELEMENTS AND UNDISPUTED MATERIAL FACTS

#### A.    Legal Standard

Where "the movant shows that there is no genuine dispute as to any material fact," a moving party is entitled to summary judgment. Fed. R. Civ. P. 56(c). A determination of non-infringement on summary judgment is appropriate where "there is no genuine issue whether the accused device is encompassed by the claims." *Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1304 (Fed. Cir. 1999). In particular, such a determination is appropriate where an accused infringer shows that the patentee will be unable to prove that an accused device infringes even a single limitation of an asserted patent claim. *Hoffer v. Microsoft Corp.*, 405 F.3d 1326, 1330 (Fed. Cir. 2005). The absence of evidence concerning infringement of the asserted claims may be shown through briefs and declarations. *Exigent Tech., Inc. v. Atrana Solutions, Inc.*, 442 F.3d 1301, 1307 (Fed. Cir. 2006). Where, as here, a plaintiff cannot meet its evidentiary burden, summary judgment of non-infringement is proper. *Telemac Cellular Corp. v. Topp Telecom, Inc.*, 247 F.3d 1316, 1323 (Fed. Cir. 2001).

#### B.    Material Undisputed Facts

*The Asserted Claims Require Navigation Objects with Specific Filtering Actions*

1. ClearPlay is asserting 11 claims against Defendants. Ex. 9.

2. Each asserted claim requires a "navigation object."[5]

---

[5] *See* Ex. 1 at claim 12 (the '799 Patent) (requiring "a plurality of navigation objects, each of which defines a portion of the multimedia content that is to be filtered by defining a start position and a stop position and **a specific filtering action** to be performed on the portion of multimedia content defined by the start and stop positions for that portion.") (emphasis added); Ex. 11 at claim 3 (the '784 Patent) (requiring "each navigation object defining a portion of the multimedia

3. In each asserted claim, navigation objects require either a "filtering action" or a "specific filtering action."[6]

### The Accused AutoHop Feature

4. ClearPlay accuses the AutoHop feature of Defendants' Hopper set-top-boxes ("STBs") and related servers of infringement in this action.  *See* Compl., ¶¶ 1-3; Ex. 9.

5. The AutoHop feature causes the STBs to skip over commercial segments when playing back certain recorded programming.  *See* Minnick Decl. ¶ 7.

### Announcement Files and Playback

███████████████████████████████████████████

██████████████████████████████

---

content that is to be filtered by defining a start position, a stop position, and **a specific filtering action** to be performed on the portion of the multimedia content defined by the start and stop positions for that portion") (emphasis added); Ex. 12 at claim 23 (the '318 Patent) (requiring "a multimedia content navigation object comprising: a start indicator associated with a first position in a multimedia content presentation; an end indicator associated with a second position in a multimedia content presentation; **at least one filtering action** associated with the start indicator and the end indicator, the at least one filtering action including a skip filtering action") (emphasis added); Ex. 2 at claim 16 (the '970 Patent) (requiring "a plurality of navigation objects. . . each of which defines a portion of the multimedia content that is to be filtered by defining a start position and a stop position and **a specific filtering action** to be performed on the portion of the multimedia content defined by the start and stop position for that portion") (emphasis added); *id.*, claims 17 and 24 (requiring "a plurality of navigation objects. . . each of which defines a portion of the multimedia content that is to be filtered by defining a start position and a duration from the start position and **a filtering action** to be performed on the portion of the multimedia content defined by the start duration from the start position for that portion") (emphasis added); *id.*, claims 28, 31-33 and 37 (requiring "a plurality of navigation objects, each defining a start position and a stop position and **a specific filtering action** to be performed on a portion of the multimedia content") (emphasis added).

[6] *Id.*





[redacted]

*ClearPlay Distinguished Its Patents as Requiring a Specific Filtering Action*

15. On August 1, 2013, CustomPlay LLC filed IPR2013-00484 directed to the '970 Patent.

16. On January 10, 2014, CustomPlay, LLC filed IPR2014-00339 directed to the '784 Patent.

17. On January 27, 2014, CustomPlay, LLC filed IPR2014-00383 directed to the '318 Patent.

18. On February 12, 2014, CustomPlay, LLC filed IPR2014-00430 directed to the '282 Patent.

19. On February 26, 2014, distinguishing its inventions over prior art in defense of its '970 Patent, ClearPlay stated that each navigation object must define a filtering action to apply to the content to be filtered.  Ex. 14, IPR2013-00484, Patent Owner's Response Under 37 C.F.R. § 42.120 at 2 (PTAB Feb. 26, 2014) ("Each navigation object also must define a filtering action to apply to the portion of the multimedia content defined by the start and stop positions.").

