IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| CLEARPLAY, INC.,<br><br>    Plaintiff,<br><br>v.<br><br>DISH NETWORK, LLC; DISH NETWORK CORP.; and ECHOSTAR TECHNOLOGIES, LLC,<br><br>    Defendants. | **MEMORANDUM DECISION AND ORDER REGARDING CLAIM CONSTRUCTION**<br><br>Case No. 2:14-cv-00191-DN-CMR<br><br>District Judge David Nuffer |

This case involves causes of action for direct and indirect infringement of four patents: U.S. Patent Nos. 7,577,970 ("'970 Patent"); 7,526,784 ("'784 Patent"); 7,543,318 ("'318 Patent"); and 6,898,799 ("'799 Patent") (collectively, the "Asserted Patents").[1] The parties filed briefing on claim construction, which identified two undisputed claim terms and 10 disputed claim terms in the Asserted Patents.[2] A claim construction hearing was held on August 13, 2019, at which the parties presented argument on the construction of the disputed claim terms.[3] For the

---

[1] Complaint for Patent Infringement, docket no. 2, filed Mar. 13, 2014.

[2] Plaintiff ClearPlay Inc.'s Opening Claim Construction Brief Pursuant to Local Patent Rule 4.2 ("Plaintiff's Brief"), docket no. 234, filed Feb. 5, 2018; Defendants' Opening Claim Construction Brief ("Defendants' Brief"), docket no. 241, filed Feb. 6, 2018; Plaintiff ClearPlay Inc.'s Responsive Claim Construction Brief Pursuant to Local Patent Rule 4.2 ("Plaintiff's Response"), docket no. 256, filed Mar. 2, 2018; Defendants' Responsive Claim Construction Brief ("Defendants' Response"), docket no. 259, filed Mar. 2, 2018; Plaintiff ClearPlay Inc.'s Opening Supplemental Claim Construction Brief Pursuant to Doc. 290 ("Plaintiff's Supplemental Brief"), docket no. 292, filed May 17, 2019; Defendants' Supplemental Claim Construction Brief ("Defendants' Supplemental Brief"), docket no. 293, filed May 20, 2019; Plaintiff ClearPlay Inc.'s Responsive Supplemental Claim Construction Brief Pursuant to Doc. 290 ("Plaintiff's Supplemental Response"), docket no. 294, filed June 7, 2019; Defendants' Responsive Supplemental Claim Construction Brief ("Defendants' Supplemental Response"), docket no. 295, filed June 7, 2019.

[3] Minute Entry for Proceedings Held Before Judge David Nuffer, docket no. 307, filed Aug. 13, 2019.

reasons set forth below, the Asserted Patents' undisputed and disputed claim terms are construed as follows.

**Contents**
BACKGROUND ............................................................................................................. 3
DISCUSSION ................................................................................................................. 4
    The parties' proposed constructions of the Asserted Patents' undisputed claim terms are adopted. ................................................................................................................ 5
    The Asserted Patents' disputed claim terms are construed to give ordinary and customary meaning to the terms as understood by a person of ordinary skill in the art at the time of the invention. ............................................................................................. 6
        "Start position [start indicator]" is construed as: Information that identifies the beginning of a portion of multimedia content to be filtered. ...................... 6
        "Stop position [end indicator]" is construed as: Information that identifies the end of the portion of multimedia content to be filtered. .................................... 8
        "Filtering action" is construed as: An action that edits or rejects some multimedia content while allowing other multimedia content to be unchanged. .......... 9
        "Position code" is construed as: Information that defines a location in the multimedia content. ...................................................................................... 10
        "Output device" is construed as: A device that outputs for purposes of display, or that displays, decoded multimedia content. .............................................. 11
        "Configuration identifier" is construed as: An identifier of the consumer system (including hardware and software) that is used to determine if the navigation objects apply to the particular consumer system. ................... 12
        "Displaying a representation including a description of each of the plurality of navigation objects" is construed as: Displaying one or more words, symbols, images, or a combination thereof to depict, denote, or delineate the navigation objects, whether individually or in combination. .............. 14
        "Portion of the multimedia content defined by the particular navigation object" is construed as: The multimedia content that is defined by the start position and stop position of a navigation object. ................................................ 16
        "Object store" is construed as: The collection that contains the navigation objects of at least one multimedia presentation. .................................................. 16
        "Defin[e/ed/es/ing]" is construed as: Assign or specify [a start position, stop position, or filtering action]. ................................................................... 17
ORDER ........................................................................................................................ 18

