Brent O. Hatch (5715)
  hatch@hatchpc.com
HATCH LAW GROUP, PC
22 East 100 South, Suite 400
Salt Lake City, Utah 84111
Tel: (801) 869-1919

Alex V. Chachkes (*pro hac vice*)
  achachkes@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
51 West 52nd Street
New York, NY 10019

G. Hopkins Guy, III (*pro hac vice*)
  Hop.guy@bakerbotts.com
BAKER BOTTS
1001 Page Mill Road
Building One, Suite 200
Palo Alto, CA 94304-1007

*Attorneys for Defendants DISH Network L.L.C. and*
*EchoStar Technologies L.L.C.*

---

# UNITED STATES DISTRICT COURT

## District of Utah Central Division

| | |
|---|---|
| CLEARPLAY, INC.,<br><br>Plaintiff<br><br>vs.<br><br>DISH NETWORK L.L.C., and<br>ECHOSTAR TECHNOLOGIES L.L.C.,<br><br>Defendants. | **REPLY IN SUPPORT OF DEFENDANTS' MOTION TO STAY PENDING REEXAMINATION PROCEEDINGS**<br><br>Case No.:  2:14-cv-00191<br><br>Judge David Nuffer<br><br>Magistrate Judge Cecilia M. Romero |

DISH's motion to stay this lawsuit pending resolution of the four *ex parte* reexamination proceedings addressing all asserted claims in this case should be granted because the factors weigh in favor of a stay.  ClearPlay opposes the stay largely on the grounds that, even if DISH can show the factors favor a stay, it should have made this motion years ago.  ClearPlay seems largely to ignore that (a) the *ex parte* reexaminations include two new prior art references *not previously identified by ClearPlay* during prosecution or by the parties in this lawsuit that were not revealed until after ClearPlay clarified its intention to rely on doctrine of equivalents ("DOE") arguments related to "navigation object"; (b) in August 2020, ClearPlay expanded the opinions of its expert, Dr. Feamster, through a supplemental expert report to include DOE arguments conflicting with ClearPlay's prior disclaimers and not set out in Dr. Feamster's original expert report; and (c) ClearPlay, as part of its Patent Owner's Statement to the United States Patent and Trademark Office ("PTO") filed a declaration of its invalidity expert in this case, Dr. Henry Houh.  The result of Dr. Houh's involvement in both the *ex parte* reexaminations and this litigation on the same issues is that the two proceedings are now inextricably intertwined and his opinions offered in the *ex parte* reexamination regarding the prior art and validity of the ClearPlay patents will be raised at trial.  As stated in the Motion, all of the legal factors weigh in favor of a stay pending reexamination.

I.     **The *Ex Parte* Reexamination of Each Asserted Claim is Exceptional—Particularly In View of ClearPlay's Inconsistent Infringement and Invalidity Arguments.**

The circumstances presented here are exceptional for a number of reasons, including: 1) the PTO ordered reexamination of *all* asserted claims, thus presenting a possibility of completely resolving this dispute, or at minimum a likelihood of significantly reducing the issues in this dispute; and 2) the PTO will likely address inconsistent validity and infringement arguments that ClearPlay has raised on its patents.  "'[T]here is a liberal policy in favor of granting motions to stay proceedings

pending the outcome of USPTO reexamination proceedings.'" *Nautilus, Inc. v. Icon Health & Fitness, Inc.*, Case No. 1:17-cv-00154-DN, 2018 WL 4215095, at *2 (D. Utah Sept. 4, 2018) (quoting *ASCII Corp. v. STD Entm't USA, Inc.*, 844 F. Supp. 1378, 1381 (N.D. Cal. 1994)).

Each of ClearPlay's claims at issue requires "navigation objects"—packages of information that allow for the claimed systems to activate filtering actions during certain portions of movie content. ClearPlay has repeatedly asserted a broad reading of these "navigation objects" when it alleges that DISH infringes ClearPlay's patents. But at the same time, ClearPlay has argued the same term should be construed narrowly, as part of ClearPlay's effort to distinguish the prior art from its patent claims and escape invalidity—narrow positions ClearPlay has taken before the PTO and this Court.

