THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| CLEARPLAY, INC.,<br><br>　　　　　　　　Plaintiff,<br><br>v.<br><br>DISH NETWORK, LLC, and ECHOSTAR TECHNOLOGIES, LLC,<br><br>　　　　　　　　Defendants. | **MEMORANDUM DECISION AND ORDER RE: CLEARPLAY'S *DAUBERT* MOTIONS**<br><br><br>Case No. 2:14-cv-00191-DN-CMR<br><br>District Judge David Nuffer<br>Magistrate Judge Cecilia M. Romero |

　　　　Plaintiff ClearPlay, Inc. ("ClearPlay") filed six motions seeking the exclusion of

Defendants Dish Network, LLC and EchoStar Technologies, LLC's (collectively "Dish")

experts' opinions and testimony.[1]

## OVERVIEW

　　　　ClearPlay's *Daubert* Motion No. 1 seeks to exclude portions of Dr. Clifford Reader's

opinions and testimony regarding the invalidity of ClearPlay's asserted patents. ClearPlay

misconstrues Dr. Reader's opinions and testimony and the effect of a prior order denying

supplemental claim construction. Also, Dr. Reader's opinions were timely and sufficiently

disclosed. Therefore, ClearPlay's *Daubert* Motion No. 1[2] is DENIED.

---

[1] Plaintiff's Motion to Exclude in Part the Testimony of Clifford Reader on Invalidity ("ClearPlay's *Daubert* Motion No. 1"), docket no. 426, filed Aug. 1, 2022; Plaintiff's Motion to Exclude Clifford Reader's Damages-Related Opinions ("ClearPlay's *Daubert* Motion No. 2"), docket no. 430, filed Aug. 1, 2022; Plaintiff's Motion to Exclude the Testimony of Stuart Lipoff and Robert Flavin ("ClearPlay's *Daubert* Motion No. 3"), docket no. 439, filed Aug. 1, 2022; Plaintiff's Motion to Exclude the Testimony of Benjamin Goldberg ("ClearPlay's *Daubert* Motion No. 4"), docket no. 427, filed Aug. 1, 2022; Plaintiff's Motion to Exclude in part the Testimony of Richard S. Hoffman ("ClearPlay's *Daubert* Motion No. 5"), docket no. 440, filed Aug. 1, 2022; Plaintiff's Motion to Exclude the Testimony of Sarah Butler ("ClearPlay's *Daubert* Motion No. 6"), docket no. 433, filed Aug. 1, 2022.

[2] Docket no. 426, filed Aug. 1, 2022.

ClearPlay's *Daubert* Motion No. 2 seeks exclusion of Dr. Reader's damages-related opinions and testimony. ClearPlay misconstrues Dr. Reader's opinions and testimony and the effect of the order denying supplemental claim construction. Dr. Reader's damages-related opinions and testimony are technical in nature; within the field of his expertise; and are sufficiently reliable. Therefore, ClearPlay's *Daubert* Motion No. 2[3] is DENIED.

ClearPlay's *Daubert* Motion No. 3 seeks exclusion of Robert Flavin and Stuart Lipoff as expert witnesses. There is no dispute regarding Flavin, and Dish does not intend to call Flavin as an expert witness at trial. However, ClearPlay fails to sufficiently articulate a prejudice caused by Dish's failure to timely make Lipoff available for deposition. And ClearPlay misconstrues Lipoff's report and the effect of the order denying supplemental claim construction. Therefore, ClearPlay's *Daubert* Motion No. 3[4] is GRANTED as to Flavin and DENIED as to Lipoff.

ClearPlay's *Daubert* Motion No. 4 seeks to exclude the opinions and testimony of Dr. Benjamin Goldberg regarding the invalidity of ClearPlay's asserted patents. ClearPlay misconstrues Dr. Goldberg's opinions and testimony and the effect of the order denying supplemental claim construction. But while Dr. Goldberg may testify regarding the U.S. Patent and Trademark Office ("USPTO") proceedings and record to rebut ClearPlay's expert witness (Dr. Nicholas Feamster), he is precluded from offering opinions that ClearPlay's conduct constitutes prosecution disclaimer or prosecution history estoppel. Therefore, ClearPlay's *Daubert* Motion No. 4[5] is DENIED in part and GRANTED in part.

ClearPlay's *Daubert* Motion No. 5 seeks to exclude potions of Richard Hoffman's opinions and testimony regarding damages. Hoffman's reasonable royalty opinions that rely on

---

[3] Docket no. 430, filed Aug. 1, 2022.

[4] Docket no. 439, filed Aug. 1, 2022.

[5] Docket no. 427, filed Aug. 1, 2022.

Dish's usage data are unreliable and inadmissible. But Hoffman's opinions and testimony regarding apportionment and non-infringing alternatives are sufficiently reliable and admissible. Therefore, ClearPlay's *Daubert* Motion No. 5[6] is GRANTED in part and DENIED in part.

ClearPlay's *Daubert* Motion No. 6 seeks exclusion of Sarah Butler as an expert witness. Butler is qualified to testify as an expert on surveys and market research, including survey and market research methodologies and consumer decision making, choice, and behavior in the context of surveys and market research. Butler's opinions and testimony regarding survey and market research methodologies and her criticism of underlying advertising materials and survey data are within her field of expertise, and are admissible. But Butler is not an economist, and is not qualified to offer expert opinions and testimony on valuation methodologies or value calculations, including criticisms of Dr. Sullivan's use of survey data in his valuation methodologies and value calculations. And Butler is not qualified to rework Dr. Sullivan's calculations or create her own valuations. Therefore, ClearPlay's *Daubert* Motion No. 6[7] is DENIED in part and GRANTED in part.

## Contents

OVERVIEW ........................................................................................................................... 1
STANDARD OF REVIEW ...................................................................................................... 4
DISCUSSION ......................................................................................................................... 7
    ClearPlay's *Daubert* Motion No. 1: Dr. Reader's opinions and testimony regarding
        invalidity are admissible .................................................................................. 7
    ClearPlay's *Daubert* Motion No. 2: Dr. Reader's damages-related opinions and testimony
        are admissible .................................................................................................. 11
    ClearPlay's *Daubert* Motion No. 3: Flavin is excluded as an expert, but Lipoff may
        testify as an expert and his opinions and testimony are admissible ..................... 13
    ClearPlay's *Daubert* Motion No. 4: Dr. Goldberg's opinions and testimony are
        admissible, but he may not opine that ClearPlay's conduct constitutes prosecution
        disclaimer or prosecution history estoppel ......................................................... 16

---

[6] Docket no. 440, filed Aug. 1, 2022.

[7] Docket no. 433, filed Aug. 1, 2022.

