THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| CLEARPLAY, INC.,<br><br>    Plaintiff,<br><br>v.<br><br>DISH NETWORK, LLC, and ECHOSTAR TECHNOLOGIES, LLC,<br><br>    Defendants. | **MEMORANDUM DECISION AND ORDER DENYING MOTION TO EXCLUDE THE EXPERT OPINION OF DR. RYAN SULLIVAN**<br><br>Case No. 2:14-cv-00191-DN-CMR<br><br>District Judge David Nuffer<br>Magistrate Judge Cecilia M. Romero |

Defendants Dish Network, LLC and EchoStar Technologies, LLC's (collectively "Dish") seek to exclude the opinions of Plaintiff ClearPlay, Inc.'s ("ClearPlay") expert witness Dr. Ryan Sullivan ("Dish's *Daubert* Motion").[1] Dish argues that Dr. Sullivan fails to properly apportion the incremental value of ClearPlay's asserted patents in his reasonable royalty calculation;[2] that Dr. Sullivan's apportionment opinions are based on unreliable and irrelevant survey data;[3] and that Dr. Sullivan's calculated royalty rate is unreasonably high.[4] Although premised as challenges to the reliability of Dr. Sullivan's methodologies and opinions, Dish's arguments go to the weight of the opinions and testimony, not their admissibility. Dr. Sullivan's expert opinions and testimony are sufficiently supported and reliable, and are admissible. Therefore, Dish's *Daubert* Motion[5] is DENIED.

---

[1] Defendants' Motion to Exclude the Expert Opinion of Dr. Ryan Sullivan, docket no. 435, filed Aug. 1, 2022.

[2] *Id*. at 6-8.

[3] *Id*. at 8-14.

[4] *Id*. at 14-15.

[5] Docket no. 435, filed Aug. 1, 2022.

## Contents

STANDARD OF REVIEW ........................................................................................... 2
DISCUSSION ........................................................................................................... 3
    Dr. Sullivan's opinions regarding apportionment of incremental value are admissible..... 3
    Dr. Sullivan's methodologies and opinions are reliable, consistent with
        ClearPlay's theory, and tied to the facts of the case ................................... 5
    ClearPlay's theory and Dr. Sullivan's apportionment analysis are not inconsistent
        with Dish's argument regarding the asserted patents' scope ...................... 8
    Dr. Sullivan's use of and reliance on Dish's survey data is permissible ........................... 9
    Dr. Sullivan's reasonable royalty opinions are admissible............................................... 12
ORDER ................................................................................................................... 14

## STANDARD OF REVIEW

District courts serve as the gatekeepers of expert evidence and must decide which experts may testify before the jury and the permissible scope of that testimony.[6] In making these determinations, the district court is given "broad latitude."[7] But the district court must be mindful that the Federal Rules of Evidence generally favor the admissibility of expert testimony.[8] Excluding expert testimony is the exception rather than the rule.[9] "Vigorous cross-examination, the presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking . . . admissible evidence."[10] "[T]he [district] court's role as gatekeeper is not intended to serve as a replacement for the adversary system."[11]

FED. R. EVID. 702 governs the admissibility of expert testimony. The Rule requires, among other things, that "the evidence or testimony [of an expert] '[help] the trier of fact to understand the evidence or to determine a fact in issue.'"[12] "This condition goes primarily to

---

[6] *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993).

[7] *Kuhmo Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 142 (1999).

[8] *Daubert*, 509 U.S. at 588.

[9] FED. R. EVID. 702 Advisory Notes.

[10] *Daubert*, 509 U.S. at 596.

[11] *United States v. 14.38 Acres of Land, More or Less Situated in Leflore Cty., State of Miss.*, 80 F.3d 1074, 1078 (5th Cir. 1996) (citing *Daubert*, 509 U.S. at 596).

