Brent O. Hatch (5715)
hatch@hatchpc.com
HATCH LAW GROUP, PC
22 East 100 South
Salt Lake City, Utah 84111
Telephone: (801) 869-1919

G. Hopkins Guy III (*pro hac vice*)
hop.guy@bakerbotts.com
BAKER BOTTS LLP
1001 Page Mill Road Bldg. 1 Suite 200
Palo Alto, CA 94304
Telephone: (650) 739-7510

*Attorneys for Defendants*
*[Additional Counsel Listed in Signature Block]*

# UNITED STATES DISTRICT COURT

## District of Utah Central Division

| | |
|---|---|
| CLEARPLAY, INC., <br><br> Plaintiff, <br><br> vs. <br><br> DISH NETWORK L.L.C., and ECHOSTAR TECHNOLOGIES L.L.C., <br><br> Defendants. | **DEFENDANTS' SUPPLEMENTAL MEMORANDUM IN SUPPORT OF MOTION FOR JUDGMENT AS A MATTER OF LAW OF NONINFRINGEMENT UNDER RULE 50(a)** <br><br> Case No.: 2:14-cv-00191 <br><br> Judge David Nuffer <br><br> Magistrate Judge Cecilia M. Romero |

## TABLE OF CONTENTS

I.      INTRODUCTION ............................................................................................ 1

II.     NO DIRECT INFRINGEMENT ................................................................... 1

        A.      Order, Section 2.i: No Literal Infringement of Claim 27 of the '970 Patent
                (Disabling)........................................................................................... 1

                1.      "Yes" or "No Thanks": No Disabling of Alleged Navigation Objects (Segment
                        Bookmarks) .......................................................................... 3

                2.      Selecting "Yes" And Subsequently Fast-Forwarding or Rewinding into a
                        Commercial: No Disabling of Accused Navigation Objects (Segment
                        Bookmarks) .......................................................................... 8

        B.      Order, Section 2.ii and 2.iii: No Literal Infringement of Claim 12 of the '799 Patent
                ........................................................................................................... 11

                1.      No Filtering Action and Configuration Identifier Within Each Navigation
                        Object ................................................................................. 11

                2.      ClearPlay's Multi-Object Approach.................................... 14

        C.      Order, Section 2.iv and 2.v: No Infringement of Claim 12 of the '799 Patent under
                Doctrine of Equivalents ..................................................................... 23

III.    CONCLUSION............................................................................................ 30

## I.    INTRODUCTION

DISH herein supplements its motion for judgment as a matter of law on noninfringement of Claims 28 and 33 of the '970 Patent ("Disabling Claims") and Claim 12 of the '799 Patent.

## II.    NO DIRECT INFRINGEMENT

### A.    Order, Section 2.i: No Literal Infringement of Claim 27 of the '970 Patent (Disabling)

Independent Claim 27 of the '970 Patent, from which the Disabling Claims depend, recites method steps for "providing for disabling of one or more of the navigation objects such that the specific filtering action specified by the disabled navigation object is ignored." While ClearPlay has disputed whether the Disabling Claims require a disabled navigation object,[1] the Court resolved this issue against ClearPlay. Accordingly, the Court has found and instructed the jury that "providing for disabling . . ." means as follows:

> "providing for some action to be taken to disable a navigation object so that its filtering action is ignored." ***An action must directly disable a navigation object*** so that its filtering action is ignored, as opposed to ***disabling something other than the navigation object*** that results in the navigation object's filtering action being ignored.[2]

---

[1] Dkt. 886 (ClearPlay's Supplemental Briefing Regarding Disabling) at 3 ("But it is significant to note that the claims never require that any navigation objects be disabled."); Appendix #8, Tr. (Feamster) 832:13-16 ("Q. Is it your current opinion that watching a show without disabling a single thing infringes the '970 patent disabling claims? A. Yes, it is my opinion.").

[2] Dkt. 924 (Jury Instructions) at 43 (Inst. 30) (emphasis added). ClearPlay has not suffered any prejudice by the Court's construction of the "providing for disabling" limitation. *Cf.* Dkt. 884 (ClearPlay's Supplemental Briefing Regarding Disabling) 9 n.30 (citing *Loggerhead Tools, LLC v. Sears Holding Corp.*, 328 F. Supp. 3d 885, 899 (N.D. Ill. 2018)). The Federal Circuit has made clear that a district court may revisit claim construction, even during trial. *See, e.g.*, *Pressure Prod. Med. Supplies, Inc. v. Greatbatch Ltd.*, 599 F.3d 1308, 1315-16 (Fed. Cir. 2010) (district court supplementing claim construction during jury trial). More importantly, ClearPlay has not suffered any prejudice because the Court's summary judgment order confirmed that "disabling" and "ignoring" are two different actions. *See* Dkt. 653 at 24 ("Clear from the ordinary and customary

For the Disabling Claims, ClearPlay accuses segment bookmark pairs within a segment bookmark file for a particular show as the navigation objects.[3] Specifically, ClearPlay points to the following within the segment bookmark file as the elements of a navigation object: (i) segment end PTS as the claimed start position, (ii) segment start PTS as the claimed end position, and (iii) a segment end flag as the claimed filtering action of the navigation object.[4]

ClearPlay presented two theories to attempt to satisfy the "providing for disabling" claim element: (1) a pop-up menu for a user to select "Yes" or "No Thanks" to the AutoHop feature; and (2) a user selecting "Yes" but fast-forwarding or rewinding into a commercial.[5] Neither of these theories establishes an action that directly disables the segment bookmarks (the accused navigation objects) as required by the claims and the Court's instruction.[6] Rather, ClearPlay's evidence in support of these two theories shows, at most, ***disabling something other than*** the accused navigation object—*i.e.*, variables within the AutoHop software—rather than directly disabling the navigation object itself. ClearPlay failed to present evidence of any action that directly disables the segment bookmarks themselves, because there is none. This deficiency is fatal and requires JMOL to be granted as to non-infringement of the '970 Patent Disabling Claims.

---

meaning and scope of the Disabling Claims, and supported by the specification's language, is that some action must be taken to disable a navigation object so that its filtering action is ignored."). ClearPlay has thus been on notice since before trial that the "ordinary and customary meaning and scope of the Disabling Claims" requires both "disabling" and "ignoring," and the Court's issuance of this express instruction during trial cannot have prejudiced ClearPlay.

[3] Appendix #4, Tr. (Feamster) 606:11-19.

[4] Appendix #4, Tr. (Feamster) 606:11-19.

[5] Appendix #3, Tr. (Feamster) 812:4-16; Tr. (Feamster) 855:19-856:1; Appendix #13, Tr. (Feamster) 614:12-21.

[6] *See generally* Dkt. 883 (DISH's Supplemental Briefing in Support of Defendants' Judgment as a Matter of Law Under Rule 50(a)).