20. Similarly, on April 24, 2014, in defense of its '784 Patent, ClearPlay stated that a navigation object defines what filtering action to perform on content between stop and start indicators, and also that for each stop and start position, there must be information

14

that defines how to filter the content between those positions during playback.  Ex. 5, IPR2014-00339, Patent Owner's Preliminary Response Under § 42.107 at 4 (PTAB Apr. 24, 2014) ("In other words, a navigation object, in embodiments of the invention, must include a start indicator, an end indicator that is directly associated with the start indicator, and a filtering action that is directly associated with the start and stop indicators and therefore defines what filtering action to perform on the content between the start and stop indicators.").

21. A hearing was held for IPR2013-00484 on August 27, 2014.  Ex. 15 (Hearing Tr. for IPR2013-00484).  On April 20, 2015, the Patent Trial and Appeal Board ("PTAB") held a combined hearing for IPR2014-00339, IPR2014-00383, and IPR2014-00430.  Ex. 16 (Combined Hearing Tr.).

22. During the first hearing, for IPR2013-00484, in distinguishing its inventions over the prior art, ClearPlay stressed that according to the '970 Patent's claim language, "a navigation object defines a portion of the multimedia content that is to be filtered by defining, ***three things***, **a start position, . . . a stop position, . . . and *a specific filtering action* to be applied on the portion of the multimedia content defined by the start and stop positions for that portion**."  Ex. 15 at 39:18-23 (emphasis added).

23. During the subsequent combined hearing, when distinguishing its inventions over the prior art, ClearPlay similarly argued that the prior art lacked a specific filtering action. *See, e.g.*, Ex. 16 at 32:10-13 ("[A] video map is a sequence of starts and stops, if you want to call them that.  They're markers.  But there's no filtering action, okay?").

15

24. During that hearing, ClearPlay explained to the PTAB the requirements of its claimed navigation objects: "I'm going to refer to it as three pieces of associated information, we refer to that often, and I want that to be the key thing we take away, that's what a navigation object is. ***It's three key pieces of information.  And that's what matters***." *Id.* at 32:13-17 (emphasis added).

25. During the hearing, after explaining that navigation objects require a start and stop indicator, ClearPlay continued: "And what do you do?  What do you start and what do you end?  Well it's that third piece of information.  It's the skip filtering action." *Id.* at 35:12-14.

26. ClearPlay described its navigation object to the PTAB thusly:  "You have to define what you're doing, when you start it and when you finish it.  So it's not just the fact that you're skipping something. . . . It's how you're defining that and how you're making that happen.  **You're providing *three separate pieces of information* that define *what you do*, when you start it, and when you finish it**." *Id.* at 35:17-23 (emphasis added).

## IV.   ARGUMENT

### A.   Defendants Do Not Infringe Because the Accused Products Do Not Contain Navigation Objects That Define Filtering Actions

#### 1.   AutoHop Does Not Use Navigation Objects With Filtering Actions

All of ClearPlay's asserted claims explicitly state that "navigation objects" must define a specific "*filtering action*."[7]  As described above, ClearPlay has identified structure (the Announcement files and related data structures) within DISH's source code that it believes to be the "navigation object" and the required "start" and "stop" codes inside the "navigation object." Yet, ClearPlay identifies no structure for the "filtering action," arguing instead that this is implicit by virtue of the existence of "stop" and "start" codes.  But that is not what ClearPlay claimed in its patents or during the IPRs.  ClearPlay claimed that there must be a defined "filtering action" *in the navigation object*.  ClearPlay has not pointed to any such data structure in the AutoHop Announcement files because none exists.