**BACKGROUND**

Plaintiff's founder, Matt Jarman, developed a method and system that assists consumers in identifying and filtering portions of objectionable multimedia content.[4] The system uses the "start position [start indicator]" and "stop position [end indicator]" of the objectionable content to identify the portion of the multimedia content to be filtered.[5] A "filtering action" (such as a skip or a mute) that will be performed on the objectionable content is assigned.[6] The combination of the "start position [start indicator]," the "stop position [end indicator]," and a "filtering action" form a "navigation object."[7] A "configuration identifier" is assigned to the "navigation object" so that the "navigation object" can be used on varying types of consumer systems depending on hardware and software configuration.[8] When a user decides to filter a multimedia presentation, the consumer system tracks the "position code" and activates the filter when the presentation position is between the "start positon [start indicator]" and "stop position [end indicator]."[9]

Plaintiff's '970 Patent and '799 Patent describe a mechanism that monitors the current play position in multimedia content, and compares the play position against a data set comprising a "start position [start indicator]," a "stop position [end indicator]," and a "filtering action" to be performed.[10] When the content position falls between the "start position [start indicator]" and "stop position [end indicator]," the consumer system activates the "filtering action" identified in

---

[4] Plaintiff's Brief at 1.

[5] *Id*.

[6] *Id*.

[7] *Id*.

[8] *Id*.

[9] *Id*.

[10] *Id*. at 2; Markman Joint Appendix Exhibits ("Appendix") Part I at '970 Patent (MARKMAN-JA-00001-00027), '799 Patent (MARKMAN-JA-00079-00107), docket no. 238, filed Feb. 5, 2018.

the data set.[11] Plaintiff's '318 Patent and '784 Patent teach the process of retrieving or delivering "navigation objects" from a server system.[12] The Asserted Patents share a common specification and drawings.[13]

## DISCUSSION

Claim construction is an issue of law for the court to decide.[14] The starting point for construing claim terms is the intrinsic evidence, *i.e.*, the claims, patent specification, and prosecution history.[15] "In most situations, an analysis of the intrinsic evidence alone will resolve any ambiguity in a disputed claim term."[16]

The claims of a patent "define the invention to which the patentee is entitled the right to exclude."[17] Claim terms "are generally given their ordinary and customary meaning."[18] Courts determine "the ordinary and customary meaning of undefined claim terms as understood by a person of ordinary skill in the art at the time of the invention . . . ."[19] "Common words, unless the context suggests otherwise, should be interpreted according to their ordinary meaning."[20]

"The construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction."[21] And while

---

[11] Plaintiff's Brief at 2-3.

[12] *Id*. at 3; Appendix Part I at '784 Patent (MARKMAN-JA-00028-00052), '318 Patent (MARKMAN-JA-00053-00078).

[13] Plaintiff's Brief at 3; Appendix Part I at '970 Patent Drawings (MARKMAN-JA-00006-00015), Specification (MARKMAN-JA-00016-00025).

[14] *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 384 (1996).

[15] *Phillips v. AWH Corp*., 415 F.3d 1303, 1313 (Fed. Cir. 2005) (en banc).

[16] *Vitronics Corp. v. Conceptronic, Inc*., 90 F.3d 1576, 1583 (Fed. Cir. 1996).

[17] *Phillips,* 415 F.3d at 1312 (internal citations and quotations omitted).

[18] *Id.* (quoting *Vitronics Corp.*, 90 F.3d at 1583)).

[19] *Felix v. Am. Honda Motor Co., Inc.*, 562 F.3d 1167, 1177 (Fed. Cir. 2009).

[20] *Desper Prods., Inc. v. QSound Labs., Inc*., 157 F.3d 1325, 1336 (Fed. Cir.1998).