"Reexaminations can 'provide the district court with the expert view of the PTO.'" *Cooper Notification, Inc. v. Twitter, Inc.*, 545 Fed. Appx. 959, 965 (Fed. Cir. 2013) (quoting *Gould v. Control Laser Corp.*, 705 F.2d 1340 (Fed.Cir.1983)). The PTO's expert view of "navigation object" and other claim terms, as identified in the reexamination requests, is of heightened relevance here given ClearPlay's inconsistent arguments. ClearPlay alleges in its arguments to the PTO that it has never asserted a "broad vs. narrow" interpretation of the "navigation object" limitation. Control No. 90/014,593, Reexamination of the '784 Patent, Patent Owner's Statement at 10 ("If Requester needs a so-called 'broad interpretation' to make the argument that control codes contain a filtering action, then it will be important to note that no position like this (i.e.: **broad versus narrow**) was ever taken by Patent Owner") (emphasis added). However, ClearPlay's non-infringement expert, Dr. Feamster, proposed *exactly* that in his first expert declaration to this Court, which he continues to incorporate into his opinions today. Sept. 1, 2017 Feamster Declaration at ¶¶ 89–91 ("considering a **broad construction**, whereby a navigation object comprises start time, stop time, and an

**associated** action, . . . " and a "**narrower construction** of the definition of a navigation object, . . . [with] the three elements of the navigation object appearing in a single location in a file or data structure within the source code.") (emphasis added).

Indeed, the Court repeatedly identified this very inconsistency in ClearPlay's positions in a related case in which ClearPlay asserts infringement of this same patent family. *See, e.g.*, *VidAngel v. ClearPlay*, Case No. 2:14-cv-00160, Dkt. 79 at 68:10–17, 201:1–3 (Court to ClearPlay: "But it seems to me that you're almost saying two different things, . . . no [prior art] had all these elements together; . . . and then you say, but they don't really have to be in a single object.  It can be **associated**."; "Now you want it to be a bundling information.  Before you were telling me it could be **associated** information. . . . But when we were talking about infringement, you were saying it could be distributed.").  ClearPlay's inconsistent positions now carry through to this case, and present further exceptional circumstances that merit a stay pending the PTO's review.

Further, the circumstances are exceptional because ClearPlay's infringement arguments under DOE raise the same inconsistency—an issue that came into focus later in 2020.  Dr. Feamster's expert report on infringement issues did not allege any DOE infringement arguments for navigation objects, despite raising multiple other DOE arguments.  *See* Nov. 25, 2019 Feamster Expert Report, *passim* (arguing infringement under DOE for the "configuration identifier," "disabling," "object store," and other claim limitations but never for the navigation object itself).[1] Between Dr. Feamster's omission of DOE arguments addressing navigation objects and ClearPlay's prior statements distinguishing the prior art before both the PTO and this Court, DISH's

---

[1] The only reference to Dr. Feamster's navigation object DOE arguments in his expert report was a single statement incorporating his prior declarations.  Nov. 25, 2019 Feamster Expert Report at ¶ 1.

understanding of ClearPlay's DOE infringement positions based on Dr. Feamster's Rule 26(f) disclosures was that "Dr. Feamster does not make a doctrine of equivalents argument regarding navigation objects." Feb. 21, 2020 Goldberg Rebuttal Report at ¶¶ 159-162 (emphasis in original).

However, in June 2020, in response to a request for clarification from DISH, ClearPlay's surprising response was that Dr. Feamster has incorporated such an argument, along with nearly 200 paragraphs of additional argument, "by reference" to his declarations. Rather than engage in motion practice to resolve whether this is sufficient under Rule 26(a)(2), the parties agreed to supplemental expert reports to enable ClearPlay to clarify its DOE positions. While Dr. Feamster's supplemental report, filed August 20, 2020, explicitly asserted that DISH's "announcement file, segment file, and segment bookmarks literally infringe . . . [and] also infringe under doctrine of equivalents" with respect to navigation objects, it also muddied the waters by, for example, arguing both the presence and absence of a descriptor in certain files can define the same filtering action. *Compare* Feamster Supplement at ¶ 10 ("The lack of an autohop_mode_descriptor coupled with the Show Metadata announcement file defines the filtering action, here an automatic skip") *with* Feamster Feb. 8, 2018 Declaration at ¶ 7 ("The autohop_mode descriptor and hopMode variable are thus one way that Defendants' AutoHop technology defines a filtering action of skip"). ClearPlay's DOE arguments made in late 2020, coupled with the inconsistencies in ClearPlay's assertions in the VidAngel case, prior PTO proceedings, and again before the PTO in the present reexaminations, renders the need for a reexamination an exceptional circumstance well beyond that seen in a typical patent case. It will grant the PTO an opportunity to clarify the validity and scope of ClearPlay's patent claims, and focus the issues for trial, if any remain.[2]