ClearPlay's *Daubert* Motion No. 5: Hoffman's reasonable royalty opinions that rely on Dish's usage data are inadmissible, but his opinions on apportionment and non-infringing alternatives are admissible ................................................................. 17
ClearPlay's *Daubert* Motion No. 6: Butler's opinions regarding Dish's advertisements, surveys, and market data are admissible, but she is not qualified to opine regarding valuation methodology or value calculations ....................................... 24
ORDER ............................................................................................................................ 28

**STANDARD OF REVIEW**

District courts serve as the gatekeepers of expert evidence and must decide which experts may testify before the jury and the permissible scope of that testimony.[8] In making these determinations, the district court is given "broad latitude."[9] But the district court must be mindful that the Federal Rules of Evidence generally favor the admissibility of expert testimony.[10] Excluding expert testimony is the exception rather than the rule.[11] "Vigorous cross-examination, the presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking . . . admissible evidence."[12] "[T]he [district] court's role as gatekeeper is not intended to serve as a replacement for the adversary system."[13]

FED. R. EVID. 702 governs the admissibility of expert testimony. The Rule requires, among other things, that "the evidence or testimony [of an expert] '[help] the trier of fact to understand the evidence or to determine a fact in issue.'"[14] "This condition goes primarily to relevance."[15] Relevant evidence has any tendency to make a fact of consequence in determining

---

[8] *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993).

[9] *Kuhmo Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 142 (1999).

[10] *Daubert*, 509 U.S. at 588.

[11] FED. R. EVID. 702 Advisory Notes.

[12] *Daubert*, 509 U.S. at 596.

[13] *United States v. 14.38 Acres of Land, More or Less Situated in Leflore Cty., State of Miss.*, 80 F.3d 1074, 1078 (5th Cir. 1996) (citing *Daubert*, 509 U.S. at 596).

[14] *Daubert*, 509 U.S. at 591 (quoting FED. R. EVID. 702).

[15] *Id*.

a case more or less probable than it would be without the evidence.[16] Thus, "an expert's testimony must provide insight and understanding about the facts and issues of the case."[17]

But the helpfulness of an expert's testimony is not without constraint. A two-step analysis is implemented to determine whether an expert's opinions are admissible under Rule 702.[18] First is a determination whether the expert is qualified by "knowledge, skill, experience, training, or education" to render the opinion.[19] And second is a determination whether the expert's opinions are "reliable."[20] Opinions for which an expert is not qualified to offer, or which are not reliable, must be excluded.

The district court "must also consider. . . whether the expert['s opinions] encroach[] upon the trial court's authority to instruct the jury on the applicable law, for it is axiomatic that the judge is the sole arbiter of the law and its applicability."[21] The Tenth Circuit Court of Appeals has recognized that:

> A witness cannot be allowed to give an opinion on a question of law. . . . In order to justify having courts resolve disputes between litigant, it must be posited as an a priori assumption that there is one, but only one, legal answer for every cognizable dispute. There being only one applicable legal rule for each dispute or issue, it requires only one spokesman of the law, who of course is the judge. . . . To allow anyone other than the judge to state the law would violate the basic concept. Reducing the proposition to a more practical level, it would be a waste of time if witnesses or counsel should duplicate the judge's statement of the law, and it would intolerably confound the jury to have it stated differently.[22]

---

[16] FED. R. EVID. 401.

[17] *Whatcott v. City of Provo*, No. 2:01-cv-00490-DB, 2003 WL 26101357, *2 (D. Utah June 2, 2003).

[18] *Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 969 (10th Cir. 2001).

[19] *Id*. (quoting FED. R. EVID. 702).

[20] *Id*.

[21] *Specht v. Jensen*, 853 F.2d 805, 807 (10th Cir. 1988).

[22] *Id*. (quoting Stoebuck, *Opinions on Ultimate Facts: Status, Trends, and a Note of Caution*, 41 Den. L. Cent. J. 226, 237 (1964)).

Some confusion may arise under "FED. R. EVID. 704, which allows witnesses to give their opinions on ultimate issues."[23] "While testimony on ultimate facts is authorized under Rule 704, . . . testimony on ultimate questions of law is not favored."[24] "The basis for this distinction is that testimony on the ultimate factual questions aids the jury in reaching a verdict; testimony which articulates and applies the relevant law, however, circumvents the jury's decision-making function by telling it how to decide the case."[25]

But not all testimony regarding legal issues is inadmissible. "[A] witness may refer to the law in expressing an opinion without that reference rendering the testimony inadmissible."[26] "[A] witness may [also] properly be called upon to aid the jury in understanding the facts in evidence even though reference to those facts is couched in legal terms."[27] Thus, "an expert's testimony is proper under [FED. R. EVID. 702] if the expert does not attempt to define the legal parameters within which the jury must exercise its fact-finding function."[28] But "when the purpose of testimony is to direct the jury's understanding of the legal standards upon which their verdict must be based, the testimony cannot be allowed."[29] "In no instance can a witness be permitted to define the law of the case."[30] Nor may a witness be "allowed to instruct the jury on how it should decide the case."[31] "[A]n expert is not to opine on the weight of the facts or take a

---

[23] *Id*.

[24] *Id*. at 808.

[25] *Id*.

[26] *Id*. at 809.

[27] *Id*.

[28] *Id*. at 809-810.

[29] *Id*. at 810.

[30] *Id*.

[31] *Id*. at 808.

principal role in sifting, weighing and reciting them for the jury."[32] Such impermissible

testimony is not helpful under FED. R. EVID. 702.

## DISCUSSION

### ClearPlay's *Daubert* Motion No. 1: Dr. Reader's opinions and testimony regarding invalidity are admissible

ClearPlay's *Daubert* Motion No. 1 seeks to exclude portions of Dr. Clifford Reader's

opinions and testimony regarding the invalidity of ClearPlay's asserted patents. Specifically,

ClearPlay seeks exclusion of Dr. Reader's anticipation opinions, arguing that Dr. Reader has

conceded that prior art does not anticipate ClearPlay's asserted patents.[33] ClearPlay also seeks

exclusion of Dr. Reader's opinions and testimony and opinions regarding the USPTO

proceedings and record, arguing that his opinions and testimony are inconsistent with the court's

claim construction.[34] And ClearPlay seeks exclusion of Dr. Reader's opinions regarding

single-reference obviousness and obviousness based on the combination of certain prior art

(Flavin and Iggulden), arguing that the issues were untimely and insufficiently disclosed through

Dr. Reader's supplemental report.[35]

ClearPlay's first two arguments (regarding anticipation and the USPTO proceedings and

record) suffer from related flaws arising from ClearPlay's characterization of Dr. Reader's

opinions and testimony and ClearPlay's misunderstanding of an order denying supplemental

claim construction. These issues stem from what is characterized as the "single-object" and

"multi-object" approaches the claim term "navigation object."[36] Under the single-object

---

[32] *Rowe v. DPI Specialty Foods, Inc.*, No. 2:13-cv-00708-DN-EJF, 2015 WL 4949097, *5 (D. Utah Aug. 19, 2015).

[33] ClearPlay's *Daubert* Motion No. 1 at 6.

[34] *Id*. at 10-11.

[35] *Id*. at 7-9.