[12] *Daubert*, 509 U.S. at 591 (quoting FED. R. EVID. 702).

relevance."[13] Relevant evidence has any tendency to make a fact of consequence in determining a case more or less probable than it would be without the evidence.[14] Thus, "an expert's testimony must provide insight and understanding about the facts and issues of the case."[15]

But the helpfulness of an expert's testimony is not without constraint. A two-step analysis is implemented to determine whether an expert's opinions are admissible under Rule 702.[16] First is a determination whether the expert is qualified by "knowledge, skill, experience, training, or education" to render the opinion.[17] And second is a determination whether the expert's opinions are "reliable."[18] "Reliability [under FED. R. EVID. 702] 'is primarily a question of the validity of the methodology employed by an expert, not the quality of the data used in applying the methodology or the conclusions produced.'"[19] Opinions for which an expert is not qualified to offer, or which are not reliable, must be excluded.

This Memorandum Decision and Order considers admissibility which still leaves cross-examination and rebuttal testimony. Admissibility does not equate to conclusiveness.

## DISCUSSION

### Dr. Sullivan's opinions regarding apportionment of incremental value are admissible

Dish first seeks to exclude Dr. Sullivan's reasonable royalty opinions, arguing that he improperly fails to apportion the incremental value of ClearPlay's asserted patents.[20]

---

[13] *Id*.

[14] FED. R. EVID. 401.

[15] *Whatcott v. City of Provo*, No. 2:01-cv-00490-DB, 2003 WL 26101357, *2 (D. Utah June 2, 2003).

[16] *Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 969 (10th Cir. 2001).

[17] *Id*. (quoting FED. R. EVID. 702).

[18] *Id*.

[19] *In re Urethane Antitrust Litig.*, 768 F.3d 1245, 1263 (10th Cir. 2014) (quoting *Manpower, Inc. v. Ins. Co. of Penn.*, 732 F.3d 796, 806 (7th Cir. 2013)).

[20] Dish's *Daubert* Motion at 6-8.

Specifically, Dish argues that ClearPlay's asserted patents include only "two discrete claim features"[21] over prior art, and that Dr. Sullivan fails to apportion for these features which contribute "at most a sliver of the alleged value of AutoHop."[22]

"[T]he standard . . . reasonable royalty analysis [for assessing damages for patent infringement] takes account of the importance of the inventive contribution in determining the royalty rate that would have emerged from [a] hypothetical negotiation" between the patent owner and the accused infringer.[23] "[A] reasonable royalty award 'must be based on the incremental value that the patented invention adds to the end product.'"[24] This requires a "patent owner [to] apportion or separate the damages between the patented improvement and the conventional components of [a] multicomponent product."[25] Doing so "ensures that [the patent owner] is compensated for the patented improvement . . . rather than the entire [end product]."[26]

"[A]pportionment can be addressed in a variety of ways, including 'by careful selection of the royalty base to reflect the value added by the patented feature [or] . . . by adjustment of the royalty rate so as to discount the value of a product's non-patented features; or by a combination thereof.'"[27] "To be admissible, expert testimony opining on a reasonable royalty must 'sufficiently [tie the expert testimony] to the facts of the case.'"[28] "If the patentee fails to tie the

---

[21] *Id*. at 7.

[22] *Id*. at 8.

[23] *AstraZeneca AB v. Apotex Corp.*, 782 F.3d 1324, 1338 (Fed. Cir. 2015).

[24] *Exmark Mfg. Co., Inc. v. Briggs & Stratton Power Prods. Grp., LLC*, 879 F.3d 1332, 1348 (Fed. Cir. 2018) (quoting *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1226 (Fed. Cir. 2014)).

[25] *Id*.

[26] *Id*.

[27] *Id*. (quoting *Ericsson, Inc.*, 773 F.3d at 1226) (alterations in original).