1.      **"Yes" or "No Thanks": No Disabling of Alleged Navigation Objects (Segment Bookmarks)**

The Court provided a curative instruction stating the undisputed function of the AutoHop pop-up message—it allows the user to watch a recorded show on the Hopper with AutoHop commercial skipping turned on by selecting "Yes;" watch the show without turning on AutoHop commercial skipping by selecting "No Thanks;" or not watch the show at all and return to live TV by allowing the pop-up to time out without a selection:

> If the user selects "Yes," AutoHop skips commercials. If the user selects "No Thanks," AutoHop does not skip commercials. If the user does not select either option, the system will time out after a few minutes, leave PrimeTime Anytime, and return to live TV.[7]

ClearPlay failed to present evidence showing that the selection of either "Yes" or "No Thanks" on the AutoHop pop-up directly disables the alleged navigation objects themselves (the segment bookmark pairs within the segment bookmark file).[8] Instead, Dr. Feamster's testimony about the AutoHop pop-up focused on the state of the "████" variable *in the AutoHop software,* which controls whether AutoHop commercial skipping as a whole is turned on or off.[9] Dr. Feamster testified that the AutoHop software checks several conditions (i.e., variables) to determine whether AutoHop commercial skipping will occur during playback of a recorded show.[10] At line ████, the AutoHop software checks whether the ████ variable ████ ████████ is set to TRUE.[11] The ████ variable is only set to TRUE if the user has

---

[7] Dkt. 924-1.
[8] Tr. (Feamster) 615:7-620:17.
[9] Appendix #20, Tr. (Feamster) 617:7-15; Trial Ex. 395-0235 and 236 ████████████
[10] Tr. (Feamster) 618:16-620:17; Ex. 395 at DISH-CP-SC00304.
[11] Appendix #26, Tr. (Feamster) 619:25-620:5; Ex. 395 at DISH-CP-SC00304.

selected "Yes" on the AutoHop pop-up message.[12] If the user selects "No Thanks," the "███" variable is set to FALSE. Dr. Feamster alleged this action as disabling the navigation object for that show: "if that [███] variable is false, the skip does not occur."[13] Again, at most, a FALSE value results only in ignoring the segment bookmarks.[14] More specifically, changing the "███" variable to TRUE or FALSE performs no direct disabling action on the segment bookmarks.

The undisputed evidence shows that the "███" variable is stored in a particular object—the "███████" data structure—existing only in the AutoHop software. This "███████ ███" data structure is separate and distinct from the alleged navigation object (i.e., the segment bookmark).[15] Additionally, examining the various pieces of information contained within the segment bookmark (by looking at its structure) proves that structure has no "███" variable.[16] Setting the "███" variable, which is not part of the segment bookmark file or segment bookmarks, performs no direct action on the alleged navigation objects themselves (the segment bookmarks).

---

[12] Appendix #19-21, Tr. (Feamster) 616:17-618:6.

[13] Appendix #19-21, Tr. (Feamster) 616:17-618:6 ("And there's a ███ variable which basically is like are we – is AutoHop enabled for this show? Right? And that variable is called '███' which we should recognize. And here, that's set to false. So we've now seen how, by clicking 'no,' a user has disabled or set this variable to be false for the playback of that show."); Feamster Demonstratives Slide 57 (citing Ex. 395 at DISH-CP-SC00236 at lines 8385-8388).

[14] AutoHop ignores the segment bookmarks by not calling the function that calculates and executes the skip: █████████████████████████. Appendix #21, Tr. (Feamster) 617:22-618:6. *See also* Dkt. 886 (ClearPlay Supplemental Briefing Regarding Disabling) at 4 n.8.

[15] *Compare* Feamster Demonstratives Slide 28 (citing the bookmark structure at Appendix #5, Ex. 395 at DISH-CP-SC00197) *with* Feamster Demonstrative Slide 62 (citing the "███████████" data structure that stores the "█████████" ███" and ███████" variables at Appendix #6, Ex. 395 at DISH-CP-SC00197 *with* 00262-66); *see also* Feamster Demonstratives Slide 26; Appendix #6, Tr. (Feamster) 578:23-579:13.

[16] Tr. (Minnick) 413:8-11 (discussing the bookmark structure shown at Ex. 395 at DISH-CP-SC00197); Appendix #6, Tr. (Feamster) 578:23-579:13 (discussing the "███████████" data structure shown at Ex. 395 at DISH-CP-SC00262-266).

ClearPlay has no evidence that the segment bookmarks themselves are directly disabled by any action such as marking, eliminating, or indicating as described in the specification.[17]

At the prompting of ClearPlay's counsel, Dr. Feamster conflated the user's selection of "No Thanks" on the pop-up message and the resulting setting of the ████ variable in the AutoHop software to FALSE with disabling all segment bookmarks for that show.[18] However, there is no support in the evidence for Dr. Feamster's assertion that pressing "No Thanks" on the pop-up directly disables any of the segment bookmarks. To the contrary, the evidence is undisputed that (1) the data structure for the segment bookmarks has no ████ variable;[19] (2) that the ████" variable is stored only in the AutoHop software;[20] and (3) that the AutoHop software, as Dr. Feamster admits, is separate and distinct from the segment bookmarks.[21] Dr. Feamster confirmed his understanding that setting the ████ variable in the AutoHop software to FALSE or TRUE performs no direct action on the segment bookmarks themselves.[22] At most, setting the ████" variable to FALSE in the AutoHop software by selecting "No Thanks" on the pop-up results in all segment bookmarks in the segment bookmark file corresponding to the show being

---

[17] Ex. 1-0025-26, '970 Patent at 18:64-19:4; Tr. (Feamster) 615:7-620:14; *see also* Dkt. 883 at 8-10.

[18] Appendix #20, Tr. (Feamster) 617:15-19.

[19] Tr. (Minnick) 413:8-11 (discussing the bookmark structure shown at Ex. 395 at DISH-CP-SC00197).

[20] Appendix #6, Tr. (Feamster) 578:23-579:13 (discussing the ████████ data structure shown at Ex. 395 at DISH-CP-SC00262-266).

[21] Tr. (Feamster) 616:9-11 (describing that how a "variable" in the AutoHop software enables or disables skipping functionality for the "No thanks" theory), 616:22-25 (same), 617:1-2 (same), 617:7-15 (same), 617:23-618:6 (same), 618:17-619:18 (describing that a "variable" in the AutoHop software enables or disables skipping functionality for the fast-forward/rewind theory), 619:19-620:5 (same); *see also* Appendix #45, Tr. (Feamster) 867:12-14 ("The segment bookmark file is not part of the source code."); Appendix #44, Tr. (Feamster) 864:16-20; Ex. 395 at DISH-CP-SC00197, 262-266; Feamster Demonstratives Slide 26; Tr. (Feamster) 578:23-579:13.

[22] Appendix #17, Tr. (Feamster) 620:6-13; Appendix #9, Tr. (Feamster) 621:9-24.