---

[7] *See* Ex. 2 ('970 Patent) at 21:29-35; 23:36-40 (claiming either loading or accessing "a plurality of navigation objects" whereby the filtered content is defined by "defining a start position and a stop position and **a specific filtering action**") (emphasis added); Ex. 11 ('784 Patent) at 20:8-14 (claiming a method that assists the consumer in identifying content to be filtered that incorporates "obtaining a plurality of navigation objects" where "each navigation object defin[es] . . . **a specific filtering action** to be performed") (emphasis added); Ex. 12 ('318 Patent) at 20:64-21:7; 22:11-13 (claiming a computing system that includes "a multimedia content navigation object" comprising start and end indicators associated with portions of multimedia content as well as "**at least one filtering action** associated with the start indicator and the end indicator, the at least one filtering action including a skip filtering action") (emphasis added); Ex. 1 ('799 Patent) at 20:23-30; 21:58-65; 22:34-41; 23:64-24:5 (claiming a computerized system that enables consumers to digitally filter multimedia content via a method that includes "a plurality of navigation objects, each of which defines a portion of the . . . content that is to be filtered by defining a start position and a stop position and **a specific filtering action** to be performed on the portion of the . . . content defined by the start and stop positions for that portion") (emphasis added).

Because none of the accused products includes a navigation object that defines specific filtering actions, Defendants do not infringe as a matter of law.  *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 29 (1997); *Hoffer*, 405 F.3d at 1330.  There is no case law permitting "implicit" infringement when a structure does not explicitly exist.  *Cf. V-Formation, Inc. v. Benetton Grp. SpA*, 401 F.3d 1307, 1312 (Fed. Cir. 2005) ("[L]iteral infringement requires that each and every limitation set forth in a claim appear in an accused product."); *see also Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1575 (Fed. Cir. 1995) ("To establish literal infringement, every limitation set forth in a claim must be found in an accused product, *exactly*.") (emphasis added).[8]

## 2.    ClearPlay Expressly Disavowed Any Contrary Construal of "Navigation Object"

That said, not only do the express terms of the asserted claims require the "navigation object" to contain the "filtering action," ClearPlay has expressly disavowed any contrary construction.  As the Federal Circuit held in *TomTom, Inc. v. Adolph*, 790 F.3d 1315, 1325 (Fed.

---

[8] Moreover, there is no reason to undertake any claim construction of this point, as the parties appear to agree on what a "filtering action" is:  its plain meaning, that is, a particular filtering of media (e.g., skip or mute) that takes place between the start and the stop.  Thus, this is an issue ripe for resolution.  *See PSC Computer Prod., Inc. v. Foxconn Int'l, Inc.*, 355 F.3d 1353, 1357 (Fed. Cir. 2004) ("Although an infringement analysis typically begins with claim construction . . . the district court here did not construe the claims of the '239 patent because their meaning is not disputed."); *see also Unitherm Food Sys., Inc. v. Swift-Eckrich, Inc.*, 375 F.3d 1341, 1350 (Fed. Cir. 2004).  Even if this argument were to turn on an issue of claim construction, this straightforward issue is still ripe for resolution because there are no relevant disputed facts and the Court can construe the claim and apply the undisputed facts now.  *See Gen. Mills, Inc. v. Hunt-Wesson, Inc.*, 103 F.3d 978, 983 (Fed. Cir. 1997) ("Where the parties do not dispute any relevant facts regarding the accused product . . . but disagree over possible claim interpretations, the question of literal infringement collapses into claim construction and is amenable to summary judgment.").

Cir. 2015), "where the patentee has disavowed a certain meaning [to a claim] to obtain his

patent, the doctrine of prosecution disclaimer [or "prosecution history estoppel"] attaches and

narrows the ordinary meaning of the claim congruent with the scope of surrender." *See also*

*Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1323 (Fed. Cir. 2003) ("The doctrine of

prosecution disclaimer is well established in Supreme Court precedent, precluding patentees

from recapturing through claim interpretation specific meanings disclaimed during

prosecution.").  The doctrine likewise applies to disavowals made in IPR proceedings. *See*

*Sextant Avionique, S.A. v. Analog Devices, Inc.*, 172 F.3d 817, 827 (Fed. Cir. 1999); *see also*

*Ormco Corp. v. Align Tech., Inc.*, 498 F.3d 1307, 1314 (Fed. Cir. 2007) ("When the application

of prosecution disclaimer involves statements from prosecution of a familial patent relating to

the same subject matter as the claim language at issue in the patent being construed, those

statements in the familial application are relevant in construing the claims at issue."); *Biovail*

*Corp. Int'l v. Andrx Pharm., Inc.*, 239 F.3d 1297, 1304 (Fed. Cir. 2001) (same).