[21] *Renishaw PLC v. Marposs Societa' per Azioni,* 158 F.3d 1243, 1250 (Fed. Cir. 1998).

claims must be read in light of the specification, limitations from the specification may not be read into the claims.[22] It is well settled that the invention should not be limited to the specific examples or preferred embodiment found in the specification.[23] But the "specification may reveal a special definition given to a claim term by the patentee that differs from the meaning it would otherwise possess." If that is the case, "the inventor's lexicography governs."[24] However, the specification must "clearly redefine a claim term so as to put one reasonably skilled in the art on notice that the patentee intended to so redefine the claim."[25]

## The parties' proposed constructions of the Asserted Patents' undisputed claim terms are adopted.

The parties identified two claim terms in the Asserted Patents for which they agreed to proposed constructions: "Navigation object;" and "Decod[e/er/ing]."[26] The parties' proposed constructions of these terms are consistent with the ordinary and customary meaning as understood by a person of ordinary skill in the art at the time of the invention. Therefore, the proposed constructions are adopted.

"Navigation object" is construed as: Plain and ordinary meaning (as defined by the terms of the claims themselves).

"Decod[e/er/ing]" is construed as: [The device or process] for translating multimedia content from the format used to store or transmit it to the format for ultimately presenting it at the output device.

---

[22] *Phillips*, 415 F.3d at 1323; *Comark Commc'ns. v. Harris Corp.*, 156 F.3d 1182, 1186 (Fed.Cir.1998).

[23] *Phillips*, 415 F.3d at 1323.

[24] *Id.* at 1316.

[25] *Elekta Instrument S.A. v. O.U.R. Sci. Int'l, Inc.*, 214 F.3d 1302, 1307 (Fed. Cir. 2000).

[26] Plaintiff's Brief at 8.

**The Asserted Patents' disputed claim terms are construed to give
ordinary and customary meaning to the terms as understood
by a person of ordinary skill in the art at the time of the invention.**

The parties' identified 10 claim terms in the Asserted Patents for which construction is disputed.[27] These terms are:

- "Start position [start indicator]";
- "Stop position [end indicator]";
- "Filtering action";
- "Position code";
- "Output device";
- "Configuration identifier";
- "Displaying a representation including a description of each of the plurality of navigation objects";
- "Portion of the multimedia content defined by the particular navigation object";
- "Object store"; and
- "Defin[e/ed/es/ing]".

Each disputed claim term is discussed and construed in turn.

**"Start position [start indicator]" is construed as: Information that identifies the beginning of a portion of multimedia content to be filtered.**

The parties propose that "start position [start indicator]" be construed as follows:

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| Information that the consumer system employs to identify the beginning of a portion of multimedia content to be filtered. | The point in the multimedia content at which the content to be filtered begins. |

The dispute over the construction of "start positon [start indicator]" is a dispute on concept. Defendants argue that the term denotes a location or point in the multimedia content.[28]

---

[27] Plaintiff's Brief at 8-23; Defendants' Brief at 7-24; Plaintiff's Supplemental Brief at 2-4; Defendants' Supplemental Brief at 1-4.

[28] Defendants' Brief at 9-13; Defendants' Response at 4-7.

6

Plaintiff argues that the term refers to *information about* a location or point in the multimedia content.[29] Both arguments find support in the Asserted Patents' claim and specification language.[30] However, Defendants' proposal would make the term a generic concept, rather than the functional designation that was intended. Defendants also improperly read in a limitation, which is not supported by the context in which the term is used in the Asserted Patents' claim and specification language as a whole.

"Start position [start indicator]" denotes information about a location or point in the multimedia content. The United States Patent and Trademark Appeals Board ("PTAB") determined the same.[31] And while the PTAB standard for construction is broader than the applicable standard in this proceeding,[32] this does not necessitate a different construction *per se*. The PTAB's construction of a term may also be the ordinary and customary meaning as understood by a person of ordinary skill in the art at the time of the invention.

Moreover, Defendants' argument at the August 13, 2019 hearing that construing "start position [start indicator]" as information (rather than an actual location or point) creates redundancy is without merit. That a "navigation object" defines a "start position [start indicator]" is not redundant with a "start position [start indicator]" being information about a location or point in the multimedia content.