---

[2] Despite ClearPlay's cries that its patents previously have been challenged exhaustively, the PTO has never considered the particular prior art references now at issue, and past proceedings have

## II.     The Stay Will Not Unduly Prejudice ClearPlay.

ClearPlay fails to identify any *undue* prejudice that would result from granting this motion

to stay.  Dkt. 342 at 7–8.  The only prejudice that ClearPlay articulates in any detail is the delay that

would be inherent in staying the case while the PTO completes its review.  However, the "delay

inherent in the reexamination process does not constitute, by itself, undue prejudice."  *Nautilus*,

2018 WL 4215095 at *3.  "A stay will not diminish the monetary damages to which [the plaintiff]

will be entitled if it succeeds in its infringement suit."  *VirtualAgility Inc. v. Salesforce.com, Inc.*,

759 F.3d 1307, 1318 (Fed. Cir. 2014).[3]  The delay for a reexamination that will proceed regardless

in clarifying the issues is the opposite of prejudice, as the Court and the parties will all benefit

thereby.  The delay associated with the PTO's review fails to establish "undue prejudice" as a matter

of law.  *See Nautilus*, 2018 WL 4215095, at *3.

ClearPlay's only other alleged prejudice beyond delay is that the scope and damages

attributable to its claims may change as a result of the reexamination proceedings.  Dkt. 342 at 8

("Dish's dilatory filing deprives ClearPlay from amending its patents (should it choose to) without

being accused of changing the scope of the patent").  However, this is not unduly prejudicial because

the timing of DISH's requests for reexamination has no bearing on whether ClearPlay will have to

---

invalidated a number of ClearPlay's claims.  For example, ClearPlay's '784 Patent survived a prior
reexamination request filed in 2012, which was denied, but the final written decision in *inter partes*
review resulted in claims 1, 2, and 4–9 rendered unpatentable under 35 U.S.C. § 103, which was
subsequently affirmed by the Federal Circuit.  *ClearPlay, Inc. v. CustomPlay, LLC*, IPR2014-00339,
Paper 27 (P.T.A.B. July 21, 2015); *ClearPlay, Inc. v. CustomPlay, LLC*, 668 Fed. Appx. 365, 366
(Fed. Cir. 2016).

[3] ClearPlay also states generally that "[m]emories will fade," but fails to allege how it will suffer
any particular harm or how it could possibly suffer more than DISH by any such faded memories.
Dkt. 342 at 8.

amend or forfeit its claims in view of the prior art—it is merely a typical outcome of reexamination proceedings in which claims are amended to overcome new prior art.

ClearPlay also notes the "PTO has issued no final office actions against ClearPlay's patents," Dkt. 342 at 7, but neglects to mention the PTO has not yet issued an office action precisely *because* ClearPlay filed a Patent Owner's Statement.  Additionally, after receiving the order granting reexamination, ClearPlay delayed as long as possible before filing a Patent Owner's Statement in the *ex parte* reexamination proceedings on the last day allowable under the rules.  Had ClearPlay sought a rapid conclusion to these or the reexamination proceedings, it could have filed earlier or even foregone filing such a statement and thus received a first office action sooner.

### III.   DISH's Motion to Stay is Not Untimely.

ClearPlay's emphasis on DISH's knowledge of the Bent prior art reference is misplaced. ClearPlay does not contest that the *ex parte* reexaminations include two new prior art references not previously identified by ClearPlay during prosecution or by the parties in this lawsuit: U.S. Patent Nos. 5,161,034 ("Klappert") and 5,951,639 ("MacInnis").  DISH could not, and would not, have filed an *inter partes* review or *ex parte* reexamination in 2017 as to all asserted claims relying on Bent alone, and DISH only discovered the two new references that prompted the reexamination requests in June and July 2020.  Further, DISH discovered these references only after learning ClearPlay intended to maintain its DOE arguments—the very arguments that exacerbate ClearPlay's inconsistent positions regarding the "broad" and "narrow" readings of "navigation objects."  Upon discovering these references, DISH timely drafted and filed the *ex parte* reexaminations.  DISH then filed this motion only after the PTO ordered reexamination of *every single asserted claim*.