[36] *Id*. at 4-6, 10-11.

approach, the elements that comprise a navigation object are contained within the same object, file, or data structure (that being the "navigation object").[37] Under the multi-object approach, the elements are not necessarily within the same object, file, or data structure. Rather, they may be located or contained in multiple files or data structures having an association with or a linked to the "navigation object."[38]

Dish argues that ClearPlay improperly shifts its approach to "navigation object" when it seeks to avoid invalidity (by arguing the single-object approach) and then seeks a finding of infringement (by arguing the multi-object approach).[39] Dr. Reader's opinions and testimony address invalidity and the USPTO proceedings and record under both approaches. Dr. Reader concedes that none of the prior art references cited in his original report alone anticipate the asserted patents under the single-object approach.[40] However, Dr. Reader opines that the asserted patents are anticipated by prior art under the multi-object approach, an approach that Reader opines is inconsistent with the court's claim construction.[41]

Based on the parties' stipulation, "navigation object" was construed as: "Plain and ordinary meaning (as defined by the terms of the claims themselves)."[42] However, Dish sought supplemental claim construction of "navigation object" (and other construed terms) based on its

---

[37] *Id*.; Defendants Dish Network L.L.C. and EchoStar Technologies L.L.C.'s Response in Opposition to Plaintiff's Motion to Exclude Clifford Reader's Anticipation and Obviousness Opinions ("Response to ClearPlay's *Daubert* Motion No. 1") at 2-6, docket no. 470, filed Aug. 31, 2022. The single-object approach has also been characterized as the "narrow," "strict," and "correct" interpretation. *Id*; ClearPlay's *Daubert* Motion No. 1 at 4-6, 10-11.

[38] Response to ClearPlay's *Daubert* Motion No. 1 at 2-6; ClearPlay's *Daubert* Motion No. 1 at 4-6, 10-11. The multi-object approach has also been characterized as the "broad," "incorrect," and "ClearPlay's" interpretation. Response to ClearPlay's *Daubert* Motion No. 1 at 2-6; ClearPlay's *Daubert* Motion No. 1 at 4-6, 10-11.

[39] Response to ClearPlay's *Daubert* Motion No. 1 at 2-6; ClearPlay's *Daubert* Motion No. 1 at 4-6, 10-11.

[40] Response to ClearPlay's *Daubert* Motion No. 1 at 6; Supplementary Expert Report of Dr. Clifford Reader ¶ 3 at 1-2, docket no. 459-17, filed Aug. 25, 2022.

[41] Response to ClearPlay's *Daubert* Motion No. 1 at 6; Supplementary Expert Report of Dr. Clifford Reader ¶ 3 n.1 at 1.

[42] Memorandum Decision and Order Regarding Claim Construction at 5, 18, docket no. 309, filed Aug. 26, 2019.

perception of ClearPlay's shifting approaches to the term.[43] Supplemental claim construction was denied based on Dish's failure to establish an actual dispute regarding navigation object's stipulated construction.[44]

ClearPlay misunderstands the order denying supplemental claim construction as a rejection of the single-object approach to navigation object. No such rejection occurred or was intended. Dish proposed a supplemental construction of "navigation object" which incorporated language regarding the single-object approach.[45] But this was then unnecessary because there was no dispute that the proper construction of "navigation object" was the term's plain and ordinary meaning (as defined by the claims themselves).[46] The order denying supplemental claim construction affirmed this as the proper construction.[47] And to be clear, the single-object approach to navigation object is the proper and consistent approach under this court's claim construction. Therefore, there is not a sufficient basis for excluding Dr. Reader's opinions and testimony regarding anticipation and the USPTO proceedings and record.

ClearPlay's third argument (regarding untimely and insufficiently disclosed obviousness theories) is a closer issue. Utah's Local Patent Rules require early disclosure of and particulars behind theories for invalidating asserted patents through obviousness.[48] Dish's final invalidity contentions do disclose single-reference obviousness and obviousness based on the combination

---

[43] Motion Re: Supplemental Claim Construction Pursuant to *O2 Micro*, docket no. 355, filed July 14, 2021.

[44] Memorandum Decision and Order Denying Motion Regarding Supplemental Claim Construction at 3-5, docket no. 367, filed Mar. 1, 2022.

[45] *Id*.

[46] *Id*.

[47] *Id*.

[48] UT LPR Preamble, 2.4(b).

of prior art references (including the Flavin and Iggulgen combination).[49] Dr. Reader also discussed and opined on these issues in his original report.[50] ClearPlay's arguments to the contrary rely on semantics that are not persuasive. Thus, the issue is not one of the disclosures' timeliness. It is one of the disclosures' sufficiency.

Dish's disclosures identify and chart the references of prior art relevant to Dr. Reader's challenged obviousness opinions.[51] But they do not contain a detailed discussion of how a single prior art reference could be modified to render the asserted patents obvious. Nor is there a detailed discussion or charting of how the specific combination of Flavin and Iggulden render the asserted patents obvious. An important purpose of the disclosure requirements in Utah's Local Patent Rules is to allow the parties to pin down theories of liability and defense.[52] Dish's disclosures in this case are not a model of specificity. But the disclosures sufficiently provided ClearPlay with notice and charting of the prior art references on which Dr. Reader relies for his opinions that the asserted patents are invalid through single-reference and combined-reference obviousness. The purpose of the Local Patent Rules was fulfilled. There is not a sufficient basis for excluding Dr. Reader's opinions regarding single-reference obviousness and obviousness based on the combination of Flavin and Iggulden.

Therefore, ClearPlay's *Daubert* Motion No. 1[53] is DENIED.

---

[49] Defendants' Final Invalidity Contentions With Respect to the Asserted Claims of U.S. Patent 7,577,970, U.S. Patent 7,543,318, U.S. Patent 7,526,784, and U.S. Patent 6,898.799 ("Final Invalidity Contentions") at 6-7, 9-10, Ex. B-E, docket no. 459-18, filed Aug. 25, 2022.

[50] Expert Report of Dr. Clifford Reader ("Reader Report") ¶ 124 at 35, ¶ 318 at 96, Ex. B3, Ex. C2, Ex. D2, docket no. 459-23, filed Aug. 25, 2022.

[51] Final Invalidity Contentions at 6-7, 9-10, Ex. B-E; Reader Report ¶ 124 at 35, ¶ 318 at 96, Ex. B3, Ex. C2, Ex. D2.

[52] *Vivint, Inc. v. Alarm.com, Inc.*, No. 2:15-cv-00392-CW, 2020 WL 3871346, *6 (D. Utah July 9, 2020); *see also O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1365 (Fed. Cir. 2006) (discussing purposes for local patent rules).

[53] Docket no. 426, filed Aug. 1, 2022.

**ClearPlay's *Daubert* Motion No. 2: Dr. Reader's
damages-related opinions and testimony are admissible**

ClearPlay's *Daubert* Motion No. 2 seeks exclusion of Dr. Reader's damages-related

opinions and testimony. ClearPlay first argues that Dr. Reader's opinions improperly rely on

limitations that are not in the asserted patents' language, and on an alternative claim construction

that is inconsistent with the court's claim construction.[54] This argument fails for similar reasons

to those discussed in ClearPlay's *Daubert* Motion No. 1.[55] ClearPlay misconstrues Dr. Reader's

opinions and testimony and the effect of the order denying supplemental claim construction. Dr.

Reader discussed his understanding of how the asserted patents and Dish's technology work

using terminology that does not appear in the asserted patents.[56] This use of terminology to

characterize the technologies (and how they work) is not improper reliance on limitations that are

not in the asserted patents' language. Rather, it is properly supported by Dr. Reader's discussion

of the asserted patents and the parties' technologies.[57]

Dr. Reader's opinions also assume infringement based on his understanding of the claim

interpretation that ClearPlay's expert (Dr. Feamster) applied to opine that Dish's accused

products infringe the asserted patents.[58] Dr. Reader opines that this interpretation is inconsistent

with the court's claim construction, but that he must use it to assume infringement.[59] This is not

an impermissible use of a claim construction that is inconsistent with the court's claim

---

[54] ClearPlay's *Daubert* Motion No. 2 at 8-9.