[28] *Id*. at 1349 (quoting *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1315 (Fed. Cir. 2011) (alterations in original).

theory to the facts of the case, the [expert's] testimony must be excluded."[29] "But where the methodology is reasonable and its data or evidence are sufficiently tied to the facts of the case, the gatekeeping role of the court is satisfied, and the inquiry on the correctness of the methodology and the results produced thereunder belongs to the factfinder."[30]

**Dr. Sullivan's methodologies and opinions are reliable, consistent with ClearPlay's theory, and tied to the facts of the case**

ClearPlay's theory (as presented through its technical expert Dr. Nicholas Feamster) is that the technology claimed in the asserted patents enables the AutoHop feature as implemented by Dish in its accused devices.[31] In other words, the technology claimed in the asserted patents enables the AutoHop feature as a whole, and Dish could not implement AutoHop in its accused devices without a license to the asserted patents.[32] Dr. Sullivan relies on Dr. Feamster's technical analysis and implements this theory in forming his reasonable royalty opinions.[33]

But Dr. Sullivan does not opine that the entire market value of the accused devices is attributable to AutoHop.[34] Nor does he attempt to include all benefits Dish arguably receives from the AutoHop feature when calculating its value for purposes of a reasonable royalty.[35]

---

[29] *Id*. (quoting *Uniloc USA, Inc.*, 632 F.3d at 1315).

[30] *Summit 6, LLC v. Samsung Electronics Co., Ltd.*, 802 F.3d 1283, 1296 (Fed. Cir. 2015).

[31] ClearPlay's Opposition to Defendants' Motion to Exclude the Expert Opinion of Dr. Ryan Sullivan and Exhibits ("ClearPlay's Response") at 2, 6-7, docket no. 466, filed Aug. 31, 2022; Report of Ryan Sullivan, Ph.D. ("Sullivan Report") ¶ 70 at 30, ¶ 143 at 72 Attachment A-4, docket no. 438-11, filed under seal Aug. 1, 2022; First Expert Report of Nick Feamster, Ph.D. ("Feamster Report") ¶¶ 92-322 at 26-72, docket no. 416-19, filed under seal July 21, 2022; Supplemental Expert Report of Nick Feamster, Ph.D. ("Feamster Suppl. Report") ¶ 8 at 4, docket no. 416-20, filed under seal July 21, 2022.

[32] ClearPlay's Response at 6-7; Feamster Report ¶¶ 92-322 at 26-72; Feamster Suppl. Report ¶ 8 at 4.

[33] Sullivan Report ¶¶ 70 at 29-30, ¶ 143 at 72, Attachment A-4.

[34] *Id*. ¶¶ 143-170 at 72-88.

[35] *Id*. ¶ 19 at 5, ¶¶ 74-76 at 38-47, ¶ 222 at 96-97.

Rather, Dr. Sullivan calculates a reasonable royalty based only on an apportionment of the additional revenue Dish receives from the price benefit of the accused products.[36]

Dr. Sullivan's reasonably royalty opinions are based on a hypothetical negotiation occurring in or around March 2012, and his apportionment of incremental value follows a three-step methodology.[37] Dr. Sullivan first determines the price premium that Dish receives from the accused products over what he considered the closest substitute product that does not include AutoHop.[38] Dr. Sullivan then determines an apportionment factor for AutoHop based on what he identified as differentiating features that drive the accused products' price premium,[39] and he applies that apportionment factor to the price premium.[40] In making these determinations, Dr. Sullivan reviewed and relied on evidence indicating that AutoHop is a driver of the price premium, including Dish's price data, press releases and advertising, and focus group and survey results.[41] Third, Dr. Sullivan accounts for what he considered Dish's contributions to the accused products and excludes that value from his calculation.[42] And after considering and addressing other factors relevant to the hypothetical negotiation,[43] Dr. Sullivan concludes that the remaining value constitutes a reasonable royalty.[44]

Dr. Sullivan's apportionment analysis is consistent with reliable methodologies. "[S]ophisticated parties routinely enter into license agreements that base the value

---

[36] *Id*. ¶ 145 at 72.