*ignored* because AutoHop commercial skipping was never turned on.[23] This clearly does not satisfy the Court's requirement that "[a]*n action must directly disable a navigation object* so that its filtering action is ignored, as opposed to *disabling something other than the navigation object* that results in the navigation object's filtering action being ignored."[24] Dr. Feamster relied exclusively on setting certain variables *within the AutoHop software*, which he admits is *separate and distinct data structure from the alleged navigation objects* (segment bookmarks).[25]

ClearPlay also argued at trial that the '970 Patent Disabling Claims are literally infringed whenever a Hopper user selects "Yes" in response to the AutoHop pop-up message for one viewing of an AutoHop-enabled show and selects "No Thanks" in response to the AutoHop pop-up message for another viewing of the same AutoHop-enabled show (without showing that this hypothetical two-viewing method had ever been performed).[26] But this theory fails for the same reason described above: selecting "No Thanks" in response to the AutoHop pop-up message results in the ▮▮▮▮ variable being set to FALSE, which does not directly disable the segment bookmarks (the accused navigation objects). Rather, setting this variable to FALSE merely causes the segment bookmarks to be *ignored* by the AutoHop software, thereby permitting the show to play *with* commercials. But, as Dr. Feamster admitted and the Court instructed the jury, simply ignoring the segment bookmarks is *not* sufficient for purposes of infringement.[27] Claim 27 requires more—that

---

[23] Appendix #20, Tr (Feamster) 617:7-15; Trial Ex. 395-0235 and 236 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮; Feamster Demonstratives Slide 57 (citing Ex. 395 at DISH-CP-SC00236 at lines 8380-8384).

[24] Dkt. 924 (Jury Instructions) at 43 (Inst. 30) (emphasis added).

[25] *See* FN. 26, *supra*.

[26] Dkt. 886 at 3-7.

[27] *See* Tr. (Feamster) 811:13-16 ("Q. You would agree, sir, that Claim 27 requires that some action must be taken to disable at least one navigation object so that its filtering action is ignored. Correct? A. Yes."); Dkt. 924 (Jury Instructions) Inst. 30 at 43.

some action be taken to directly disable at least one navigation object *before* the filtering action of the disabled navigation object is ignored. In other words, the plain language of the claim requires both disabling *and* ignoring.[28]

ClearPlay may argue that segment bookmarks are disabled by relying on Dr. Feamster's conclusory allegations and DISH's technical documents that refer to disabling "automatic Interstitial skipping."[29] However, the 2007 Scrubs II document's reference to "disabling … skipping" speaks only to the result, and lends no support to the notion that any disabling occurs to the segment bookmarks themselves. Moreover, Dr. Feamster admitted that it is the AutoHop software—i.e., "code"—that controls how this alleged "disabling of these segment bookmarks takes place."[30] And, as set forth by Dr. Feamster, the AutoHop software confirms that (1) the only action resulting from the user's selection at the AutoHop pop-up is the ▮▮▮▮ variable being set to TRUE or FALSE; and (2) that same variable is *not part of the segment bookmark file or segment*

---

[28] *Bicon, Inc. v. Straumann Co.*, 441 F.3d 945, 950 (Fed. Cir. 2006) ("[C]laims are interpreted with an eye toward giving effect to all terms in the claim.") (emphasis added) (citations omitted); *see also Bd. of Regents of the Univ. of Tex. Sys. v. BENQ Am. Corp.*, 533 F.3d 1362, 1371 (Fed. Cir. 2008) ("Different claim terms are presumed to have different meanings.") (citing *CAE Screenplates Inc. v. Heinrich Fiedler GmbH & Co.*, 224 F.3d 1308, 1317 (Fed. Cir. 2000) ("In the absence of any evidence to the contrary, we must presume that the use of these different terms in the claims connotes different meanings.")).

[29] Appendix #12, Tr. (Feamster) 613:3-9; Appendix #13, Tr. (Feamster) 614:12-21; Appendix #14, Tr. (Feamster) 614:25-615:4; Feamster Demonstratives Slide 54 (citing Ex. 34 at CP0000350).

[30] Appendix #15, Tr. (Feamster) 615:7-9.

*bookmarks*. Thus, there is no action that directly disables the segment bookmarks, regardless of whether a user selects either "Yes" or "No Thanks" in a single viewing of a recorded video, or "Yes" or "No Thanks" for multiple viewings.[31] The "multiple viewings" theory cannot cure the primary deficiency in ClearPlay's evidence—there is no action taken to directly disable the alleged navigation object (the segment bookmarks). The segment bookmark data structures remain entirely untouched and unchanged after the user selects "No Thanks" on the pop-up screen. At most, this selection results in all alleged navigation objects being ignored, but it does not perform any specific action to directly disable any alleged navigation object.

### 2. Selecting "Yes" And Subsequently Fast-Forwarding or Rewinding into a Commercial: No Disabling of Accused Navigation Objects (Segment Bookmarks)

ClearPlay presented no evidence that either fast-forwarding or rewinding into a commercial with AutoHop takes any action to directly disable the accused navigation objects (pairs of segment bookmarks in the segment bookmark file).[32] At most, a variable is toggled in the AutoHop software when Fast-Forward or Rewind is pressed which has the effect of ignoring all segment bookmarks until normal Play mode is resumed. The segment bookmarks remain exactly as they were just prior to the user's activation of a fast forward or rewind function. There is no action that disables the segment bookmarks.

---

[31] *See* Dkt. 886 (ClearPlay Supplemental Briefing Regarding Disabling) 3-7. Note ClearPlay never presented the multiple view infringement theory in any prior expert report. Nonetheless, it still fails. Additionally, ClearPlay has no evidence that anyone has actually performed the claimed method in this nonsensical manner—by first watching a show without commercials and then going back to watch the show with commercials. *See Ormco Corp. v. Align Tech., Inc.*, 463 F.3d 1299, 1311 (Fed. Cir. 2006) ("Method claims are only infringed when the claimed process is performed, not by the sale of an apparatus that is capable of infringing use.").

[32] Tr. (Feamster) 611:21-612:3; *see also* Dkt. 883 at 10-12.

ClearPlay's theory at trial was that the segment bookmarks are *ignored* while fast-forwarding during an AutoHop enabled show.[33] Here again, ClearPlay improperly conflated disabling and ignoring—two separate and distinct requirements of the claim language. But as explained in the Court's construction, the claims require an action that directly disables the navigation object, not an action that merely results in the alleged filtering action being ignored.

The evidence regarding fast-forwarding and rewinding confirms that no action directly disables the segment bookmarks. As discussed above, the AutoHop software checks several variables to determine whether AutoHop commercial skipping will occur during playback of a recorded show. In addition to checking whether the ████ variable is set to TRUE (which only results from the user selecting "Yes" on the AutoHop pop-up message), the software also checks the variable ████████████ at line 5813 to see whether the show is in ████████████" This variable is only set to ████████████ if the show is playing back normally. If the user presses either the fast-forward or rewind buttons on the remote control, this variable will not be set to ████████████ and as a result, the segment bookmarks are ignored and no commercial skipping will occur until normal play mode is resumed.[34] Specifically, during playback, ████████████████████████████████████████████████████ ████████████████████████████████████████████████████

---

[33] Appendix #17, Tr. (Feamster) 620:6-13 ("So when the fast forwarding takes place, the navigation object is represented by that pair of segment bookmarks that would normally do the skip. Those are ignored and the filtering action doesn't take place? A. ***Correct***.").