### B.  ClearPlay Cannot Show that Defendants Infringe Under the Doctrine of Equivalents

ClearPlay, in its infringement contentions, invokes the doctrine of equivalents as an

alternate infringement theory.  "To find infringement under the doctrine of equivalents, any

differences between the claimed invention and the accused product must be insubstantial.

Insubstantiality may be determined by whether the accused device performs substantially the

same function in substantially the same way to obtain substantially the same result as the claim

limitation." *VirnetX, Inc. v. Cisco Systems, Inc*., 767 F. 3d 1308, 1323 (Fed. Cir. 2014) (citation

omitted).  Here, this theory fails for at least two separate reasons.

### 1.    The doctrine of equivalents cannot be used to vitiate a claim element.

"[C]ourts properly refuse to apply the doctrine of equivalents where the accused device contains the antithesis of the claimed structure." *Planet Bingo, LLC v. GameTech Intern., Inc.*, 472 F.3d 1338, 1345 (Fed. Cir. 2006) ("In this case, the proposed application of the doctrine of equivalents would change 'before' to 'after' . . . . This court has refused to apply the doctrine in other cases where the accused device contained the antithesis of the claimed structure."). In such a case, application of the doctrine of equivalents would "vitiate" a claim element. *Id.*; *see Warner-Jenkinson Co.*, 520 U.S. at 39 n.8.

This is exactly what ClearPlay would be doing in seeking to eliminate the requirement for an actual "filtering action"—turn a "navigation object" into the antithesis of what it claimed. The whole point of ClearPlay's decision to include a "filtering action" in the "navigation object" rather than in the pre-programming is to give the system the flexibility to optionally choose a filtering action depending on consumer choice. *See, e.g.,* Ex. 2 at 4:35-46 ("These and other problems with the prior art are overcome by the present invention, which is directed toward automatically identifying and filtering portions of multimedia content during the decoding process . . . . Unlike the prior art's control of the input or source side of a decoder, the present invention permits filtering multimedia content at the output side of a decoder."). ClearPlay seeks to eliminate an entire claim limitation, reducing a navigation object from having three features (start, stop, and filtering action) to two features (stop and start). This is not an argument for equivalence, but a plea to vitiate a claim limitation and, as such, is improper.

### 2.      ClearPlay disclaimed the doctrine of equivalents "filtering actions."

ClearPlay also expressly disclaimed the argument that a "filtering action" in a "navigation object" is present under the doctrine of equivalents.  During prosecution of its patents, ClearPlay addressed this exact issue, stating that there must be "three separate pieces of information":

> So it's **not just the fact that you're skipping something. . . . It's how you're defining that** and how you're making that happen.  **You're providing three separate pieces of information** that define what you do, when you start it, and when you finish it.

Ex. 16 at 35:17-23 (emphasis added).  There is no "three separate pieces of information" in the Accused Products that can possibly meet the navigation object limitation.  ClearPlay's infringement allegation against Defendants runs directly contrary to its arguments to the Patent Office.

The central theme of ClearPlay's IPR presentation was ClearPlay clearly and repeatedly representing to the U.S. Patent Office that its navigation objects require the identification of a specific filtering action to distinguish prior art which, it claimed, did not identify specific filtering actions.  As discussed above, in defense of its '784 Patent, ClearPlay asserted generally that a navigation object necessarily defines what filtering action to perform on content between stop and start indicators, and also that for each stop and start position, there must be information that defines *how* to filter the content between those positions during playback.  Ex. 11 at 4 (the navigation object must contain "a filtering action that is directly associated with the start and stop indicators and therefore defines what filtering action to perform on the content between the start and stop indicators.").  In defense of its '970 Patent, ClearPlay stated that each navigation

objection must define a filtering action to apply to the content to be filtered. Ex. 14 at 2 ("Each navigation object also must define a filtering action to apply to the portion of the multimedia content defined by the start and stop positions.").