---

[29] Plaintiff's Brief at 9-10; Plaintiff's Response at 6-10.

[30] Appendix Part I at '970 Patent at 4:49-52 (MARKMAN-JA-00017), 11:5-13 (MARKMAN-JA-00021), 11:63-12:10 (MARKMAN-JA-00021), 19:57-63 (MARKMAN-JA-00025), 21:32-35 (MARKMAN-JA-00026), docket no. 238, filed Feb. 5, 2018.

[31] *Id*. at Decision Institution of *Inter Partes* Review at 12-13 (MARKMAN-JA-00119-120).

[32] *Compare Cuozzo Speed Techs., LLC v. Lee*, 136 S.Ct. 2131, 2142 (2019) ("[T]he broadest reasonable construction regulation is a rule that governs inter partes review."), *with Phillips,* 415 F.3d at 1312 (Courts determine "the ordinary and customary meaning of undefined claim terms as understood by a person of ordinary skill in the art at the time of the invention . . . .").

However, this is not to say that Plaintiff's proposed construction is appropriate. Plaintiff's proposal includes vague and unnecessary language regarding the consumer system.[33] Inclusion of this language would not assist the jury, and could lead to confusion. And at the August 13, 2019 hearing, Plaintiff agreed to a construction which removed such language.

The ordinary and customary meaning of "start position [start indicator]" as understood by a person of ordinary skill in the art at the time of the invention is: Information that identifies the beginning of a portion of multimedia content to be filtered.

**"Stop position [end indicator]" is construed as: Information that identifies the end of the portion of multimedia content to be filtered.**

The parties propose that "stop position [stop indicator]" be construed as follows:

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| Information that the consumer system employs to identify the corresponding end of the portion of multimedia content to be filtered. | The point in the multimedia content at which the content to be filtered ends. |

The dispute over the construction of "stop position [end indicator]" is the same conceptual dispute the parties had with "start position [start indicator]."[34] For the same reasons that lead to the construction of "start position [start indicator],"[35] the ordinary and customary meaning of "stop position [end indicator]" as understood by a person of ordinary skill in the art at the time of the invention is: Information that identifies the end of the portion of multimedia content to be filtered.

---

[33] Plaintiff's Brief at 9.

[34] Plaintiff's Brief at 9-10; Defendants' Brief at 9-13; Plaintiff's Response at 6-10; Defendants' Response at 4-7.

[35] *Supra* at 6-8.

8

**"Filtering action" is construed as: An action that edits or rejects some multimedia content while allowing other multimedia content to be unchanged.**

The parties propose that "filtering action" be construed as follows:

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| An action that may be used to edit or reject multimedia content while allowing other multimedia content to pass unchanged. | The structure defining what will be edited out of the media between that navigation object's start and stop positions. |

The dispute over the construction of "filtering action" focuses on how to articulate the editing of the multimedia content between a "start position [start indicator]" and a "stop position [end indicator]." Defendants' proposal identifies "filtering action" as a "structure," rather than an "action."[36] Such a construction is counter to the ordinary and customary meaning of "filtering *action*," as well as the Asserted Patents' claim and specification language.[37]

Plaintiff's proposed construction properly identifies "filtering action" as an "action,"[38] and is similar to the construction adopted by the PTAB.[39] But Plaintiff's proposal includes overbroad and vague language that the action "may be used" to filter the multimedia content while allowing other multimedia content to "pass" unchanged.[40] Inclusion of this language is unnecessary, would not assist the jury, and could lead to confusion.

At the August 13, 2019 hearing, the parties agreed to the following construction of "filtering action:" An action that edits or rejects some multimedia content while allowing other multimedia content to be unchanged. This agreed construction gives ordinary and customary

---

[36] Defendants' Brief at 13-16; Defendants' Response at 7-10.

[37] Appendix Part I at '970 Patent at 4:47-67 (MARKMAN-JA-00017), 5:1-6:15 (MARKMAN-JA-00018), 21:21-61 (MARKMAN-JA-00026), 23:59-61 (MARKMAN-JA-00027)

[38] Plaintiff's Brief at 11.