**IV.**     **<u>The Stay is Likely to Simplify Issues.</u>**

"The most important factor bearing on whether to grant a stay is whether the stay is likely to simplify the issues at trial." *British Telecommunications PLC v. IAC/InterActiveCorp*, CV 18-366-WCB, 2019 WL 4740156, at \*7 (D. Del. Sept. 27, 2019).  The PTO has now determined DISH's *ex parte* reexamination requests "raised substantial new questions of patentability"; thus, the "reexamination proceedings have a likelihood of simplifying the issues in this case." *Nautilus*, 2018 WL 4215095, at \*3.  "[G]ranting a stay can 'avoid inconsistent results, narrow the issues, obtain guidance from the PTO, or simply . . . avoid the needless waste of judicial resources.'" *Advanced Micro Devices, Inc. v. LG Elecs., Inc.*, 14-CV-01012-SI, 2015 WL 545534, at \*2 (N.D. Cal. Feb. 9, 2015) (quoting *Pragmatus AV, LLC v. Facebook, Inc.*, 11-CV-02168-EJD, 2011 WL 4802958, at \*2 (N.D. Cal. Oct. 11, 2011)).  "Despite the substantial time and effort already spent in this case, the most burdensome task is yet to come.  A determination from the PTAB that all the asserted claims are patent ineligible will spare the parties and the district court the expense of any further litigation, including a trial," even if the parties are "mere months away from [their] trial date." *Smartflash LLC v. Apple Inc.*, 621 Fed. Appx. 995, 1005 (Fed. Cir. 2015).

Indeed, as this Court has previously found, the mere finding by the PTO that there is a substantial new question raised as to patentability is in and of itself enough to establish that the issues are likely to be simplified.  *Nautilus*, 2018 WL 4215095, at \*2; *Corel Software, LLC v. Microsoft Corp.*, No. 2:15-CV-528-JNP-PMW, 2016 WL 4444747, at \*2 (D. Utah Aug. 23, 2016); *Icon Health & Fitness, Inc. v. Park City Entm't, Inc.*, No. 1:10–CV–195 DAK, 2011 WL 5239733, at \*2 (D. Utah Nov. 1, 2011).

Moreover, as DISH previously noted—and ClearPlay admits—nearly 80% of all claims addressed in reexaminations proceedings result in amendments to or cancellation of the claims.

Dkt. 341 at 3; Dkt. 342 at 9.  Accordingly, it is highly likely that at least one of the thirteen claims remaining at issue are likely to be found invalid during the reexamination proceedings.  For example, during the prior stay in this case, the PTO invalidated all 25 claims of the previously asserted ClearPlay patent, U.S. Patent No. 8,117,282, as well as 8 claims from U.S. Patent No. 7,526,784 (the "'784 Patent") and 28 claims from U.S. Patent No. 7,543,318 (the "'318 Patent").  IPR2014-00430, Paper 20 (P.T.A.B. Aug. 14, 2015); IPR2014-00339, Paper 27 (P.T.A.B. July 21, 2015); IPR2014-00383, Paper 27 (P.T.A.B. July 21, 2015).  ClearPlay cannot amend the expired '318 Patent claims to avoid the prior art identified in the *ex parte* reexaminations and may be similarly barred from amendments as additional ClearPlay patents may expire during the reexamination proceedings.  Further, the '318 and '784 Patents share similar claims and the "construction and claims in patents '799 and '970 are similar."  *See* Nov. 25, 2019 Feamster Expert Report at ¶¶ 50-52 (addressing the '799 and '970 and'318 and '784 Patents as two similar pairs). Accordingly, any amendments or cancellations of claims in one patent are likely to result in similar amendments or cancellations across multiple patents, potentially resolving this case entirely. Additionally, if ClearPlay does amend any unexpired claims, it will surrender claim scope and damages.  Finally, given that three of the patents at issue here have only a single claim at issue,[4] invalidation of even a single claim from these patents can substantially reduce the number of patents asserted at trial.