[55] *Supra* Discussion at 7-9.

[56] Expert Report of Dr. Clifford Reader ("Reader NOI Report") ¶ 4 at 1-2, ¶ 32 at 12, ¶ 41 at 14, ¶ 43 at 15, ¶¶ 72-73 at 24, docket no. 443-8, filed under seal Aug. 1, 2022.

[57] *Id*. ¶¶ 9-38 at 4-13.

[58] *Id*. ¶¶ 40-41 at 14; Deposition Transcript of Clifford Reader, Ph.D. dated June 1, 2022 ("Reader Depo.") at 25:11-18, docket no. 475-1, filed under seal Aug. 31, 2022.

[59] Reader NOI Report ¶¶ 40-41 at 14; Reader Depo. at 25:11-18.

construction. It is necessary rebuttal to the opinions offers by Dr. Feamster. Dr. Reader's opinions and testimony are sufficiently supported; are, where applicable, consistent with the court's claim construction; and are admissible.

ClearPlay next argues that Dr. Reader's opinions regarding non-infringing alternatives lack evidentiary support.[60] However, Dr. Reader sufficiently discusses the basis for the creation and implementation of non-infringing alternatives through the combination of a Dish patent and three prior art references.[61] ClearPlay's arguments go to the weight of Dr. Reader's opinions, not the opinions' admissibility.

ClearPlay also argues that Dr. Reader's is unqualified to offer economic opinions regarding apportionment and that his opinions lack evidentiary support.[62] There is no dispute that Dr. Reader is not an economist. However, Dr. Reader's apportionment opinions are not economic in nature. Dr. Reader offers a technical analysis based on his understanding of the parties' technologies; distribution of television content in US television markets; and Dish's infrastructure for implementing its technology.[63] His opinions have economic implications and are relevant to apportioning value. But the opinions remain technical in nature and are within his field of expertise. His apportionment opinions are also sufficiently supported and reliable, and are admissible.

Therefore, ClearPlay's *Daubert* Motion No. 2[64] is DENIED.

---

[60] ClearPlay's *Daubert* Motion No. 2 at 9-11.

[61] Reader NOI Report ¶¶ 42-70 at 14-23; Reader Depo. at 26:5-43:20, 45:16-48:23, 49:12-52:24, 53:12-56:19.

[62] ClearPlay's *Daubert* Motion No. 2 at 11.

[63] Reader NOI Report ¶¶ 9-41 at 2-14, ¶¶ 71-73 at 23-24.

[64] Docket no. 430, filed Aug. 1, 2022.

**ClearPlay's *Daubert* Motion No. 3: Flavin is excluded as an expert, but
Lipoff may testify as an expert and his opinions and testimony are admissible**

ClearPlay's *Daubert* Motion No. 3 seeks exclusion of Robert Flavin and Stuart Lipoff as expert witnesses based on Dish's failure to timely make them available for deposition.[65] ClearPlay also argues Lipoff's opinions and testimony should be excluded because Lipoff relies on an alternative claim construction that is inconsistent with the court's claim construction.[66]

There is no dispute regarding Flavin.[67] During expert discovery, Dish represented to ClearPlay that it did not intend to call Flavin as an expert witness at trial.[68] Dish's position has not changed.[69] To avoid any prejudice caused by additional briefing and potential delays to the scheduled trial date should Dish decide to reconsider its position, it is appropriate that Dish be precluded from calling Flavin as an expert witness at trial.

Regarding Lipoff, there is no dispute that Dish failed to timely make Lipoff available for deposition during expert discovery. When ClearPlay inquired about Lipoff's availability for deposition, Dish indicated that it was unsure whether it would call Lipoff as an expert witness at trial and that it would follow up with ClearPlay.[70] Dish did not follow up with its intent to call Lipoff as an expert witness at trial until July 6, 2022,[71] three weeks after the close of expert

---

[65] ClearPlay's *Daubert* Motion No. 3 at 7.

[66] *Id*. at 8-9.

[67] Defendants' Dish Network L.L.C. and EchoStar Technologies L.L.C.'s Response in Opposition to Plaintiff's Motion to Exclude the Testimony of Stuart Lipoff and Robert Flavin at 1, docket no. 476, filed Aug. 31, 2022.

[68] *Id*.

[69] *Id*.

[70] Declaration of Richard Williams in Support of Plaintiff's Motion to Exclude the Testimony of Stuart Lipoff and Robert Flavin ¶ 7 at 2, docket no. 442, filed Aug. 1, 2022.

[71] Email from Brent Hatch to Richard Williams and Samuel C. Straight dated July 6, 2022 ("Hatch Email re: Lipoff"), docket no. 442-3, filed Aug. 1, 2022.

discovery.[72] But this failure does not necessarily require Lipoff's exclusion as an expert witness at trial.

Dish originally disclosed Lipoff as a fact witness (with personal knowledge of the Iggulden prior art reference) in its amended initial disclosures on July 17, 2017.[73] Dish later identified Lipoff as an expert witness and timely served ClearPlay with Lipoff's report on November 25, 2019.[74] The contents of Lipoff's report relate to his knowledge of prior art and the effect of prior art on the validity of ClearPlay's asserted patents.[75]

Through Dish's disclosures, ClearPlay was not surprised or unable to respond to Lipoff's opinions and testimony. There is no question that ClearPlay has been aware of the contents of Lipoff's report for over three years. And ClearPlay's expert (Dr. Henry H. Houh) prepared a report that includes a section expressly rebutting Lipoff's invalidity opinions.[76]

ClearPlay also cannot genuinely assert an inability to depose Lipoff after the close of expert discovery. When indicating its intent to call Lipoff as an expert witness at trial, Dish inquired whether ClearPlay desired to depose Lipoff.[77] ClearPlay's response was not to request available deposition date, but rather, was to file ClearPlay's *Daubert* Motion No. 3. Dish relied on Lipoff's opinions to oppose ClearPlay's motion for summary judgment.[78] Supplemental expert discovery, including depositions, involving other expert witnesses has also occurred

---

[72] Amended Scheduling Order at 1, docket no. 370, filed Mar. 21, 2022.

[73] Amended Initial Disclosures of Dish Network L.L.C. at 3, docket no. 476-1, filed Aug. 31, 2022; Amended Initial Disclosures of EchoStar Technologies L.L.C. at 3, docket no. 476-2, filed Aug. 31, 2022.

[74] Order Granting Stipulated Motion to Amend Schedule at 1, docket no. 311, filed Sept. 13, 2019; Expert Report of Stuart J. Lipoff ("Lipoff Report"), docket no. 439-1, filed Aug. 1, 2022.

[75] Lipoff Report ¶¶ 23-69 at 6-29.

[76] Expert Report of Dr. Henry H. Houh ¶¶ 213-218 at 66-68, docket no. 418-51, filed under seal July 21, 2022.

[77] Hatch Email re: Lipoff.