[37] *Id*. ¶ 81 at 50, ¶¶ 143-170 at 72-88.

[38] *Id*. ¶¶ 144-148 at 72-74.

[39] *Id*. ¶¶ 149-156 at 74-81.

[40] *Id*. ¶¶ 157-159 at 81-82.

[41] *Id*. ¶¶ 72-77 at 30-49, ¶¶ 148-150 at 74-78, ¶¶ 157-159 at 81-82.

[42] *Id*. ¶¶ 160-170 at 83-88, ¶¶ 219-222 at 96-97.

[43] *Id*. ¶¶ 171-218 at 89-95.

[44] *Id*. ¶¶ 219-222 at 96-97.

of the patented inventions as a percentage of the commercial products' sales price."[45] "[A]
patentee may 'assess damages on the entire market value of the accused product only where the
patented feature creates the basis for customer demand or substantially creates the value of the
component parts.'"[46] "[E]ven when the patented invention is a small component of a much larger
commercial product, awarding a reasonable royalty based on either sale price or number of units
sold can be economically justified."[47] And "there is nothing inherently wrong with using the
market value of the entire product, especially when there is no establish market value for the
infringing component or feature, so long as the multiplier accounts for the proportion of the base
represented by the infringing component or feature."[48]

       Dr. Sullivan's apportionment analysis follows reliable methodology by determining the
price premium of the accused products over the closest substitute product, and then determining
and applying an apportionment factor for the AutoHop feature. The analysis is consistent with
ClearPlay's theory that its asserted patents enable the AutoHop feature in the accused devices.
And Dr. Sullivan tied the analysis to the facts of the case by founding his opinions on sufficient
evidence regarding the technical aspects of the parties' technology; Dish's pricing; the
differentiating features of the accused devices that drive the price premium; and the relative
value of the AutoHop feature among the differentiating features.

       Dish's argument that Dr. Sullivan should have further apportioned the incremental value
of ClearPlay's asserted patents goes to Dish's theory of infringement damages and unresolved
issues regarding the scope and validity of the asserted patents. The argument ignores ClearPlay's

---

[45] *Lucent Tech., Inc. v. Gateway, Inc.¸* 580 F.3d 1301, 1339 (Fed. Cir. 2009).

[46] *AstraZeneca AB*, 782 F.3d at 1337 (quoting *Uniloc USA, Inc.*, 632 F.3d at 1318).

[47] *Lucent Tech., Inc.¸* 580 F.3d at 1339.

[48] *Id*.

theory that is premised on the opinions of ClearPlay's technical expert Dr. Feamster,[49] which opinions Dish has not sought to exclude. Dish's argument goes to the weight of the evidence, not its admissibility.[50]

**ClearPlay's theory and Dr. Sullivan's apportionment analysis are not inconsistent with Dish's argument regarding the asserted patents' scope**

Additionally, ClearPlay's theory (and Dr. Sullivan's apportionment analysis) is not wholly incompatible with Dish's argument regarding the scope of the asserted patents. Under ClearPlay's theory, the way Dish implements the AutoHop feature is enabled by the asserted patents' technology. This would include the "two discrete claim features" Dish identifies, as well as their novel combination with prior art.

"[A]ll inventions are for improvements; all involve the use of earlier knowledge; all stand upon accumulated stores of the past."[51] "It is not the case that the value of all conventional elements must be subtracted from the value of the patented invention as a whole when assessing damages."[52] "For a patent that combines 'old elements,' removing the value of all those elements would mean that nothing would remain."[53] "In such cases, the question is how much new value is created by the novel combination, beyond the value conferred by the conventional elements alone."[54] Dr. Sullivan's apportionment analysis targets such "new value"—which enables

---

[49] ClearPlay's Response at 6-7; Feamster Report ¶¶ 92-322 at 26-72; Feamster Suppl. Report ¶ 8 at 4.