[34] Appendix #24, Tr. (Feamster) 618:16-619:18.

██████████████████████████████████████████████

████████████████ [black redaction] ████████████ [35]

████████████████

The specific action that occurs in the AutoHop software when the fast-forward or rewind button is pressed confirms that no segment bookmarks are disabled. ████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████ —

and *not* in the segment bookmarks in the segment bookmark file. In other words, the AutoHop software merely verifies the set-top box mode—whether "it's playing" and is "not fast forwarding and not rewinding."[36] No change is made to the segment bookmarks to disable them, nor does Dr. Feamster identify anything other than ignoring the skip action that would have resulted. Indeed, even if a user had previously fast-forwarded into a commercial break, that commercial break would still be AutoHop skipped in the event that the user rewound to a position in the program before the commercial break. This evidences that the segment bookmark has not changed or been disabled at all—it is still enabled. This makes sense in DISH's AutoHop software, given that the purpose of AutoHop is to use the segment bookmarks to play the show segments in order without playing the commercials.[37]

---

[35] Appendix #24, Tr. (Feamster) 618:16-619:18, Appendix #17, Tr. (Feamster) 620:6-14; Ex. 395 at DISH-CP-SC00304.

[36] Appendix #24, Tr. (Feamster) 619:13-14.

[37] Appendix #11, Tr. (Minnick) 443:12-445:4; Tr. (Minnick) 359:7-12, 359:16 ("So we can all stipulate you play the segments."), 377:4-7, 468:18-24, 469:4-11.

The purported "disabling" actions that ClearPlay identified (selecting "Yes" or "No Thanks" on the pop-up or pressing fast-forward on the remote control) merely toggle variables in the AutoHop software that result in the segment bookmarks being *ignored* because the AutoHop software only skips commercials when certain conditions are satisfied, including verifying the states of these variables. Nothing in DISH's AutoHop software directly disables any alleged navigation object—i.e., segment bookmark PTS values or the segment end flag. Without any action to directly disable one or more of those navigation objects, there is no infringement of the '970 Patent. All evidence at trial confirmed that ClearPlay focused only on the ignoring step of the claim, and no evidence indicates that any of the items within the alleged navigation object are directly disabled at all. Therefore, ClearPlay failed to provide a legally sufficient evidentiary basis for a reasonable jury to find literal infringement of the '970 Patent.[38]

**B.    Order, Section 2.ii and 2.iii: No Literal Infringement of Claim 12 of the '799 Patent**

**1.    No Filtering Action and Configuration Identifier Within Each Navigation Object**

ClearPlay presented legally insufficient evidence of literal infringement of Claim 12 because it identified alleged navigation objects that do not contain their own specific elements and, rather, use elements that are not contained within each navigation object (i.e., they are shared across navigation objects), rendering the term "navigation object" meaningless.[39]

---

[38] Moreover, because there is no allegation remaining regarding doctrine of equivalents infringement for the '970 Patent, there is no infringement of any claim of the '970 Patent.
[39] *See* Dkt. 862 (DISH's Motion for Judgment as a Matter of Law Under Rule 50(a)) at 5-6.

ClearPlay's evidence is legally insufficient because it does not follow the Court's instruction to the jury that the specific elements that make up the navigation object, including the filtering action and the configuration identifier, must be contained *within* the navigation object:

> "navigation object" means its "plain and ordinary meaning (as defined by the terms of the claims themselves)." For example, claim 27 of the '970 Patent states that each navigation object "defin[es] a start position and a stop position and a specific filtering action to be performed on a portion of the multimedia content." In all claims, the start, stop, and filter elements that comprise the navigation object must be contained within the same object, file, or data structure.
> . . .
> "configuration identifier" means "an identifier of the consumer system (including hardware and software) that is used to determine if the navigation objects apply to the particular consumer system." Claim 12 of the '799 Patent requires the configuration identifier to be contained within the navigation object.[40]

The instructions reflect the understanding the Court set forth in its summary judgment order that: (1) the "plurality of navigation objects limitation has no meaningful purpose in the Asserted Patents if a navigation object does not contain all of its elements"; (2) the "Asserted Claims (which have the plurality of navigation objects limitations) [require] *each* navigation object in the plurality as containing *its own* specific elements"; and (3) "each navigation object is capable of being distinguished from the others in the plurality."[41] The Court held that the "navigation object "is not a formless assigning or specifying of associated or linked information from multiple sources" but is instead "a structured object."[42]

Dr. Feamster's literal infringement theory for Claim 12 relied on a single element ("model_targeting_descriptor") within the announcement file as the alleged "configuration

---

[40] Dkt. 924 at 42-43.
[41] Dkt. 653 at 12-13 (emphasis added).
[42] *Id.* at 11.

identifier" for all of the plurality of purported navigation objects collectively.[43] He similarly relied on a single element (the "Show Metadata" type field) within the announcement file that he claims "specifies" the filtering action in the plurality of navigation objects required by the claims. As illustrated in DDX-6 below, the model_targeting_descriptor and Show Metadata fields in DISH's announcement file appear only once in that file and Dr. Feamster's theory requires that they are both ***shared*** in order to point to the required plurality (two or more) of alleged navigation objects.[44]



The first alleged "navigation object" that Dr. Feamster identified ("Nav Obj 1") includes: (1) offset 2; (2) offset 3; (3) the Show Metadata type field; and (4) the model_targeting_descriptor. The second alleged "navigation object" that he identified includes: (1) offset 4; (2) offset 5; (3) the

---

[43] Appendix #55, Tr. (Feamster) 657:13-658:9; Appendix #56, Tr. (Feamster) 750:23-751:13, 801:17-24.
[44] Appendix #57, Tr. (Feamster) 804:12-15.
[45] DDX-6.

*same* Show Metadata type field as in Nav Obj 1; and (4) the ***same*** model_targeting_descriptor as in Nav Obj 1.[46]

Thus, Dr. Feamster's literal infringement theory, which relied on a shared configuration identifier and a shared filtering action element, contradicted the Court's plain meaning interpretation and summary judgment order requiring that "each navigation object 'defin[es] a start position and a stop position and a specific filtering action'" and all of these components are "contained within the navigation object" as its own specific elements—not shared to various start and stop portions of the accused navigation object.[47] In testifying that DISH infringes, Dr. Feamster asserted that a "single element," such as the Show Metadata type field and the model_targeting_descriptor, "applies to each and every one of the navigation objects in this file" and that "[i]t is the same value for all of them."[48] Thus, Dr. Feamster's testimony does not satisfy the Court's requirement that each navigation object must be capable of being distinguished from others in the plurality and must contain all of its essential and specific elements.

Because Dr. Feamster's literal infringement analysis for the filtering action and configuration identifier limitations fails to meet the requirements of the Court's instructions regarding the meaning of those terms, no reasonable jury could have found that DISH infringes Claim 12. Thus, there is no legally sufficient evidence in the record that would support literal infringement of Claim 12 of the '799 Patent.