And, as noted above, during the oral argument for the IPRs, ClearPlay unequivocally represented to the PTAB that the navigation objects of the invention require *three* pieces of information:

> I'm going to refer to it as three pieces of associated information, we refer to that often, and I want that to be the ***key thing we take away***, that's ***what a navigation object is***. ***It's three key pieces of information. And that's what matters.***

Ex. 16 at 32:13-17 (emphasis added).

Under the doctrine of prosecution history estoppel, ClearPlay cannot now argue that, under the doctrine of equivalents, contrary to the express terms of the patents, the claims in the '784 and '970 patents cover "navigation objects" that contain two actual pieces of information (start and stop) but only an implicit third (the filtering action). As a matter of law, the patentee "cannot use the doctrine of equivalents to recapture" material that it disavowed in the prosecution of the patent. *Edwards Lifesciences LLC v. Cook Inc*., 582 F.3d 1322, 1336 (Fed. Cir. 2009); *Astrazeneca AB, Aktiebolaget Hassle, KBI-E, Inc. v. Mut. Pharm. Co*., 384 F.3d 1333, 1342 (Fed. Cir. 2004); *CIAS, Inc. v. All. Gaming Corp*., 504 F.3d 1356, 1363 (Fed. Cir. 2007).

Nor can ClearPlay argue on similar grounds that the Accused Products infringe the '318 and '799 Patents. ClearPlay filed the application for its '318 Patent as a continuation of the application for the '784 Patent. The '318 Patent contains similar "navigation object" claim

22

language as that in the '784 Patent.[9]  As discussed above, because ClearPlay unequivocally specified that navigation objects must define specific filtering actions to avoid prior art during IPR of the '784 Patent, it cannot now disclaim that interpretation of "navigation object" in the '318 Patent.  Similarly, the '970 Patent was filed as a continuation of the application for the '799 Patent, and each patent contains similar "navigation object" claim language.[10]  In avoiding prior art cited against the '970 Patent, ClearPlay explicitly stated that navigation objects must define filtering actions.  *Supra*.  It is now estopped from backtracking and arguing for an inconsistent application of "navigation object" as that term appears in the '799 Patent.  *Ormco*, 498 F.3d at 1314 (Fed. Cir. 2007) (holding that statements made in prosecuting familial applications are relevant in construing claims at issue); *Wang Labs*, 197 F.3d at 1384 (holding that limitation "appl[ied] to the common subject matter").

## V.      CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant summary judgment of noninfringement.

---

[9] *See* Ex. 11 at 20:8-14; Ex. 12 at 20:64-21:7; 22:11-13.

[10] *See* Ex. 1 at 20:23-30; 21:58-65; 22:34-41; 23:64- 24:5; Ex. 2 at 19:57-60; 22:8-14; 21:29-35; 23:36-40.

DATED this 26th day of July, 2017

By:     */s/ Brent O. Hatch*            
        HATCH, JAMES & DODGE, PC
        Brent O. Hatch
        Shaunda L. McNeil

        ORRICK, HERRINGTON & SUTCLIFFE, LLP
        Alex V. Chachkes
        Alyssa M. Caridis
        Briggs M. Wright

        *Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 26th day of July, 2017, I caused a true and correct copy of

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT,

DECLARATION OF DANNY MINNICK IN SUPPORT OF DEFENDANTS' MOTION FOR

SUMMARY JUDGMENT, and corresponding Exhibits via Email on the following:

> Leo R. Beus
> L. Richard Williams
> Lee M. Andelin
> BEUS GILBERT PLLC
> 701 North 44th Street
> Phoenix, AZ 85008
> lbeus@beusgilbert.com
> rwilliams@beusgilbert.com
>
> James T. Burton
> Brian D. Tucker
> Joshua Rupp
> KIRTON McCONKIE PC
> 1800 World Trade Center
> 60 East South Temple
> Salt Lake City, UT 84111
> jburton@kmclaw.com
> btucker@kmclaw.com
> jrupp@kmclaw.com
>
>
> *Attorneys for Plaintiff*


                            */s/ Brent O. Hatch*