[39] Appendix Part I at Decision Institution of *Inter Partes* Review at 8-10 (MARKMAN-JA-00115-117).

[40] Plaintiff's Brief at 11.

meaning to the term as understood by a person of ordinary skill in the art at the time of the invention, and is, therefore, adopted.

**"Position code" is construed as: Information that defines a location in the multimedia content.**

The parties propose that "position code" be construed as follows:

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| Information that defines a location in the multimedia content. | An indicator of the current position of playback within a multimedia presentation. |

The dispute over the construction of "position code" centers on whether the term requires current playback of the multimedia content. At the August 13, 2019 hearing, the parties agreed that "position code" has a dynamic (as opposed to static) nature. Defendants argue that this dynamic nature must be included in the term's construction by referring to "the current position of playback."[41] On the other hand, Plaintiff argues that the dynamic nature of "position code" already exists in the Asserted Patents' claim and specification language when the term is read in context.[42]

Defendants point to several instances in which "position code" appears in the Asserted Patents' claim and specification.[43] But in these instances, as Defendants point out, the term is accompanied by other language that refers to where the "position code" is at a particular time.[44] Reading "the current position of playback" into the construction of "position code," creates unnecessary redundancy in the Asserted Patents.

---

[41] Defendants' Brief at 22-24; Defendants' Response at 15-16.

[42] Plaintiff's Brief at 8-9; Plaintiff's Response at 5-6.

[43] Defendants' Brief at 22-24; Defendants' Response at 15-16.

[44] Appendix Part I at '970 Patent at 4:57-66 (MARKMAN-JA-00017), '318 Patent at 11:10-13 (MARKMAN-JA-00073), '799 Patent at 21:65-22:2 (MARKMAN-JA-00103).

Plaintiff's proposed construction of "position code" is the construction adopted by the PTAB.[45] And although the PTAB uses a broader standard for construction,[46] its construction of "position code" gives ordinary and customary meaning as understood by a person of ordinary skill in the art at the time of the invention. Therefore, "position code" is construed as: Information that defines a location in the multimedia content.

**"Output device" is construed as: A device that outputs for purposes of display, or that displays, decoded multimedia content.**

The parties propose that "output device" be construed as follows:

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| No construction necessary. In the alternative: A device that outputs and/or displays decoded multimedia content. | A device that includes a mechanism for perceiving the multimedia content (e.g., a screen or a speaker). |

The dispute over the construction of "output device" is whether the term includes only devices that display, or allow users to perceive, decoded multimedia content. Defendants argue that the term refers solely to a display, which includes screens or speakers, or the combination of a video or audio adapters and screens or speakers.[47] This is consistent with the Asserted Patents' specification language that the term "should be interpreted to include any device that is capable of playing multimedia content so that the content may be perceived."[48] But Defendants' proposal ignores other language in the Asserted Patents' specification that expressly includes video and audio adapters as an "output device."[49]

---

[45] *Id*. at Decision Institution of *Inter Partes* Review at 11-12 (MARKMAN-JA-00118-119).

[46] *Cuozzo Speed Techs., LLC*, 136 S.Ct. at 2142.

[47] Defendants' Brief at 7-9; Defendants' Response at 2-4.

[48] Appendix Part I at '970 Patent at 9:57-59 (MARKMAN-JA-00020).

[49] *Id*. at '970 Patent at 9:56-10:27 (MARKMAN-JA-00020), 11:31-51 (MARKMAN-JA-00021).

On the other hand, Plaintiff's proposed construction of "output device" is overbroad because it would include any device that "outputs" decoded multimedia content.[50] Plaintiff's proposal ignores the context of the term's use in Asserted Patents, which shows a purpose of displaying decoded multimedia content.[51]

A construction of "output device" that is consistent with the Asserted Patents' claim and specification language, and gives ordinary and customary meaning as understood by a person of ordinary skill in the art at the time of the invention is: A device that outputs for purposes of display, or that displays, decoded multimedia content.