The *ex parte* reexaminations will also simplify the issues at trial by creating additional prosecution history that is likely to limit the scope of surviving claims, if any.  In addition to the

---

[4] ClearPlay has asserted only one claim from each of ClearPlay's '784 and '318 Patents and U.S. Patent No. 6,898,799 (the "'799 Patent").

inconsistencies between ClearPlay's arguments addressing navigation objects in the PTO and this Court, *see supra*, ClearPlay's Patent Owner's Statement now advances new claim construction arguments. For example, ClearPlay now argues that when "a navigation object is disabled, its related information is not retrieved from the object store and it is not used in the filtering process." Control No. 90/014,593, Patent Owner's Statement at 7. Dr. Feamster's expert report alleges DISH's system infringes under the DOE by merely "ignoring or disabling the filtering data." *Compare, e.g.*, Nov. 25, 2019 Feamster Expert Report at ¶ 54 with ¶¶ 153, 172, 321. Thus, ClearPlay has already disavowed claim scope upon which its infringement expert relied. Additionally, ClearPlay now argues that "navigation objects may be disabled by including an indication *within the navigation objects*." Control No. 90/014,593, Patent Owner's Statement at 12, 18 (emphasis added). However, the PTO concluded exactly the opposite: "The Specification does not provide any special definition for the term 'disable'" and "Claim 3 does not require disabling to result from an indication or marking within the navigation object." IPR2014-00339, Paper 12 at 9 (P.T.A.B. July 23, 2014). Accordingly, ClearPlay's statements in the *ex parte* reexaminations are creating new prosecution history that will narrow the scope of the patent claims and thereby simplify this case.

Additionally, ClearPlay now further places at issue the overlap between this litigation and the reexamination proceedings, by filing in the patent office proceedings a declaration from Dr. Henry Houh, ClearPlay's invalidity expert in this case. Control No. 90/014,593, Declaration of Dr. Henry Houh in Support of Patent Owner's Statement in Ex Parte Reexamination. Given Dr. Houh's involvement in both the *ex parte* reexaminations and this litigation, the two proceedings are now even more heavily linked and overlapping, and his opinions offered in the *ex parte* reexamination regarding the prior art and validity of the ClearPlay patents are highly likely to be raised in

depositions in this case and at trial.  His statements are also likely to narrow the scope of the patent claims and highlight inconsistencies in his own positions in this case, as well as inconsistencies between Dr. Houh's positions and the positions of ClearPlay's infringement expert, Dr. Feamster. ClearPlay's decision in this respect further highlights the merits of allowing the PTO to finish its work and allowing ClearPlay's technical expert in this case to finalize his positions.

ClearPlay also argues the issues at trial will not be narrowed, because *ex parte* reexaminations do not result in any estoppel that would limit DISH's ability to rely on the Bent reference at trial.  But that argument falls flat because, regardless of that lack of estoppel, courts, including this one, have adopted "'a liberal policy in favor of granting motions to stay proceedings pending the outcome of USPTO reexamination proceedings.'"  *Nautilus*, 2018 WL 4215095 at *2 (quoting *ASCII*, 844 F. Supp. at 1381).  "In summary, staying this matter without binding [defendant] to the outcome would not prejudice [plaintiff] in any significant way and would simplify the issues at trial."  *WABCO Holdings, Inc. v. Bendix Commer. Vehicle Sys.*, Civil Action No. 09-3179 (DMC), 2010 U.S. Dist. LEXIS 64036, at *8 (D.N.J. 2010).

## CONCLUSION

For the foregoing reasons, DISH respectfully requests that the Court stay this case in its entirety pending final resolution of the reexamination proceedings.  To the extent the Court allows or requires oral argument on this motion, DISH asks that the telephonic hearing date be set quickly.

DATED this 15th day of January, 2021

By:     _/s/ Brent O. Hatch_____
HATCH LAW GROUP, PC
Brent O. Hatch

ORRICK, HERRINGTON & SUTCLIFFE, LLP
Alex V. Chachkes

BAKER BOTTS LLP
G. Hopkins Guy, III

*Attorneys for Defendants*