[78] Defendants' Response to Plaintiff's Motion for Summary Judgment at 43-44, docket no. 456, filed Aug. 25, 2022.

nearly six months after the close of expert discovery.[79] But despite this, ClearPlay has not sought to depose Lipoff through request to Dish or by motion. Nor has ClearPlay identified any substantive matters within Lipoff's report that will cause prejudice without Lipoff's deposition. Indeed, ClearPlay has not adequately articulated any prejudice it suffered by not deposing Lipoff. Therefore, Dish's failure to timely make Lipoff available for deposition is not a sufficient basis to preclude Dish from calling Lipoff as an expert witness at trial.

Additionally, there is not a sufficient basis for excluding Lipoff's expert opinions and testimony. ClearPlay argues that Lipoff improperly relies on an alternative claim construction that is inconsistent with the court's claim construction.[80] But, just as with Dr. Reader's opinions and testimony,[81] ClearPlay misconstrues Lipoff's report and the effect of the order denying supplemental claim construction. Lipoff's opinion that the asserted patents are invalidated by prior art is responding to what Lipoff refers to as "ClearPlay's construction" or "ClearPlay's reading" of the term "filtering action."[82] This is another resurgence of the "single-object" versus "multi-object" approach to "navigation object." Lipoff's opinions and testimony are sufficiently supported; are, where applicable, consistent with the court's claim construction; and are admissible.

Therefore, ClearPlay's *Daubert* Motion No. 3[83] is GRANTED as to Flavin and DENIED as to Lipoff. Dish is precluded from calling Flavin as an expert witness at trial.

---

[79] Minute Entry for Proceedings Held Before Magistrate Judge Cecilia M. Romero, docket no. 546, filed Nov. 10, 2022; Minute Entry for Proceedings Held Before Magistrate Judge Cecilia M. Romero, docket no. 549, filed Nov. 16, 2022; Order Granting Expert Disclosures, docket no. 554, filed Nov. 29, 2022.

[80] ClearPlay's *Daubert* Motion No. 3 at 8-9.

[81] *Supra* Discussion at 7-9, 11.

[82] Lipoff Report ¶¶ 57-69 at 23-29.

[83] Docket no. 439, filed Aug. 1, 2022.

**ClearPlay's *Daubert* Motion No. 4: Dr. Goldberg's opinions and
testimony are admissible, but he may not opine that ClearPlay's conduct
constitutes prosecution disclaimer or prosecution history estoppel**

ClearPlay's *Daubert* Motion No. 4 seeks to exclude the expert opinions and testimony of

Dr. Benjamin Goldberg regarding the invalidity of ClearPlay's asserted patents. Specifically,

ClearPlay argues that Dr. Goldberg's opinions regarding video mapping, navigation object,

filtering action, and the USPTO proceedings and record should be excluded because they are

inconsistent with the asserted patents' language, the court's claim construction, and Dish's

technology.[84] ClearPlay also argues that Dr. Goldberg's opinions regarding prosecution

disclaimer and prosecution history estoppel should be excluded because these issues are

questions of law.[85]

ClearPlay first arguments misconstrues Dr. Goldberg's opinions and testimony and the

effect of the order denying supplemental claim construction. ClearPlay's arguments again go to

the "single-object" versus "multi-object" approach to "navigation object."[86] For the same reasons

discussed regarding Dr. Reader and Lipoff's opinions and testimony, ClearPlay's arguments

fail.[87] Dr. Goldberg's opinions and testimony are sufficiently supported; are, where applicable,

consistent with the court's claim construction; and are admissible. And whether Dr. Goldberg's

video mapping opinions and testimony are consistent with Dish's technology is an issue that

goes to weight, not admissibility. Therefore, there is not a sufficient basis for excluding Dr.

Goldberg's opinions regarding video mapping, navigation object, filtering action, and the

USPTO proceedings and record.

---

[84] ClearPlay's *Daubert* Motion No. 4 at 14-18.

[85] *Id*. at 17-18.

[86] *Id*. at 14-18.

[87] *Supra* Discussion at 7-9, 11, 15.

However, while Dr. Goldberg may refer to and testify regarding the USPTO proceedings and record to rebut ClearPlay's expert witness (Dr. Feamster) and to point out inconsistencies, he may not opine that ClearPlay's conduct constitutes prosecution disclaimer or prosecution history estoppel. Such opinions are not helpful under FED. R. EVID. 702 because they improperly encroach on the judge's role as the sole arbiter of the law and its applicability and circumvent the jury's decision-making function.[88]

Therefore, ClearPlay's *Daubert* Motion No. 4[89] is DENIED in part and GRANTED in part. Dr. Goldberg is precluded from opining that ClearPlay's conduct constitutes prosecution disclaimer or prosecution history estoppel.

### ClearPlay's *Daubert* Motion No. 5: Hoffman's reasonable royalty opinions that rely on Dish's usage data are inadmissible, but his opinions on apportionment and non-infringing alternatives are admissible

ClearPlay's *Daubert* Motion No. 5 seeks to exclude potions of Richard Hoffman's expert opinions and testimony regarding damages. ClearPlay argues that Hoffman's reasonably royalty opinions should be excluded because they are based on unreliable data and methods.[90] ClearPlay also argues that Hoffman's opinions regarding apportionment and non-infringing alternatives should be excluded because Hoffman relies on Dr. Reader's expert opinions, which are the subject of ClearPlay's *Daubert* Motion No. 2.[91]

The thrust of ClearPlay's arguments regarding the reliability of Hoffman's reasonable royalty opinions is Hoffman's reliance on Dish's usage data.[92] Dish's usage data is a

---

[88] *Specht v. Jensen*, 853 F.2d at 807-810.

[89] Docket no. 427, filed Aug. 1, 2022.

[90] ClearPlay's *Daubert* Motion No. 5 at 3-7.

[91] *Id*. at 7-11.

[92] *Id*. at 3-7; Rebuttal Expert Witness Report of Richard S. Hoffman ("Hoffman Report") 42-43, 45-46, 55-56, 58-111, docket no. 443-2, filed under seal Aug. 1, 2022; Dish Usage Data, docket no. 443-4, filed under seal Aug. 1, 2022; Dish Supplemental Usage Data, docket no. 488-3, filed under seal Sept. 2, 2022; Supplement to Rebuttal

foundational component of Hoffman's reasonable royalty calculation—he relies on the data to calculate a royalty base.[93] Hoffman also asserts the lack of reliance on usage data as a component for his criticisms of ClearPlay's expert (Dr. Sullivan).[94]

"Reliability [under FED. R. EVID. 702] 'is primarily a question of the validity of the methodology employed by an expert, not the quality of the data used in applying the methodology or the conclusions produced.'"[95] ClearPlay argues that Dish's usage data fails to account for the frequency of customer use of the AutoHop feature and for use of the accused Joey product. These issues that go to the weight of Hoffman's opinions, not the reliability of his methodology or his opinions' admissibility. However, ClearPlay's argument that Dish's usage data is unverifiable and unreliable implicates the admissibility of Hoffman's opinions under FED. R. EVID. 702. This is because an expert's opinions must be "based on sufficient facts or data[.]"[96] And "any step that renders [an expert's] analysis unreliable . . . renders the expert's testimony inadmissible."[97]

The original usage data on which Hoffman relied for his reasonable royalty opinions was a single-page, three-column spreadsheet.[98] The spreadsheet was, purportedly, created by running a report off a database Dish uses to collect, store, and retrieve customer data.[99] Hoffman had a

---

Expert Witness Report of Richard S. Hoffman ("Hoffman Supplemental Report") at 1-3, docket no. 504-1, filed under seal Sept. 22, 2022.