[50] Dish argues, in a footnote to its motion and again in its reply brief, that Dr. Sullivan improperly relies on pricing for an unaccused product that was not available until six years after the March 2012 hypothetical negotiation date. Dish's *Daubert* Motion at 8 n.6; Defendants' Reply in Support of Motion to Exclude the Expert Opinion of Dr. Ryan Sullivan and Exhibits ("Dish's Reply") at 4, docket no. 520, filed Sept. 22, 2022. This argument is inadequately briefed. The argument also goes to the weight of Dr. Sullivan's opinions, not the opinions' admissibility.

[51] *AstraZeneca AB*, 782 F.3d at 1338 (quoting *Cincinnati Car Co. v. N.Y. Rapid Transit Corp.*, 66 F.2d 592, 593 (2d Cir. 1933)).

[52] *Id*. at 1339.

[53] *Id*.

[54] *Id*.

AutoHop as implemented by Dish in the accused devices—using reliable methodologies and sufficient factual support that is tied to the case.

Therefore, Dr. Sullivan's opinions regarding apportionment of incremental value are admissible.

### Dr. Sullivan's use of and reliance on Dish's survey data is permissible

Dish next seeks to exclude Dr. Sullivan's apportionment opinions, arguing that he uses unreliable methodologies founded on unreliable and irrelevant survey data.[55] In his apportionment analysis, Dr. Sullivan relies on internal Dish survey data (among other evidence) to support his opinions regarding the differentiating features that drive the accused devices' price premium and the apportionment factor for AutoHop.[56] Dish's arguments regarding Dr. Sullivan's use of and reliance on the survey data go to the weight of Dr. Sullivan's opinions, not its admissibility.

Dish first attacks the reliability of its own internal survey data. Dish relies on the opinions and testimony of its expert (Sarah Butler) to argue that there is insufficient disclosure of the surveys' administration, methodologies (such as how sample populations were chosen, how questions were ordered, or the context in which questions were asked), purposes, and results.[57] However, "[t]echnical and methodological deficiencies in [a] survey . . . bear on the weight of the evidence, not the survey's admissibility."[58] And contrary to Dish's assertions, the Dish survey materials are not devoid of pertinent information regarding their administration,

---

[55] Dish's *Daubert* Motion at 8-14.

[56] Sullivan Report ¶¶ 72-77 at 30-49, ¶¶ 148-150 at 74-78, ¶¶ 157-159 at 81-82.

[57] Dish's *Daubert* Motion at 9-10.

[58] *Harolds Stores, Inc. v. Dillard Dept. Stores, Inc.*, 82 F.3d 1533, 1544 (10th Cir. 1996).

methodologies, objectives, and results.[59] Any deficiencies in the survey data underlying Dr. Sullivan's apportionment opinions is the subject of vigorous cross examination and rebuttal opinion, not the admissibility of Dr. Sullivan's opinions.

Dish next argues that the survey data is irrelevant because it does not reflect consumer value of the AutoHop feature.[60] Dish cites nonbinding case law suggesting that survey data reflecting consumer use and interest are not proper metrics for establishing value or willingness to pay.[61] But Dish mischaracterizes Dr. Sullivan's actual use of and reliance on Dish's survey data.

Contrary to Dish's characterization, Dr. Sullivan does not use Dish's survey data to establish consumer willingness to pay for the AutoHop feature. Nor does he make a one-to-one assumption between the percentages of consumers interested in AutoHop and the amount consumers would pay for the feature. Dr. Sullivan uses and relies on Dish's pricing and focus group data to determine the accused devices' price premium.[62] Dr. Sullivan opines that this price premium is the base amount of consumer willingness to pay for a product that contains the AutoHop feature.[63]

Dr. Sullivan uses Dish's survey data (and other evidence) to identify differentiating features that drive the price premium and the relative importance of those features.[64] Dr. Sullivan

---

[59] *See e.g.* Dish Hopper NPS Survey Results Nov. 2012, docket no. 468-2, filed under seal Aug. 21, 2022; Dish Summary Hopper with Sling Feature Study Aug. 2015, docket no. 468-3, filed under seal Aug. 31, 2022.