### 2.    ClearPlay's Multi-Object Approach

---

[46] Appendix #51, Tr. (Feamster) 750:23-751:13; Appendix #54, Tr. (Feamster) 801:17-24.
[47] *See* Dkt. 924 at 42-43; Dkt. 653 at 12-14.
[48] Appendix #37, Tr. (Feamster) 804:16-805:3.

ClearPlay also presented legally insufficient evidence of literal infringement of Claim 12 because ClearPlay relied on a multi-object approach to satisfy all navigation object elements, in violation of this Court's instructions and orders.[49]

The Court instructed the jury as to the meaning of "navigation object" and "configuration identifier" in Claim 12 of the '799 Patent. In particular, it instructed the jury that:

> "navigation object" means its "plain and ordinary meaning (as defined by the terms of the claims themselves)." For example, claim 27 of the '970 Patent states that each navigation object "defin[es] a start position and a stop position and a specific filtering action to be performed on a portion of the multimedia content." ***In all claims, the start, stop, and filter elements that comprise the navigation object must be contained within the same object, file, or data structure***. . . .
>
> "configuration identifier" means "an identifier of the consumer system (including hardware and software) that is used to determine if the navigation objects apply to the particular consumer system." Claim 12 of the '799 Patent ***requires the configuration identifier to be contained within the navigation object***.[50]

Claim 12 thus requires a configuration identifier "to be contained within" the navigation object. And, for Claim 12, ClearPlay was limited to presenting a literal infringement theory based on announcement files:

> ClearPlay's literal infringement theories that rely on an alleged navigation object other than the announcement file fail as a matter of law on the Configuration Identifier Claims.[51]

The Court found that relying on "a multi-object approach to navigation object for the configuration identifier element is unreasonable and inconsistent with the Configuration Identifier Claims."[52]

---

[49] *See* Dkt. 862 at 3-5.
[50] Dkt. 909 (Jury Instructions) Inst. 30 at 99-100.
[51] Dkt. 653 at 21.
[52] *Id.* at 22.

The single-object approach is consistent with the claim language, as Claim 12 recites six claim limitations that each reference the same navigation object, and thus, the same "object, file, or data structure" that contains the start, stop, and filtering action. Specifically, Claim 12 recites three "position code" limitations (the "continuously monitoring," "activating," and "transferring" steps), and then three "configuration identifier" limitations ("assigning," "comparing the configuration identifier…", "determining … based on the configuration identifier").[53] The "activating the filtering action" limitation introduces the phrase "*the* particular navigation object," and the subsequent "configuration identifier" limitations refer back to the same "particular navigation object."[54] A fundamental tenet of patent claim construction is that a definite article ("the") generally refers back to the limitation introduced by an indefinite article ("a" or "an").[55] This is especially pertinent here since the term in Claim 12 is "a particular navigation object," referring to a singular, unique, *and particularized* navigation object among a "plurality" of navigation objects. Thus, every limitation using "*the* particular navigation object" must use the *same* particular navigation object.

---

[53] The "position code" limitations are "decoding the multimedia content on the consumer computer system and as the multimedia content is output from a decoder of the consumer computer system, continuously updating a position code; as the multimedia content is decoding, continuously monitoring the position code to determine whether the position code of the multimedia content falls is within the star and stop positions defined by one of the navigation objects; when the position code is determined to fall within the star and stop positions defined by a particular navigation object, activating the filtering action assigned to the particular navigation object in order to filter the portion of the multimedia content defined by the particular navigation object."

[54] Trial Ex. 4-0026 (Claim 12 of '799 Patent).

[55] *Infernal Tech., LLC v. Activision Blizzard Inc.*, No. 2021-2349, 2023 WL 370602, at *2 (Fed. Cir. Jan. 24, 2023) ("Under this principle, the term 'said observer data' recited in steps 1(c) and 1(d) must refer back to the 'observer data' recited in step 1(a).").

Indeed, DISH's MIL #2 sought to prevent any confusion over this issue and preclude ClearPlay from attempting to present a literal infringement analysis based on a multi-object approach.[56] The Court agreed, granting DISH's MIL #2, and stating that ClearPlay could present literal infringement but "must do so under the single-object approach to 'navigation objects.'"[57]

Despite the Court's orders and instructions, ClearPlay presented the jury with a literal infringement analysis using a multi-object approach with different navigation objects, each containing different data, for meeting these elements of Claim 12. ClearPlay's literal infringement theory for Claim 12, based on the testimony of Dr. Feamster, did not rely on the same object for all six instances of "the particular navigation object" but variously relied on (1) *segment bookmarks*; (2) *the AutoHop software*; and (3) *announcement file*.[58] As illustrated in this demonstrative, Dr. Feamster claimed that both the announcement file and segment bookmark files contained navigation objects:

---

[56] *See, e.g.*, Dkts. 637, 799.
[57] Dkt. 845.
[58] Appendix #42, Tr. (Feamster) 652:22-654:12.



In particular, Dr. Feamster testified that the 0x08 type announcement file contains a "navigation object," identified the "Show Metadata" field[60] as "specifying" the claimed "filtering action," and identified the "model_targeting_descriptor" field as the claimed "configuration identifier" for the three "configuration identifier" limitations.[61] But Dr. Feamster did ***not*** agree that "to be a navigation object, the start, the stop, and the filter elements that comprise the navigation

---

[59] ████████████████████████████████

[60] Although Dr. Feamster initially testified that the "end offset" is the start position, the "start offset" is the stop position, and the "end offset itself" is what "specifies the skip filtering action," (Appendix #49, Tr. (Feamster) 632:9-633:14), he later disavowed this theory, admitting that the "end offset" "just specifies that it's the end offset, which will be used to generate the segment end bookmark with the corresponding PTS." Appendix #50, Tr. (Feamster) 639:7-14; Appendix #53, Tr. (Feamster) 795:24-796:8. Therefore, the offsets in the announcement file cannot be a navigation object, as ClearPlay's own expert disavowed that theory. *Id.*

[61] Appendix #33, Tr. (Feamster) 648:2-9; Tr. (Feamster) 656:3-658:19; Appendix #34, Tr. (Feamster) 752:10-15; Appendix #47, Tr. (Feamster) 809:21-810:3; Appendix #48, Tr. (Feamster) 861:18-862:1.

object must be contained within the same object[,] file[,] or data structure."[62] Dr. Feamster thus expressly rejected the Court's claim construction.

Dr. Feamster's analysis reflected his misunderstanding of the term "navigation object," because he identified the segment bookmarks, which are later created by the AutoHop software using the 0x08 announcement file elements,[63] as the same "particular navigation object" for the "position code" limitations that appear elsewhere in Claim 12.[64] Those segment bookmarks are what he identifies as the "navigation objects" used during decoding and playback, and which are compared with the "position code" in practicing the "position code" limitations.[65] This was repeatedly demonstrated by ClearPlay's and Dr. Feamster's sun-and-watch analogy:

> Q.    *So if the navigation objects we're talking about in the '799 patent are in the announcement -- at the announcement file level* -- and now the position code is working at the segment bookmark level, *what does it do at the segment bookmark level to determine whether the position code falls within the start and stop positions* that are in the announcement files?