**"Configuration identifier" is construed as: An identifier of the consumer system (including hardware and software) that is used to determine if the navigation objects apply to the particular consumer system.**

The parties propose that "configuration identifier" be construed as follows:

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| An identifier used to indicate whether the navigation object is applicable to the hardware and/or software configuration of the consumer system. | A code that identifies the hardware and software configuration of the consumer system. |

The dispute over the construction of "configuration identifier" concerns the term's applicability to a consumer system's hardware and software.[52] The parties also dispute whether the term's construction should include language regarding the matching function or link between the consumer system and the navigation object.[53]

---

[50] Plaintiff's Brief at 18.

[51] Appendix Part I at '970 Patent at 9:56-10:27 (MARKMAN-JA-00020), 11:31-51 (MARKMAN-JA-00021).

[52] Plaintiff's Brief at 14-15; Defendants' Brief at 16-17; Plaintiff's Response at 13-14; Defendants' Response at 10-11.

[53] Plaintiff's Brief at 14-15; Defendants' Brief at 16-17; Plaintiff's Response at 13-14; Defendants' Response at 10-11.

The use of "hardware *and/or* software" in Plaintiff's proposed construction[54] is broader than and inconsistent with the Asserted Patents' specification language, and the PTAB's construction of the term, which refer to the consumer system's "hardware and software."[55] And Defendants' proposed construction[56] incorrectly assumes the matching function or link between the consumer system and the navigation object is sufficiently stated elsewhere in the Asserted Patents' claim and specification language.

Following the August 13, 2019 hearing, the parties were directed to respond to a proposed construction of "configuration identifier."[57] The parties agreed to the following construction of the term: An identifier of the consumer system (including hardware and software) that is used to determine if the navigation objects apply to the particular consumer system.[58] This agreed construction gives ordinary and customary meaning to the term as understood by a person of ordinary skill in the art at the time of the invention, and is, therefore, adopted.

---

[54] Plaintiff's Brief at 14 (emphasis added).

[55] Appendix Part I at '970 Patent at 14: 6-21 (MARKMAN-JA-00022); Final Written Decision at 8 (MARKMAN-JA-01320); Final Written Decision at 30 (MARKMAN-JA-01387).

[56] Defendants' Brief at 16.

[57] Email Chain re Construction, docket no. 308, filed Aug. 26, 2019.

[58] *Id*.

**"Displaying a representation including a description of each of the plurality of navigation objects" is construed as: Displaying one or more words, symbols, images, or a combination thereof to depict, denote, or delineate the navigation objects, whether individually or in combination.**

The parties propose that "displaying a representation including a description of each of the plurality of navigation objects" be construed as follows:

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| Displaying one or more words, symbols, images, or a combination thereof to depict, denote, or delineate the navigation objects. | An on-screen display showing descriptions of each navigation object. |

The dispute over the construction of "displaying a representation including a description of each of the plurality of navigation objects" centers on the scope of the word "representation," and the meaning of the phrase "each of the plurality of navigation objects."[59] Defendants' proposed construction substitutes "representation" for "descriptions."[60] But this is too limiting and contrary to the Asserted Patents' claim language. The term encompasses "a representation including a description."[61] Therefore, "representation" is broader than "description," and the two cannot be construed as interchangeable. The ordinary and customary meaning of "representation" in context includes words, symbols, images, or a combination thereof.[62]

Defendants' proposed construction also improperly limits the phrase "each of the plurality of navigation objects" to one embodiment. Defendants argue that "each" modifies "the plurality of navigation objects," and that "the plurality of navigation objects" refers to a plurality of separate and distinct navigation objects.[63] Thus, Defendant's proposal construes the phrase as

---

[59] Plaintiff's Brief at 21-23; Defendants' Brief at 19-22; Plaintiff's Response at 19-21; Defendants' Response at 13-15; Email Chain re Construction, docket no. 308, filed Aug. 26, 2019.

[60] Defendants' Brief at 19.

[61] Appendix Part I at '970 Patent at 22:31-33 (MARKMAN-JA-00026).

[62] https://www.dictionary.com/browse/representation?s=t, last accessed Aug. 20, 2019.

[63] Defendants' Brief at 19-22; Defendants' Response at 13-15; Email Chain re Construction, docket no. 308, filed Aug. 26, 2019.