[93] Hoffman Report at 58-111.

[94] *Id*. at 42-43, 45-46, 55-56.

[95] *In re Urethane Antitrust Litig.*, 768 F.3d 1245, 1263 (10th Cir. 2014) (quoting *Manpower, Inc. v. Ins. Co. of Penn.*, 732 F.3d 796, 806 (7th Cir. 2013)).

[96] FED. R. EVID. 702(b).

[97] *Geobel v. Denver & Rio Grande W. R.R. Co.*, 346 F.3d 987, 992 (10th Cir. 2003) (internal quotations omitted).

[98] Dish Usage Data.

[99] Deposition Transcript of Richard S. Hoffman dated June 21, 2022 ("Hoffman Depo.") at 39:20-40:7, 61:5-62:22, docket no. 443-3, filed under seal Aug. 1, 2022.

general understanding of the database and requested the usage data.[100] But he did not independently audit or verify the data within the spreadsheet.[101] He merely relied on it.

Dish did not disclose any other documentation regarding the usage data, the metrics used to run the report in Dish's database, or the spreadsheet's creation.[102] Dish also did not disclose any witness capable of providing this information. The deposition of Dish's fact witnesses revealed only generalities of how the usage data was collected, stored, and could be retrieved.[103] Indeed, Dish's Rule 30(b)(6) witness (Vivek Khemka) testified that he did not have specific knowledge of usage data because Dish has "never processed [the data]" and has "never had a need internally to process it."[104]

Dish's usage data became the subject of a motion to strike.[105] In direct response to the filing of ClearPlay's *Daubert* Motion No. 5, Dish attempted to amend its disclosures with supplemental usage data, which consisted of a two-page, six-column spreadsheet.[106] Hoffman relied on this supplemental usage data to supplement his reasonably royalty calculations.[107] Dish also attempted to disclose a new fact witness that could testify regarding the supplemental usage

---

[100] *Id*. at 39:20-24, 40:6-22, 60:11-61:4.

[101] *Id*. at 39:25-40:5, 61:5-62:22.

[102] *Id*. at 37:17-38:2.

[103] *See e.g. Id*. at 39:20-40:22. 60:11-62:22; Deposition Transcript of Vivek Khemka ("Khemka Depo.") at 75:11-23, 214:15-215:12, docket no. 443-7, filed under seal Aug. 1, 2022; Deposition Transcript of Danny J. Minnick at 214:11-24, 215:18-217:6, docket no. 416-7, filed under seal July 21, 2022.

[104] Khemka Depo. at 214:15-215:12.

[105] ClearPlay's Motion to Strike, docket no. 492, filed Sept. 15, 2022.

[106] Defendants' Response in Opposition to Plaintiff's Motion to Exclude in part the Testimony of Richard S. Hoffman ("Response to ClearPlay's *Daubert* Motion No. 5") at 4 n.11; Dish Supplemental Usage Data.

[107] Hoffman Supplemental Report at 1-3.

data and its creation.[108] ClearPlay sought to strike the supplemental usage data and new fact witness for being untimely disclosed.[109]

Dish conceded in its response to ClearPlay's *Daubert* Motion No. 5(,[110] and in its response to the motion to strike and during oral argument on the motion to strike,[111] that the original usage data it disclosed and which Hoffman relied on was inaccurate. And Dish asserted that the supplemental usage data updated the original usage data and revised the original data using a different metric to correct the inaccuracy.[112]

Magistrate Judge Cecilia M. Romero granted the motion to strike Dish's supplemental usage data and newly disclosed fact witness.[113] Judge Romero found "undue prejudice and surprise to ClearPlay because Dish produced the [supplemental] usage data nearly two years after the [original] usage data was produced, . . . four and a half years after the close of fact discovery deadlines, . . . and over five years after the usage data was initially requested [by ClearPlay]."[114] Judge Romero also found "[t]he late disclosure [was] highly disruptive with *[sic]* trial which is merely months away and with *Daubert* and summary judgment motions fully briefed."[115] And although not finding bad faith or willfulness on the part of Dish, Judge Romero

---

[108] Second Amended Initial Disclosures of Defendants Dish Network L.L.C. and EchoStar Technologies L.L.C. at 5, docket no. 492-8, filed Sept. 15, 2022.

[109] ClearPlay's Motion to Strike at 5-9.

[110] Response to ClearPlay's *Daubert* Motion No. 5 at 3-4, n.11, n.12.

[111] Defendants' Response in Opposition to ClearPlay's Motion to Strike ("Response to Motion to Strike") at 2, 4-5, docket no. 529, filed Sept. 29, 2022; Transcript of Nov. 8, 2022 Motion Hearing at 55:12-57:7, docket no. 552-1, filed under seal Nov. 28, 2022.

[112] Response to ClearPlay's *Daubert* Motion No. 5 at 3-4, n.11, n.12; Response to Motion to Strike at 4-5; Transcript of Nov. 8, 2022 Motion Hearing at 55:12-57:7.

[113] Transcript of Nov. 10, 2022 Oral Ruling at 11:13-17:7, docket no. 552-2, filed under seal Nov. 28, 2022.

[114] *Id*. at 14:5-11.

[115] *Id*. at 14:12-14.

concluded that "Dish's failure to conduct a proper search and produce accurate usage data before the close of fact discovery [wa]s not substantially justified or harmless."[116]

Judge Romero also found "disingenuous" Dish's argument that the newly disclosed fact witness was "merely a standby witness" for Dish's Rule 30(b)(6) witness (Khemka) that would "only address the topics of Khemka."[117] This was because Dish "clearly identifie[d] that [the new witness wa]s expected to address specific topics, including usage," and Dish had "not previously disclosed a witness to testify about usage."[118] Judge Romero also found that "Dish had ample time to [timely] submit an amendment [of its witness disclosures], but failed to do so."[119] And Judge Romero found that the new witness's "disclosure causes surprise and prejudice to ClearPlay and disruption to the upcoming trial and pending motions . . . [and] was therefore not substantially justified or harmless."[120]

Therefore, as it stands, the original usage data that Hoffman's reasonable royalty opinions rely on is concededly inaccurate; Dish has no evidence regarding the creation of its supplemental usage data or the data's accuracy; and the supplemental usage data Hoffman relied on to supplement his reasonable royalty opinions is inadmissible. On this record, Hoffman's reasonably royalty opinions that rely on Dish's usage data are based on sufficient facts and data. Therefore, these opinions are unreliable and inadmissible under FED. R. EVID. 702.

Additionally, FED. R. EVID. 703 permits an expert to base opinions on facts or data that are inadmissible.[121] But the Rule allows an expert to rely on facts and data that "experts in the

---

[116] *Id*. at 14:15-19.

[117] *Id*. at 15:18-22.

[118] *Id*. at 15:23-16:11.

[119] *Id*. at 16:13-14.

[120] *Id*. at 16:19-20.