[60] Dish's *Daubert* Motion at 10-14.

[61] *See e.g. Apple, Inc. v. Samsung Elec. Co., Ltd.*, No. 11-CV-01846-LHK, 2018 WL 1586276, *21 (N.D. Cal. Apr. 2, 2018).

[62] Sullivan Report ¶¶ 144-148 at 72-74. Dish argues for the first time in its reply brief that Dish's focus group data is unreliable. Dish's Reply at 12-13. This argument is improperly raised in reply and is inadequately briefed. The argument also goes to the weight of Dr. Sullivan's opinions, not the opinions' admissibility. *Harolds Stores, Inc.*, 82 F.3d at 1544.

[63] Sullivan Report ¶¶ 144-148 at 72-74.

[64] *Id*. ¶¶ 149-156 at 74-81.

relies on this information to establish the apportionment factor he attributes to the AutoHop feature, which is applied to the accused products' price premium.[65] The survey data regarding consumer use and interest in Dish's product features that Dr. Sullivan uses and relies on is relevant to evaluating the products' differentiating features and the relative importance of those features. Therefore, Dr. Sullivan's use and reliance on Dish's survey data is permissible.

Dr. Sullivan's application of his apportionment analysis to the accused Joey device is also permissible.[66] Dish argues that because Joey devices cannot infringe the asserted patents, Dr. Sullivan should not be permitted to opine on damages for Joey devices.[67] However, "[t]he hypothetical negotiation [approach to determining a reasonable royalty] assumes that the asserted patent claims are valid and infringed."[68] Because the Joey is an accused device, Dr. Sullivan is permitted to opine on damages based on the Joey device's infringement in his reasonable royalty calculation.[69]

Dish's remaining arguments regarding Dr. Sullivan's apportionment opinions—that Dr. Sullivan does not rely accepted forms of surveys that are designed to accurately establish consumer value; that Dr. Sullivan cherry picks responses from Dish's survey data; and that Dr. Sullivan does not account for all differentiating product features[70]—each go to the weight of the

---

[65] *Id*. ¶¶ 157-159 at 81-82.

[66] *Id*. ¶¶ 56-62 at 22-26, ¶ 159 at 82, ¶¶ 219-222 at 96-97.

[67] Dish's *Daubert* Motion at 14.

[68] *Lucent Tech., Inc.*, 580 F.3d at 1325.

[69] Dish argues, in a footnote to its motion and again in its reply brief, that Dr. Sullivan fails to articulate a sound scientific basis for calculating the Joey adjustment factor he uses to apportion AutoHop value to Joey devices. Dish's *Daubert* Motion at 14 n.7; Dish's Reply at 16. This argument is inadequately briefed. The argument also goes to the weight of Dr. Sullivan's opinions, not the opinions' admissibility. As discussed, Dish's mischaracterizations of Dr. Sullivan's apportionment analysis do not render his methodologies and opinions unreliable. *Supra* Discussion at 5-8, 10-11.

[70] Dish's *Daubert* Motion at 13-14. Dish also argues for the first time in its reply brief that Dr. Sullivan should not be permitted to rely on Dish's survey data because the surveys occurred after the March 2012 hypothetical

opinions, not their admissibility. Dr. Sullivan relies on sufficient facts that are tied to the case to support his apportionment opinions. And there are no analytical gaps sufficient to render Dr. Sullivan's apportionment methodology or opinions unreliable.

Therefore, Dr. Sullivan's apportionment opinions are admissible.