> A.    It's comparing the -- well, continuously monitoring, that's the PTS, to determine whether that PTS falls within the start and stop position. So recall that we talked about the start and stop positions in the case of the '799. Those are in the announcement file now. Right? But it doesn't say in this claim that the start and stop positions have to reside anywhere in specific in the system. It's just talking about using the position code to make a determination. Much like, for example, I'd like to make a determination about is the sun above the horizon right now? Okay, well, I can't see the sun, but I can look at my watch and figure out sunrise happened at 6:30 and sunset happens sometime later this evening. And I can make a determination that the sun is above the horizon. And similarly here, the set-top box is looking at the position code, it's making a deter . . . . Similarly, the set-top box during playback is *monitoring a position code to make a determination. How does it make that determination? It has the information in the segment bookmarks, but that segment -- so -- but it's making that determination based on the*

---

[62] Appendix #40, Tr. (Feamster) 692:16-20 ("A. No.").
[63] Appendix #50, Tr. (Feamster) 639:7-14; Appendix #46, Tr. (Templeman) 89:12-90:04.
[64] Appendix #41-43, Tr. (Feamster) 652:16-655:8.
[65] Appendix #41-43, Tr. (Feamster) 652:16-655:8.

*information in the announcement file. The start and stop positions in the announcement file.*

Q.      All right. Thank you. So checking the segment bookmarks would be sort of like checking your watch to see what's happening in the sky?

A.      Right. Exactly.

Q.      All right. And then the sky would be the announcement file part of the analogy?

A.      Yes.[66]

Dr. Feamster's sun-and-watch infringement theory uses a multi-object approach that contradicts the Court's construction because the sun and watch are two wholly different objects, as are the segment bookmark file and the 0x08 announcement file. Dr. Feamster admitted that the announcement files, segment bookmark files, and the AutoHop software are separate and distinct objects.[67] However, Dr. Feamster testified that he believed the elements of the navigation object (i.e., start, stop, filter) could be found anywhere in order to perform the claim limitations.[68] He thus relied on the segment bookmarks, which contain the start and stop positions that are derived from the anchor and offset data contained within the announcement file, to meet the "position code" limitations.[69] And it is undisputed that the segment bookmarks and announcement files are separate objects.[70]

---

[66] Appendix #41-43, Tr. (Feamster) 652:16-655:8 (cleaned up and emphasis added).

[67] Appendix #44, Tr. (Feamster) 864:16-865:5; Appendix #45, Tr. (Feamster) 867:12-15; *see also* Appendix #46, Tr. (Templeman) 89:12-90:04.

[68] Appendix #42, Tr. (Feamster) 653:11-12.

[69] Appendix #41-42, Tr. (Feamster) 652:16-654:12 ("([A]nd now the position code is working at the ***segment bookmark level***, what does it do at the ***segment bookmark level*** to determine whether the position code falls within the start and stop positions that are in the announcement files? A. It's comparing the – well, continuously monitoring, that's the PTS, to determine whether that PTS falls within the start and stop position.")

[70] Appendix #44, Tr. (Feamster) 864:16-865:5.

Mr. Minnick's unrebutted testimony, which ClearPlay elicited in its case-in-chief, confirmed—and Dr. Feamster and ClearPlay did not dispute—that the announcement files are deleted before playback, and thus could not contain the navigation objects used *during* playback.[71] Thus, even if the 0x08 announcement file contained a filtering action (it does not), Claim 12's requirement "when the position code is determined to fall within the start and stop positions defined by a particular navigation object, activating the filtering action assigned to the particular navigation object," could not possibly be satisfied by the 0x08 announcement file. The AutoHop software could not "activat[e] the filtering action assigned to the particular navigation object" if the 0x08 announcement file, which Dr. Feamster alleges contains the filter action, no longer exists during playback. And, even assuming that the offsets in the announcement file somehow "specify" the start and stop positions used during playback, this theory fails at the "activating the filtering action *assigned to* the particular navigation" step because that step likewise requires *the same particular* navigation object (in the announcement file) to exist during playback so that its filtering action can be activated "in order to filter the portion of the multimedia content defined by the particular navigation object." Dr. Feamster thus had to rely on the separate and distinct segment bookmark file information to meet the claimed "continuously monitoring" and "activating" limitations during playback, but this multi-object theory fails as a matter of law.[72]

---

[71] Appendix #30, Tr. (Minnick) 451:2-14.

[72] Any assertion that the announcement file data is used during playback relies on doctrine of equivalents in terms of a "multi-object approach" to "navigation objects." This is addressed in the doctrine of equivalents section below.

Moreover, for the "activating" limitation, Dr. Feamster's pointed to the AutoHop software itself, as containing the alleged filtering action. When asked about the "activating the filtering action" limitation, Dr. Feamster identified the "call that we've seen send the motion auto skip message."[73] This is the ***exact same portion of the AutoHop software*** that Dr. Feamster identified for the alleged filtering action for Claim 27 of the '970 Patent.[74]

As a result, Dr. Feamster did not establish that a single alleged navigation object—consisting of information in the 0x08 announcement file—constituted the claimed "the particular navigation object" across all of Claim 12's navigation object limitations. Rather, he mapped information from the 0x08 announcement file to the "configuration identifier of the particular navigation object" limitations of Claim 12, and information from the segment bookmark file and the AutoHop software (which are not the same, particular "object, file, or data structure") to the ***same*** particular navigation object in the remaining steps of Claim 12.

Because Dr. Feamster's literal infringement analysis uses a multi-object approach, it fails as a matter of law.

---

[73] Appendix #43, Tr. (Feamster) 654:13-24.
[74] Feamster Demonstratives Slide 26, 29-32 (citing Ex. 395 at DISH-CP-SC-00300, 303, 307).

**C.      Order, Section 2.iv and 2.v: No Infringement of Claim 12 of the '799 Patent under Doctrine of Equivalents**

ClearPlay presented legally insufficient evidence of infringement of Claim 12 under the doctrine of equivalents ("DOE").[75]

"To find infringement under the doctrine of equivalents, any differences between the claimed invention and the accused product must be insubstantial."[76] The two most common DOE tests are the "function-way-result" test and the "insubstantial differences" test.[77] For the first, courts consider whether the accused product or process performs substantially the same function, in substantially the same way, to achieve substantially the same result as each element of each asserted claim.[78] For the second, courts look at whether the differences between the accused product and the claimed invention are insubstantial.[79]

For infringement under the doctrine of equivalents, ClearPlay was required to present "particularized testimony and linking argument" for each prong of the function-way-result test.[80] "It is important to ensure that the application of the doctrine, even as to an individual element, is

---

[75] *See* Dkt. 862 at 10-12.

[76] *VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1322 (Fed. Cir. 2014) (citing *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 608 (1950)).

[77] *See, e.g.*, *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 493 F.3d 1368, 1377 (Fed. Cir. 2007).