"each navigation object,"[64] meaning that every navigation object must be represented individually. While examples in the Asserted Patents' drawings,[65] and early iterations of Plaintiff's system, display an individual representation of each navigation object, the term should not be limited to this one embodiment.[66] Read in context and without unnecessary limitation, a "representation" of "each of the plurality of navigation objects" encompasses every navigation object being represented, whether individually or in combination.[67]

Plaintiff's proposed construction of the term[68] correctly observes that "representation" is broader than a "description, " and it allows for representation of navigation objects individually or by combination. However, Plaintiff's proposal improperly reads out "each of the plurality" from the term.[69] Such a construction would lead to displaying a representation that did not include every navigation object, which is inconsistent with the Asserted Patents' claim language.[70]

Giving meaning to each word in the term "displaying a representation including a description of each of the plurality of navigation objects" in context and without unnecessary limitation, the ordinary and customary meaning as understood by a person of ordinary skill in the art at the time of the invention is: Displaying one or more words, symbols, images, or a combination thereof to depict, denote, or delineate the navigation objects, whether individually or in combination.

---

[64] Defendants' Brief at 19.

[65] Appendix Part I at '970 Patent at Fig. 6 (MARKMAN-JA-00014).

[66] *Phillips*, 415 F.3d at 1323.

[67] Appendix Part I at '970 Patent at 22:31-41 (MARKMAN-JA-00026).

[68] Plaintiff's Brief at 21.

[69] *Id*.

[70] Appendix Part I at '970 Patent at 22:31-33 (MARKMAN-JA-00026).

**"Portion of the multimedia content defined by the particular navigation object" is construed as: The multimedia content that is defined by the start position and stop position of a navigation object.**

The parties propose that "portion of the multimedia content defined by the particular navigation object" be construed as follows:

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| A portion of the multimedia content defined by the start and stop positions of a navigation object. | The multimedia content that begins with the start position and ends with the stop position. |

The dispute over the construction of "portion of the multimedia content defined by the particular navigation object" stems from the parties' dispute over the terms "start position [start indicator]" and "stop position [end indicator]."[71] For the same reasons that lead to the construction of "start position [start indicator]" and "stop position [end indicator],"[72] the ordinary and customary meaning of "portion of the multimedia content defined by the particular navigation object" as understood by a person of ordinary skill in the art at the time of the invention is: The multimedia content that is defined by the start position and stop position of a navigation object. Both parties agreed to this construction at the August 13, 2019 hearing given that "start position [start indicator]" and "stop position [end indicator]" are construed to denote information about a locations or points in the multimedia content.

**"Object store" is construed as: The collection that contains the navigation objects of at least one multimedia presentation.**

The parties propose that "object store" be construed as follows:

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| The collection that contains the navigation objects. | The collection of the navigation objects for a particular multimedia presentation. |

---

[71] Plaintiff's Brief at 17-18; Defendants' Brief at 18-19; Plaintiff's Response at 17-18; Defendants' Response at 12-13.

[72] *Supra* at 6-8.

The dispute over the construction of "object store" centers on whether the term is limited to particular multimedia presentations. Defendants point to the Asserted Patents' specification language to argue "object store" is limited to one embodiment, *i.e.*, the entire set of navigation objects for a particular multimedia presentation.[73] However, as Plaintiff points out and Defendants recognize,[74] the specification expressly states that "object store" may contain navigation objects corresponding to more than one multimedia presentation.[75] This was also recognized by the PTAB.[76]

Following the August 13, 2019 hearing, the parties were directed to respond to a proposed construction of "object store."[77] The parties agreed to the following construction of the term: The collection that contains the navigation objects of at least one multimedia presentation.[78] This agreed construction gives ordinary and customary meaning to the term as understood by a person of ordinary skill in the art at the time of the invention, and is, therefore, adopted.

**"Defin[e/ed/es/ing]" is construed as: Assign or specify [a start position, stop position, or filtering action].**

The parties propose that "defin[e/ed/es/ing]" be construed as follows:

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| Assign, describe or specify [a start/stop position or filtering action]. | Specify the value of (for start and stop positions) or the type of (for filtering actions). |

---

[73] Defendants' Brief at 17-18 (citing Appendix Part I at '970 Patent at 4:52-60 (MARKMAN-JA-00017), 11:52-62 (MARKMAN-JA-00021)); Defendants' Response at 11-12.