[121] FED. R. EVID. 703.

particular field would reasonably rely on" that do not otherwise meet the *evidentiary* standards for admissibility.[122] The Rule cannot be used to avoid a court order excluding evidence based on a party's unjustified failure to disclose evidence in violation of rules of procedure. Additionally, even if Rule 703 applied to Dish's supplemental usage data, the data could be disclosed to the jury "only if their probative value in helping the jury evaluate the [expert's] opinion substantially outweighs their prejudicial effect."[123]

The concept of relying on usage data to determine value and a reasonable royalty is highly probative to understanding Hoffman's reasonable royalty opinions and calculations. Dish's usage data is a foundational component of Hoffman's reasonable royalty calculation,[124] and Hoffman asserts the lack of reliance on usage data as a component for his criticisms of ClearPlay's expert (Dr. Sullivan).[125] But the prejudice in allowing Hoffman to disclose Dish's usage data and his reasonably royalty opinions that rely on that data to the jury is also high.

As found by Judge Romero, ClearPlay was severely prejudiced by the supplemental usage data's untimely disclosure.[126] ClearPlay does not have contrary usage data evidence and has not had opportunity to depose Hoffman regarding his reliance on the supplemental usage data. And there is potential for misleading the jury regarding the usage Data's veracity despite vigorous cross-examination because it will be presented by an expert, and neither ClearPlay nor Dish have other witnesses with any knowledge of the usage data.

---

[122] *Id*.

[123] *Id*.

[124] Hoffman Report at 58-111.

[125] *Id*. at 42-43, 45-46, 55-56.

[126] Transcript of Nov. 10, 2022 Oral Ruling at 14:5-16:20.

On this record, the probative value of allowing Hoffman to disclose Dish's usage data and his reasonable royalty opinions that rely on the data does not substantially outweigh the prejudicial effect. The prejudice runs to ClearPlay and also to the justice system. Therefore, the portions of Hoffman's reasonably royalty opinions that rely on Dish's original and supplemental usage data are inadmissible.

ClearPlay's remaining arguments regarding Hoffman's apportionment and non-infringing alternatives opinions are premised on its incorrect characterization and assessment of Dr. Reader's expert opinions.[127] Dr. Reader's apportionment and non-infringing alternatives opinions are within his field of expertise, and are sufficiently supported and reliable.[128] Hoffman relied on Dr. Reader's technical analysis, as well as his own understanding of Dish's technology and infrastructure (through the language of a Dish-owned patent and conversation with Dish's Senior Principal Engineer) to inform the economic analysis he implemented in forming his apportionment and non-infringing alternatives opinions.[129] The facts and data Hoffman relied on are the kind that an expert in his field would rely on to form these opinions. And through his discussion of the facts and data,[130] Hoffman demonstrated sufficient investigation, familiarity, and verification to of the facts and data to support his reliance on them in forming his opinions. Hoffman's opinions relating to apportionment and non-infringing alternatives are sufficiently supported and reliable, and are admissible.

---

[127] ClearPlay's *Daubert* Motion No. 5 at 7-11; ClearPlay's *Daubert* Motion No. 2 at 9-11.

[128] *Supra* Discussion at 12.

[129] Hoffman Report at 36-41, 61-64, 104, 111.

[130] *Id*.

Therefore, ClearPlay's *Daubert* Motion No. 5[131] is GRANTED in part and DENIED in part. Hoffman's reasonably royalty opinions that rely on Dish's original and supplemental usage data are excluded, and he is precluded from offering such opinions at trial.

### ClearPlay's *Daubert* Motion No. 6: Butler's opinions regarding Dish's advertisements, surveys, and market data are admissible, but she is not qualified to opine regarding valuation methodology or value calculations

ClearPlay's *Daubert* Motion No. 6 seeks to exclusion of Sarah Butler as an expert witness. ClearPlay argues that Butler's testimony relating to Dish's advertising materials should be excluded because jurors can understand the advertising without expert testimony.[132] ClearPlay also argues that Butler is not qualified to offer economic opinions regarding valuation methodology or value calculations.[133]

There is no dispute that Butler is an expert in surveys and market research.[134] Butler may offer expert opinions and testimony regarding survey and market research methodologies, and analyzing consumer decision making, choice, and behavior from the results of surveys and market research. But there is no dispute that Butler is not an economist,[135] and she is not qualified to offer expert opinions and testimony regarding economic matters.

In her report, Butler criticizes the use of and reliance on Dish's advertising materials and internal survey results by ClearPlay's expert witness (Dr. Sullivan).[136] Some of Butler's opinions and testimony fall within her field of expertise, and are admissible. But many of Butler's

---

[131] Docket no. 440, filed Aug. 1, 2022.

[132] ClearPlay's *Daubert* Motion No. 6 at 4-5.

[133] *Id*. at 5-8.

[134] *Id*. at 2; Rebuttal Expert Report of Sarah Butler ("Butler Report") at 3-4, docket no. 437-1, filed under seal Aug. 1, 2022.

[135] Defendants Dish Network L.L.C. and EchoStar Technologies L.L.C.'s Response in Opposition to Plaintiff's Motion to Exclude the Testimony of Sarah Butler at 4, docket no. 480, filed Aug. 31, 2022.

[136] Butler Report ¶ 9 at 6-8, ¶¶ 19-66 at 13-33, Ex. C.

opinions and criticisms of Dr. Sullivan cross the line of permissible testimony into economic matters for which she is not qualified to offer expert opinions and testimony. Butler's permissible opinions and testimony cover her discussion of survey and market research methodologies and her criticism of the underlying materials and survey data. But Butler is not qualified to offer expert opinions and testimony on valuation methodologies or value calculations, including criticisms of Dr. Sullivan's use of survey data in his valuation methodologies and value calculations. These opinions and testimony must be excluded under FED. R. EVID. 702. Most importantly, Butler is not qualified to rework Dr. Sullivan's calculations or create her own valuations.

Regarding ClearPlay's first argument (which focuses on Dish's advertising materials), Butler's opinions and testimony are within her field of expertise,[137] and are admissible. Butler provides a summary describing Dish's advertising materials on which Dr. Sullivan relies.[138] Butler also analyzes and criticizes Dr. Sullivan's selective use of the information within the advertising materials.[139] Butler's summaries, analysis, and criticisms are given through the lens of her expertise in the implications of consumer decision making, choice, and behavior from surveys and market research. Butler is not, as ClearPlay characterizes, simply reviewing the advertising materials in the same manner as a layperson. Butler's opinions and testimony go beyond the knowledge of a lay juror, and are helpful and admissible under FED. R. EVID. 702.

Butler next offers opinions and testimony regarding Dr. Sullivan's apportionment.[140] Many of Butler's opinions and much of her testimony in this section of her report is economic in

---

[137] Butler Report ¶ 9 at 7, ¶¶ 63-64 at 32-33, Ex. C.

[138] *Id*. at Ex. C.

[139] *Id*. ¶ 9 at 7, ¶¶ 63-64 at 32-33.