### Dr. Sullivan's reasonable royalty opinions are admissible

Dish also seeks exclusion of Dr. Sullivan's reasonable royalty opinions, arguing that his calculated royalty rate is unreliable because it fails to permit Dish to retain profits.[71] Dish argues that Dr. Sullivan's calculated royalty rate is indefensibly high and would have required Dish to abandon all of its profits to ClearPlay in the hypothetical negotiation.[72] Dish further argues that Dr. Sullivan's calculated royalty rate fails to properly account for the parties' respective bargaining power; that AutoHop incorporates Dish's patented technology; and Dish's third-party licenses for related technology.[73] Each of these arguments goes to the weight of Dr. Sullivan's opinions, not the opinions' admissibility.

"A key inquiry in the [hypothetical negotiation] analysis is what it would have been worth to the defendant, as it saw things at the time, to obtain the authority to use the patented technology, considering the benefits it would expect to receive from using the technology and the alternatives it might have pursued."[74] "[A] basic premise of the hypothetical negotiation is the opportunity for making substantial profits if the two sides are willing to join forces by

---

negotiation date. Dish's Reply at 11-12. This argument is improperly raised in reply and is inadequately briefed. The argument also goes to the weight of Dr. Sullivan's opinions, not the opinions' admissibility.

[71] Dish's *Daubert* Motion at 14-15.

[72] *Id*.

[73] *Id*.

[74] *Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd.*, 807 F.3d 1283, 1304 (Fed. Cir. 2015).

arriving at a license of the technology."[75] "A reasonable royalty is the amount that 'a person, desiring to manufacture[, use, or] sell a patented article, as a business proposition, would be willing to pay as a royalty and yet be able to make[, use, or] sell the patented article, in the market, at a reasonable profit.'"[76]

"The determination of a reasonable royalty, however, is based not on the infringer's profit, but on the royalty to which a willing licensor and a willing licensee would have agreed at the time the infringement began."[77] "There is no rule that a royalty be no higher than the infringer's net profit margin."[78] And "t[he hypothetical negotiation] approach, like any reconstruction of the hypothetical world in which the infringer did not actually infringe but negotiated in advance for authority to practice the patents, does not require mathematical exactness, but a reasonable approximation under the circumstances."[79]

As discussed, Dr. Sullivan implemented reliable methodology in forming his reasonable royalty opinions.[80] And his opinions are based on sufficient facts that are tied to the case.[81] Dr. Sullivan's reasonable royalty opinions are admissible. Each of the arguments Dish raises against Dr. Sullivan's calculated royalty rate are the appropriate subject of vigorous cross-examination and rebuttal opinion. And "the inquiry on the correctness of the methodology and the results produced thereunder belongs to the factfinder."[82]

---

[75] *Id*. (internal quotations and punctuation omitted).

[76] *Applied Med. Res. Corp. v. U.S. Surgical Corp.*, 435 F.3d 1356, 1361 (Fed. Cir. 2006) (quoting *Trans-World Mfg. Corp. v. Al Nyman & Sons, Inc.*, 750 F.2d 1552, 1568 (Fed. Cir. 1984)) (alterations in original).

[77] *Radio Steel & Mfg. Co. v. MTD Prods., Inc.*, 788 F.2d 1554, 1557 (Fed. Cir. 1986).

[78] *Golight, Inc. v. Wal-Mart Stores, Inc.*, 355 F.3d 1327, 1338 (Fed. Cir. 2004) (quoting *State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573, 1580 (Fed. Cir. 1989)).

[79] *Carnegie Mellon Univ.*, 807 F.3d at 1304 (internal quotations omitted).

[80] *Supra* Discussion at 5-8.

[81] *Id*. at 5-12.

[82] *Summit 6, LLC*, 802 F.3d at 1296.

**ORDER**

THEREFORE, IT IS HEREBY ORDERED that Dish's *Daubert* Motion[83] is DENIED.

Signed January 13, 2023.

BY THE COURT

David Nuffer
United States District Judge

---

[83] Docket no. 435, filed Aug. 1, 2022.