[78] *Id.*

[79] *Id.*

[80] *Lear Siegler, Inc. v. Sealy Mattress Co. of Mich., Inc.*, 873 F.2d 1422, 1425-26 (Fed. Cir. 1989); *see also Augme Techs., Inc. v. Yahoo! Inc.*, 755 F.3d 1326, 1336 (Fed. Cir. 2014) ("To survive summary judgment of noninfringement under the doctrine of equivalents, Augme *had to present evidence of equivalence under each prong of the function-way-result test*." (emphasis added)); *Tex. Instruments Inc. v. Cypress Semiconductor Corp.*, 90 F.3d 1558, 1567 (Fed. Cir. 1996) (patentee must provide "particularized testimony and linking arguments as to the insubstantiality of the differences between the claimed invention and the accused device or process . . . on a limitation by limitation basis.").

not allowed such broad play as to effectively eliminate that element in its entirety."[81] Often called the three *Graver Tank* elements, DOE "require[s] substantial identity of function, means, and result."[82] And each of the three *Graver Tank* elements "must be presented in the form of a particularized testimony and linking argument."[83] ClearPlay failed to meet this requirement.

To show infringement under the doctrine of equivalents, ClearPlay attempted to rely on two elements of the alleged "navigation object" that, unlike the claimed invention, are shared across the alleged "plurality of navigation objects."[84] In particular, ClearPlay alleged that DISH's Show Metadata type field, which it alleges "specifies" the filtering action and which must be contained ***within*** a navigation object, is shared among pairs of offsets (each pair being one of the "plurality of navigation objects").[85] Likewise, ClearPlay alleged that DISH's model_targeting_descriptor (the alleged "configuration identifier") is shared among the same pairs of offsets (the "plurality of navigation objects").[86]

The Court has already ruled that a navigation object is a single "object, file, or data structure" and not a meaningless form.[87] That is, ClearPlay's claimed "navigation object" is a "structured object," "not a formless assigning or specifying of associated or linked information

---

[81] *Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 29 (1997).

[82] *Lear Siegler, Inc. v. Sealy Mattress Co. of Mich., Inc.*, 873 F.2d 1422, 1425 (Fed. Cir. 1989) (holding substantial identity must be proven for all three: "function performed, means by which function is performed, and result achieved") (citing *Graver Tank & Mfg. Co., Inc. v. Linde Air Prods. Co.*, 339 U.S. 605, 608 (1950)).

[83] *Id.* at 1426.

[84] Appendix #37, Tr. (Feamster) 804:16-804:21; Appendix #38, Tr. (Feamster) 802:22-25, 803:10-23.

[85] Appendix #33, Tr. (Feamster) 648:2-9; *see also* Appendix #37, Tr. (Feamster) 804:16-804:21; Appendix #38, Tr. (Feamster) 802:22-25, 803:10-23.

[86] Appendix #36, Tr. (Feamster) 804:3-804:13; *see also* Appendix #37, Tr. (Feamster) 804:16-804:21; Appendix #38, Tr. (Feamster) 802:22-25, 803:10-23.

[87] Dkt. 653 at 10-14.

from multiple sources."[88] Notwithstanding the foregoing, ClearPlay relied on DOE to argue that a "navigation object" requires only two of the three required and "separate pieces of information," or that the three pieces can be found across two distinct objects. But the claimed "navigation object" is a specific "structural arrangement," and ClearPlay cannot "expand the scope of its patent to encompass products employing different a [sic] structural arrangement than that claimed by arguing that the accused structures were equivalents."[89]

Nevertheless, ClearPlay did not establish equivalents under the function-way-result or insubstantial differences tests. To try to establish equivalents, Dr. Feamster made the conclusory statement that an announcement file containing only a single instance of a Show Metadata type field for all of Dr. Feamster's alleged "plurality of navigation objects" was "not substantially different" from having the Show Metadata type field in each navigation object.[90] This testimony, however, is directly contradicted by Dr. Feamster's express recognition that DISH's software operates very differently than the claimed invention in that providing the element that allegedly "specifies" the filtering action (i.e., the Show Metadata type field) for *each* of the claimed "plurality of navigation objects" would be an "inefficient and pretty bad *way* of writing the code."[91]

---

[88] *Id.* at 11.

[89] *B-K Lighting, Inc. v. Vision3 Lighting*, 930 F. Supp. 2d 1102, 1141-42 (C.D. Cal. 2013) ("The Federal Circuit has held that a patent that 'claims a precise arrangement of structural elements that cooperate in a particular way to achieve a certain result' is not infringed by an accused product that achieves the same result 'by a different arrangement of elements.'") (quoting *Sage Prods., Inc. v. Devon Indus., Inc.*, 126 F.3d 1420, 1423-25 (Fed. Cir. 1997)); *see also Perkin-Elmer Corp. v. Westinghouse Elec. Corp.*, 822 F.2d 1528, 1532 n.6 (Fed. Cir. 1987) ("That a claimed invention and an accused device may perform substantially the same function and may achieve the same result will not make the latter an infringement under the doctrine of equivalents where it performs the function and achieves the result *in a substantially different way*.") (emphasis added).

[90] Appendix #39, Tr. (Feamster) 649:7-13; Appendix #59, Tr. (Feamster) 649:23-652:6.

[91] *Id.* (emphasis added).

Likewise, for the "configuration identifier" limitations, Dr. Feamster testified that "it would be silly" or a "ridiculous way to write your code" as is required by Claim 12—to include a configuration identifier for each of the navigation objects. He further testified that "it wouldn't make any sense at all to repeat that value multiple times throughout the announcement file" for each pair of offsets, despite the Court's construction requiring a "configuration identifier to be contained within the navigation object."[92]

Dr. Feamster's testimony establishes, at a minimum, that the differences between the claimed invention and DISH's implementation *are* substantial. Dr. Feamster testified that the invention *literally recited in Claim 12* is a "pretty bad way" to write software and is "inefficient," "silly," and "ridiculous."[93] As a result, Dr. Feamster effectively admitted that the *way* in which DISH's implementation is achieved is, in fact, substantially *different* than—in fact, superior to—the claimed invention.[94]

In addition, Dr. Feamster's opinion that the claimed invention and DISH's implementation perform the same function is unsupported. The patents describe that the navigation objects can

---

[92] Appendix #61, Tr. (Feamster) 744:25-745:20; Dkt. 909 (Jury Instructions) Inst. 30 at 100.

[93] Appendix #59, Tr. (Feamster) 649:23-652:6; Appendix #60, Tr. (Feamster) 664:14-24; Appendix #61, Tr. (Feamster) 745:7-20; Appendix #63, Tr. (Feamster) 747:11-21.