[74] Plaintiff's Response at 15; Defendants' Brief at 18.

[75] Appendix Part I at '970 Patent at 13:51-64 (MARKMAN-JA-00022).

[76] Appendix Part III at Decision Institution of *Inter Partes* Review at 8 (MARKMAN-JA-04640).

[77] Email Chain re Construction, docket no. 308, filed Aug. 26, 2019.

[78] *Id*.

The dispute over the construction of "defin[e/ed/es/ing]" is the appropriate specificity and precision of the term.[79] Plaintiff's proposed construction includes "describe,"[80] which lacks specificity and is overbroad. At the August 13, 2019 hearing, Plaintiff agreed to a construction of the term that did not include "describe." Both parties also agreed that the term may be construed as "assign" or "specify."[81] However, Defendants argue that to avoid confusion and ambiguity, the term must be construed as one or the other, not both.[82]

The Asserted Patents' claim language uses "assign" and "define" interchangeably.[83] The Asserted Patents' claim language also uses "specified" in place of "defined."[84] Thus, construing "defin[e/es/ing]" as only "assign" (or only "specify") would not fully give meaning to the term. Construing the term as both "assign or specify" clarifies; it does not add confusion or ambiguity. Therefore, the ordinary and customary meaning of "defin[e/ed/es/ing]" as understood by a person of ordinary skill in the art at the time of the invention is: Assign or specify [a start position, stop position, or filtering action].

## ORDER

IT IS HEREBY ORDERED that the Asserted Patents' claim terms are construed as follows:

- "Navigation object" is construed as: Plain and ordinary meaning (as defined by the terms of the claims themselves).

---

[79] Plaintiff's Supplemental Brief at 2-4; Defendants' Supplemental Brief at 1-4; Plaintiff's Supplemental Response at 1-2; Defendants' Supplemental Response at 1-2.

[80] Plaintiff's Supplemental Brief at 2.

[81] Plaintiff's Supplemental Brief at 2; Defendants' Supplemental Brief at 1; Defendants' Supplemental Response at 2.

[82] Defendants' Supplemental Brief at 1-4; Defendants' Supplemental Response at 1-2.

[83] Appendix Part I at '970 Patent at 21:30-32 (MARKMAN-JA-00026), 21:42-47 (MARKMAN-JA-00026); 23:50-53 (MARKMAN-JA-00027), '799 Patent at 22:8-13 (MARKMAN-JA-00103).

[84] *Id*. at '784 Patent at 20:27-31 (MARKMAN-JA-00052).

- "Decod[e/er/ing]" is construed as: [The device or process] for translating multimedia content from the format used to store or transmit it to the format for ultimately presenting it at the output device.

- "Start position [start indicator]" is construed as: Information that identifies the beginning of a portion of multimedia content to be filtered.

- "Stop position [end indicator]" is construed as: Information that identifies the end of the portion of multimedia content to be filtered.

- "Filtering action" is construed as: An action that edits or rejects some multimedia content while allowing other multimedia content to be unchanged.

- "Position code" is construed as: Information that defines a location in the multimedia content.

- "Output device" is construed as: A device that outputs for purposes of display, or that displays, decoded multimedia content.

- "Configuration identifier" is construed as: An identifier of the consumer system (including hardware and software) that is used to determine if the navigation objects apply to the particular consumer system.

- "Displaying a representation including a description of each of the plurality of navigation objects" is construed as: Displaying one or more words, symbols, images, or a combination thereof to depict, denote, or delineate the navigation objects, whether individually or in combination.

- "Portion of the multimedia content defined by the particular navigation object" is construed as: The multimedia content that is defined by the start position and stop position of a navigation object.

- "Object store" is construed as: The collection that contains the navigation objects of at least one multimedia presentation.

- "Defin[e/ed/es/ing]" is construed as: Assign or specify [a start position, stop position, or filtering action].

Signed August 26, 2019.

BY THE COURT

_____
David Nuffer
United States District Judge