[140] *Id*. ¶¶ 8-9 at 5-7, ¶¶ 19-62 at 14-32, 65-66 at 33.

nature, relating to valuation methodologies and calculations and criticizing Dr. Sullivan's valuation methodologies and calculations. These opinions and testimony are beyond Butler's field of expertise. Therefore, the following portions of Butler's report are inadmissible, and Butler is precluded from testifying to these matters at trial:[141]

- the phrase "on Dr. Sullivan's misuse and misinterpretation of" in the third sentence of ¶ 8 at 5;
- the last two sentences in the first bullet point of ¶ 9 at 5;
- the first sentence and the phrase "and do not demonstrate that any feature is of such importance that a consumer would place monetary value on it" in the last sentence in the second bullet point of ¶ 9 at 5-6;
- the first sentence and the phrases "Given that" and "suggest that 'use' and 'importance' results should have somehow been scaled to accurately reflect the feature's scope" in the last sentence in the third bullet point of ¶ 9 at 6;
- the phrases "selected by Dr. Sullivan" and "and increase the value attributable to AutoHop" in the first sentence, the entire fourth sentence, and the entire last sentence in the fourth bullet point of ¶ 9 at 6;
- the phrase "IS UNRELIABLE" in heading VI at 13
- the last sentence of ¶ 19 at 14;
- the last sentence of ¶ 20 at 14;
- the last sentence of ¶ 22 at 15, including footnote 41;
- the phrase "has an effect on the apportionment calculation" in the first sentence and the entire last sentence of ¶ 23 at 15;
- the last two sentences of ¶ 24 at 15, including the phrase "thereby assuming multi-view has no value or no usage" in footnote 45 and the entire last sentence of footnote 47;
- the last three sentences of ¶ 25 at 15-16;
- the entirety of ¶ 26 at 16;
- the phrase "is Not Meaningful" in heading B at 16;
- the last sentence and Table 2 of ¶ 27 at 16-17, including footnote 50;
- the entirety of ¶ 28 at 17;
- the entirety of ¶ 29 at 17-18, including Table 3;
- the entirety of ¶ 30 at 18;
- the phrase "are not Measuring Value" in heading C at 19;

---

[141] ClearPlay's *Daubert* Motion No. 6 seeks exclusion of only paragraphs 24, 27-38, 60-64, and Exhibit C of Butler's report. ClearPlay's *Daubert* Motion No. 6 at 2-9. However, several other portions of Butler's report include opinions and testimony which Butler is unqualified to offer under FED. R. EVID. 702. Butler often merges and blends permissible and impermissible opinions and testimony. This is exemplified in the summary of Butler's conclusions, Butler Report ¶ 9 at 5-7, which is not identified in ClearPlay's *Daubert* Motion No. 6 but includes the opinions and testimony ClearPlay expressly challenges. A more thorough review of Butler's report and parsing of her opinions and testimony was necessary to excise inadmissible content.

- the phrase "and that the calculation performed does not have any intrinsic tie to 'value,' the survey questions Dr. Sullivan relies on are also not appropriate measures of consumer value" in the first sentence and the entire second sentence of ¶ 31 at 19;
- the phrase "is not Equivalent to Value" of heading 1 at 19;
- the last three sentences of ¶ 32 at 19;
- the entirety of ¶ 33 at 19;
- the first and last sentences of ¶ 34 at 19, with the exception of footnote 54;
- the phrase "and such restrictions are likely to be strongly correlated with the value a consumer would actually place on this feature" in the last sentence of ¶ 35 at 20;
- the phrase "to the extent that consumer usage has any connection to the value of each feature, a reliable apportionment would need to take into account that" in the last sentence of ¶ 36 at 20;
- the last two sentences of ¶ 37 at 20-21;
- the phrase "and Dr. Sullivan's reliance on these data" and the entire last sentence of ¶ 38 at 21, with the exception of footnote 61;
- the phrase "is not Equivalent to Value" of heading 2 at 22;
- the word "while" and the phrase "they cannot establish a consumer's willingness to pay for a particular feature" in the last sentence of ¶ 39 at 22;
- the phrase "further undermining Dr. Sullivan's reliance on this survey" in the last sentence of ¶ 41 at 22-23.
- the last sentence of ¶ 42 at 23;
- the last two sentences of ¶ 44 at 23;
- the phrase "Dr. Sullivan Relies on" in heading D at 24;
- the last sentence of ¶ 47 at 24-25;
- the last sentence of ¶ 48 at 25, including the last sentence of footnote 74;
- the second sentence of ¶ 53 at 28;
- the phrase "Relative to Mr. *[sic]* Sullivan's current method" in the first sentence and the entire last sentence of ¶ 57 at 29-30, and footnote 88 at 29 and footnote 89 at 30;
- the phrase "which is another unsubstantiated idea that Mr. *[sic]* Sullivan relies upon in his use of surveys to assess damages" in the last sentence of ¶ 58 at 30;
- the last sentence of ¶ 59 at 30;
- the phrase "Value Not Simply Transferrable to" of heading G at 30;
- the first sentence of ¶ 60 at 30-31;
- the entirety of ¶ 61 at 31-32;
- the first sentence and the last two sentences of ¶ 62 at 32;
- the first two sentences, the phrase "and as such the value for AutoHop is likely inflated" in the third sentence, the entire fourth sentence, the phrase "in the numbers Dr. Sullivan relies on for apportionment, which need to be adjusted to account for the limitations on use" in the fifth sentence, the words "either" and "or irrelevant" in the sixth sentence, and the phrase "In contrast to the unreliable and imprecise data Dr. Sullivan uses for apportionment" in the seventh sentence of ¶ 65 at 33; and
- the entirety of ¶ 66 at 33.

The court will file separately under seal a redlined version of Butler's report identifying the portions of the report that are inadmissible.

Therefore, ClearPlay's *Daubert* Motion No. 6[142] is DENIED in part and GRANTED in part. Butler is precluded from offering expert opinions and testimony on valuation methodologies and value calculations, including criticisms of Dr. Sullivan's valuation methodologies and value calculations. And Butler is precluded from reworking Dr. Sullivan's calculations or creating her own valuations.

## ORDER

IT IS HEREBY ORDERED that:

- ClearPlay's *Daubert* Motion No. 1[143] is DENIED.

- ClearPlay's *Daubert* Motion No. 2[144] is DENIED.

- ClearPlay's *Daubert* Motion No. 3[145] is GRANTED as to Flavin and DENIED as to Lipoff. Dish is precluded from calling Flavin as an expert witness at trial.

- ClearPlay's *Daubert* Motion No. 4[146] is DENIED in part and GRANTED in part. Dr. Goldberg is precluded from opining that ClearPlay's conduct constitutes prosecution disclaimer or prosecution history estoppel.

- ClearPlay's *Daubert* Motion No. 5[147] is GRANTED in part and DENIED in part. Hoffman's reasonably royalty opinions that rely on Dish's original and supplemental usage data are excluded, and he is precluded from offering such opinions at trial.

---

[142] Docket no. 433, filed Aug. 1, 2022.

[143] Docket no. 426, filed Aug. 1, 2022.

[144] Docket no. 430, filed Aug. 1, 2022.

[145] Docket no. 439, filed Aug. 1, 2022.

[146] Docket no. 427, filed Aug. 1, 2022.

[147] Docket no. 440, filed Aug. 1, 2022.

- ClearPlay's *Daubert* Motion No. 6[148] is DENIED in part and GRANTED in part. Butler is precluded from offering expert opinions and testimony on valuation methodologies and value calculations, including criticisms of Dr. Sullivan's valuation methodologies and value calculations. And Butler is precluded from reworking Dr. Sullivan's calculations or creating her own valuations.

Signed January 6, 2023.

BY THE COURT

David Nuffer
United States District Judge

---

[148] Docket no. 433, filed Aug. 1, 2022.