[94] *See Amgen Inc. v. Sandoz Inc.*, 923 F.3d 1023, 1029 (Fed. Cir. 2019) (finding no infringement "under the doctrine of equivalents because [accused infringer's] one-step, one-solution purification process works in a substantially different way from the claimed three-step, three-solution process"), *reh'g granted, opinion modified on other grounds*, 776 F. App'x 707 (Fed. Cir. 2019); *Bid for Position, LLC v. AOL, LLC*, 601 F.3d 1311, 1319 (Fed. Cir. 2010) (finding difference in the way "is sufficiently fundamental" that no infringement under DOE); *Perkin-Elmer*, 822 F.2d at 1532 n.6 (Fed. Cir. 1987) ("That a claimed invention and an accused device may perform substantially the same function and may achieve the same result will not make the latter an infringement under the doctrine of equivalents where it performs the function and achieves the result in a substantially different way."); *Sealed Air Corp. v. U. S. Int'l Trade Comm'n*, 645 F.2d 976, 984 (C.C.P.A. 1981) (finding no equivalents when accused process did not operate in substantially same way).

contain different filtering actions. For example, a reframe filtering action might be available in some devices while other devices might only support a skip filtering action.[95] The configuration identifier determines whether a particular device (such as a DVD player) supports a navigation object with a particular filtering action (e.g., whether it can reframe or only supports skip), enabling that navigation object to be delivered to the appropriate device.[96] Sharing a single configuration identifier across all navigation objects entirely eliminates its function in the claimed method because doing so no longer allows the system to distinguish which navigation objects are appropriate for a particular device.[97] Thus, a distinct configuration identifier within each navigation object is necessary to the function performed by the claimed method.

In contrast, Mr. Minnick testified in ClearPlay's case-in-chief that DISH's model_targeting_descriptor "is one of those things that we don't really need" for AutoHop to work, as the set-top box will open an announcement file and "try to process it" regardless.[98] So while the claimed "configuration identifier" is critical to the claimed method (in determining which device can perform which filtering action),[99] the element alleged to be a configuration identifier in DISH's implementation (which only has one action) is unnecessary. This further reinforces that there are substantial differences in both the function and the way taught by the claimed invention and the

---

[95] Ex. 4-0023, 15:56-67 (explaining that an "entire scene need not be skipped" using "one or more navigation objects with reframe filtering actions").
[96] Tr. (Jarman) 260:22-261:14 (explaining the configuration identifier is required to support the "number of different places that this [invention] could be implemented."), 262:22-263:4 (the invention "need[s] to be able to identify that this [navigation object] information we're sending applies to this configuration."); Tr. (Feamster) 656:13-657:6, 662:3-10 (discussing "the configuration identifier of the particular navigation object").
[97] *Id.*
[98] Tr. (Minnick) 472:3-14.
[99] Tr. (Jarman) 261:25-262:8, 262:22-263:4; Tr. (Feamster) 656:3-657:6.

function and way DISH's method is performed.[100] Thus, Dr. Feamster's DOE analysis fails because he did not provide legally sufficient evidence that sharing a configuration identifier between multiple navigation objects performs the same function in the same way as having a configuration identifier contained within each navigation object as required by the claims.[101]

In any event, for both of Dr. Feamster's navigation object DOE contentions, his testimony was not "particularized," was not "adequate . . . on substantial identity of function, means, and result," and did not "reasonably serve[] to articulate the comparison."[102] His testimony was generalized, conclusory, and wholly unsupported by any evidence or explanation for *how* the differences between the navigation object in Claim 12 and DISH's structural arrangement were insubstantial.[103] Dismissing the entire difference between the claimed invention and the allegedly infringing implementation as merely "bad" programming, "ridiculous," or "silly" fails to provide legally sufficient evidence of particularity on each of the function, way, and result, and fails to provide linking argument as to why the differences are insubstantial. Merely reciting the incantation that they perform the same function, the same way, to yield the same result, or that differences are insubstantial, just parrots the test and is not legally sufficient evidence.[104] Nor did

---

[100] *See Wavetronix LLC v. EIS Elec. Integrated Sys.*, 573 F.3d 1343, 1360 (Fed. Cir. 2009) (finding the elements "that are so critical to the method of the [asserted] patent are irrelevant to the way the [defendant] uses data to" perform the claimed function, and so no infringement under DOE).

[101] Dkt. 909 (Jury Instructions) Inst. 30 at 100.

[102] *Lear Siegler*, 873 F.2d at 1426.

[103] *Stumbo v. Eastman Outdoors, Inc.*, 508 F.3d 1358, 1364-65 (Fed. Cir. 2007) (finding expert declaration on DOE conclusory when he did not explain either operation or how the differences were insubstantial); *Tex. Instruments Inc. v. Cypress Semiconductor Corp.*, 90 F.3d 1558, 1567 (Fed. Cir. 1996) ("Generalized testimony as to the overall similarity between the claims and the accused infringer's product or process will not suffice [for DOE].").

[104] *Lear Siegler*, 873 F.2d at 1426 ("LSI did not elicit testimony explicitly comparing the claimed and accused devices as to all three elements of equivalence."); *see also Augme Techs.*, 755 F.3d at

the "linking argument" appear in closing, as ClearPlay promised.[105] Instead, ClearPlay's closing argument was equally conclusory.[106] In opposing DISH's JMOL, ClearPlay also argued that DOE applied to the "continuously monitoring" element of Claim 12, and that "using the segment bookmarks during playback is equivalent to using the announcement files."[107] In other words, ClearPlay attempted to rely on a DOE analysis to overcome the fact that its multi-object approach cannot support literal infringement. Yet, Dr. Feamster provided *no* testimony (nor does ClearPlay cite any) that this multi-object theory supports infringement under the DOE. The only testimony cited by ClearPlay is Dr. Feamster's literal infringement analysis, which says nothing about the function-way-result or insubstantial differences tests.[108] This complete lack of a DOE analysis for the "continuously monitoring" element is legally insufficient under *Lear Siegler* and its progeny and, in and of itself, is fatal to ClearPlay's DOE theory of infringement.

In sum, ClearPlay provided legally insufficient evidence for a reasonable jury to find that DISH infringed Claim 12 of the '799 Patent under DOE.

---

1336 ("[E]ven if the testimony were of proper scope, it is conclusory, stating only that the product would 'operate the same,' 'perform [the functions described in the patent] in essentially the same way,' and 'would [produce] the same result.' It offers no explanation beyond these conclusory statements."); *Malta v. Schulmerich Carillons Inc.*, 952 F.2d 1320, 1327 (Fed. Cir. 1991) (simply stating that the accused device is equivalent to the claimed limitation without an explanation of "*why* the overall function, way, and result of the accused device are substantially the same as those of the claimed device and *why* the [accused device] is the equivalent of the claimed [] limitation" is conclusory).

[105] Dkt. 863 at 15-16.
[106] Tr. (Williams) 2001:6-2002:18.
[107] Dkt. 863 at 16.
[108] *Id.* (citing Tr. (Feamster) 633:6-635:1).

III.     **CONCLUSION**

Because ClearPlay failed to present in its case-in-chief a legally sufficient evidentiary basis

to support a jury verdict of direct infringement, DISH respectfully requests that the Court grant

judgment as a matter of law of no direct infringement for the '970 and '799 Patents.


Dated: March 16, 2023

By:      */s/ Brent O. Hatch*  _____
HATCH LAW GROUP, PC
Brent O. Hatch

BAKER BOTTS L.L.P.
G. Hopkins Guy, III
Robert L. Maier
Kurt M. Pankratz
Lauren J. Dreyer

*Attorneys for Defendants*