THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| CLEARPLAY, INC.<br><br>    Plaintiff,<br><br>v.<br><br>DISH NETWORK L.L.C., and<br>ECHOSTAR TECHNOLOGIES L.L.C.,<br><br>    Defendants. | **REDACTED**<br>**MEMORANDUM DECISION AND ORDER**<br>**GRANTING DISH'S MOTION FOR**<br>**JUDGMENT AS A MATTER OF LAW**<br><br>Case No. 2:14-cv-00191-DN-CMR<br><br>District Judge David Nuffer<br>Magistrate Judge Cecilia M. Romero |

This Memorandum Decision and Order resolves the motion of Defendants DISH
Network L.L.C. and DISH Technologies L.L.C. f/k/a EchoStar Technologies L.L.C.
(collectively, "DISH") for judgment as a matter of law ("JMOL")[1] and related briefing filed by
the parties.[2] DISH seeks judgment as a matter of law of noninfringement regarding Plaintiff
ClearPlay, Inc.'s ("ClearPlay") patents, U.S. Patent Nos. 7,577,970 (the "'970 Patent") and
6,898,799 (the "'799 Patent") (collectively, the "Asserted Patents").[3]

---

[1] Defendants' Motion for Judgment as a Matter of Law ("JMOL"), docket no. 862, filed Mar. 3, 2023.

[2] Supplemental Briefing in Support of Defendants' Judgment as a Matter of Law Under Rule 50(a) ("Dish's Suppl Brief"), docket no. 883, filed Mar. 7, 2023; Defendants' Supplemental Memorandum in Support of Motion for Judgment as a Matter of Law of Noninfringement Under Rule 50(a), docket no. 951, filed under seal Mar. 16, 2023; Appendix to Defendants' Supplemental Memorandum in Support of Motion for Judgment as a Matter of Law of Noninfringement Under Rule 50(a), docket no. 951-1, filed under seal Mar. 16, 2023. ClearPlay filed briefing in opposition to DISH's JMOL. ClearPlay's Opposition to Defendants' Motion for Judgment as a Matter of Law Under Rule 50(a) ("ClearPlay's Opposition"), docket no. 863, filed Mar. 5, 2023; ClearPlay's Supplemental Briefing Regarding Disabling, docket no. 886, filed under seal Mar. 7, 2023; Appendix of Exhibits for ClearPlay's Supplemental Memorandum in Opposition to Dish's Motion for Judgment as a Matter of Law Under Rule 50(a), docket no. 946, filed Mar. 16, 2023; ClearPlay's Supplemental Memorandum in Opposition to Dish's Motion for Judgment as a Matter of Law Under Rule 50(a) ("ClearPlay's Suppl. Brief"), docket no. 949, filed under seal Mar. 16, 2023; Appendix of Exhibits for ClearPlay's Supplemental Memorandum in Opposition to Dish's Motion for Judgment as a Matter of Law Under Rule 50(a), docket no. 952, filed under seal Mar. 16, 2023.

[3] Trial Exs. 1 and 4.

Jury trial was held February 27 through March 10, 2023.[4] The jury's verdict finding in favor of ClearPlay and awarding $469,074,468 was returned March 10, 2023.[5]

Following oral argument during trial near the close of ClearPlay's case, ruling on DISH's JMOL was reserved.[6] In a hearing March 21, 2023, an oral ruling was issued, which stated the basis for granting DISH's JMOL.[7] After that hearing, a draft order was submitted by DISH;[8] and an extensive response was received from ClearPlay.[9]

This Memorandum Decision and Order memorializes the complete findings and conclusions regarding DISH's JMOL. DISH's JMOL is resolved pursuant to Rule 50(a) based on the evidence presented in ClearPlay's case-in-chief. Nothing, however, turns on whether the JMOL is resolved under Rule 50(a) or if instead the supplemental briefing is treated as renewing the JMOL pursuant to Rule 50(b). The standard for granting judgment as a matter of law under Rule 50(b) is "precisely the same" as under Rule 50(a).[10]

---

[4] The trial transcript ("Tr.") consists to ten volumes as follows: Vol. I Feb. 27, 2023 (pgs. 1-87), docket no. 934, filed Mar. 16, 2023; Vol. II Feb. 28, 2023 (pgs. 88-319), docket no. 935, filed Mar. 16, 2023; Vol. III Mar. 1, 2023 (pgs. 320-505), docket no. 936, filed Mar. 16, 2023; Vol. IV Mar. 2, 2023 (pgs. 506-757), docket no. 937, filed Mar. 16, 2023; Vol. V Mar. 3, 2023 (pgs. 758-964), docket no. 938, filed Mar. 16, 2023; Vol. VI Mar. 6, 2023 (pgs. 965-1274), docket no. 939, filed Mar. 16, 2023; Vol. VII Mar. 7, 2023 (pgs. 1275-1535), docket no. 940, filed Mar. 16, 2023; Vol. VIII Mar. 8, 2023 (pgs. 1536-1805), docket no. 941, filed Mar. 16, 2023; Vol. IX Mar. 9, 2023 (pgs. 1806-2083), docket no. 942, filed Mar. 16, 2023; Vol. X Mar. 10, 2023 (pgs. 2084-2092), docket no. 943, filed Mar. 16, 2023.

[5] Verdict Form, docket no. 914, filed Mar. 10, 2023.

[6] Minute Entry for Proceedings Held Before Judge David Nuffer, docket no. 901, filed Mar. 8, 2023.

[7] Minute Entry for Proceedings Held Before Judge David Nuffer, docket no. 954, filed Mar. 21, 2023; Transcript of Status Conference Mar. 21, 2023, docket no. 956, filed Mar. 30, 2023.

[8] Notice of Filing of Dish's Proposed Order Granting Dish's Motion for Judgment as a Matter of Law and Proposed Judgment, docket no. 962, filed Apr. 14, 2023; [Sealed Version of docket no. 962], docket no. 964, filed under seal Apr. 14, 2023.

[9] Notice of Filing of ClearPlay's Objections to Dish's Proposed Order Granting Dish's Motion for Judgment as a Matter of Law and Proposed Judgment, docket no. 969, filed May 12, 2023; [Sealed Version of Exhibit A to docket no. 969, filed May 12, 2023], docket no. 971, filed under seal May 12, 2023; Plaintiff's Notice of Errata to docket no. 969-1, Exhibit A to docket no. 969, docket no. 973, filed May 22, 2023.

[10] 9B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2537 (3d ed. 1998); *see, e.g.*, *Stewart v. Adolph Coors Co.*, 217 F.3d 1285, 1288 (10th Cir. 2000). Additionally, some courts have viewed the distinction between 50(a) and 50(b) as a formality, so long as the motion for judgment as a matter of law was

After careful consideration of the parties' oral argument regarding the evidence presented in ClearPlay's case-in-chief and the extensive filings before and after that time, including the draft order and objections thereto, and for good cause appearing, and for the reasons discussed herein, DISH's JMOL[11] is GRANTED. ClearPlay's claims for infringement, induced infringement, and willful infringement fail as a matter of law because the accused devices do not practice the methods of the asserted claims of the '970 Patent and '799 Patent and do not literally, or under the doctrine of equivalents, infringe the asserted claims.

Contents

I.    LEGAL STANDARD ................................................................................................ 1

II.   BACKGROUND ..................................................................................................... 2

III.  CLEARPLAY'S CASE-IN-CHIEF PRESENTATION OF EVIDENCE ............................ 8

      A.    DISH's AutoHop Operation ....................................................................... 8

      B.    The '970 Patent ........................................................................................ 11

            1.    Trial evidence addressing the alleged navigation objects in DISH's segment bookmark files ......................................................... 11

            2.    Trial evidence addressing the alleged disabling based on "No Thanks" on the AutoHop pop-up message ................................................. 12

            3.    Trial evidence addressing the alleged disabling based on fast-forward/rewind into commercials ....................................................... 14

      C.    The '799 Patent ........................................................................................ 16

---

brought before the 28-day deadline after judgment. *See, e.g.*, *Finger v. County of Riverside*, No. EDCV 15-01395 JGB (KKx), 2018 WL 6010356, *3 (C.D. Cal. Jan. 10, 2018)* ("[T]his Court has found[] cases in the Eleventh, Fourth, and Fifth Circuits to hold that a Rule 50(b) motion is unnecessary when the district court reserves ruling on a party's Rule 50(a) motion.") (citing *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 n.4 (11th Cir. 2002) ("The Rule 50(b) motion was unnecessary because the district court had reserved ruling on [the defendant's] Rule 50(a) motion until after the jury returned its verdict."); *First Safe Deposit Nat'l Bank v. W. Union Tel. Co.*, 337 F.2d 743, 746 (1st Cir. 1964) ("In the case at bar the court acted within six days of the verdict. Manifestly it could have asked the defendant to file an immediate Rule 50(b) motion, and have acted upon it. To say that it could not, instead, act on the reserved pre-verdict motion would be to insist upon form over substance.") (footnote omitted); *Nichols Constr. Corp. v. Cessna Aircraft Co.*, 808 F.2d 340, 354-56 (5th Cir. 1985) ("We conclude that, in the present circumstances, the rule of *Johnson* is inapplicable and that Cruse's failure to file a motion for judgment n.o.v. did not prevent the district court from granting Cruse's motion for directed verdict on which the decision had previously been reserved.").

[11] Docket no. 862, filed Mar. 3, 2023.

       1.     Trial evidence addressing the alleged filtering action in DISH's announcement files ............................................................................ 16

       2.     Trial evidence addressing the alleged configuration identifier in DISH's announcement files ....................................................................... 17

IV.  ANALYSIS OF THE EVIDENCE ..................................................................... 18

    A.    Background on "providing for disabling" limitation ............................... 21

    B.    ClearPlay failed to present legally sufficient evidence of "providing for disabling the alleged navigation object such that the filtering action of the disabled navigation object is ignored" as required by the Disabling Claims of the '970 Patent ....................................................................................... 24

       1.     The "No Thanks" pop-up message does not directly disable segment bookmarks.................................................................................... 27

       2.     Fast-forwarding or rewinding into commercials does not disable segment bookmarks .......................................................................... 30

    C.    ClearPlay failed to present legally sufficient evidence of the "plurality of navigation objects" required by claim 12 of the '799 Patent............................... 33

       1.     DISH's single-object "comparison" argument does not compel judgment as a matter of law ...................................................................... 34

       2.     DISH's announcement file cannot satisfy the "plurality of navigation objects" limitations in claim 12 of the '799 Patent.................................... 35

    D.    ClearPlay failed to present legally sufficient evidence of the "plurality of navigation objects" required by Claim 12 of the '799 Patent under the doctrine of equivalents ....................................................................................... 38

       1.     Dr. Feamster did not offer particularized testimony under either of the function-way-result or the insubstantial difference tests ......................... 38

       2.     ClearPlay's evidence for the "navigation object" limitation is legally insufficient for infringement under the doctrine of equivalents .............. 43

V.   SUMMARY .......................................................................................... 44

VI.  ORDER ............................................................................................... 45

# I.     LEGAL STANDARD

Judgment as a matter of law is appropriate when "a party has been fully heard on an issue during a jury trial, and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue[.]"[12] Rule 50(a) allows the trial court to enter judgment as a matter of law when "the facts are sufficiently clear that the law requires a particular result."[13] "Judgment as a matter of law is cautiously and sparingly granted and then only when the court is certain the evidence conclusively favors one party such that reasonable jurors could not arrive at a contrary verdict."[14]

All reasonable inferences are drawn in favor of the nonmoving party, and the district court does not make credibility determinations or weigh the evidence.[15] As quoted in ClearPlay's supplemental brief,[16] the question is "whether a reasonable jury could find that [DISH] infringed the properly construed claims based on the evidence presented."[17] "Sufficient evidence can mean something less than the weight of evidence and consists of such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, even if different conclusions also might be supported by the evidence."[18] Even where DISH offered conflicting evidence, "the

---

[12] Fed. R. Civ. P. 50(a)(1).

[13] *Weisgram v. Marley Co.*, 528 U.S. 440, 448 (2000) (quoting 9A C. Wright & A. Miller, Federal Practice and Procedure § 2521, p. 240 (2d ed. 1995)). The standard under Rule 50(b) is the same. *See supra* note 10.

[14] *Bill Barrett Corp. v. YMC Royalty Co., LP*, 918 F.3d 760, 766 (10th Cir. 2019) (internal quotations omitted); *see also Mformation Techs., Inc. v. Research in Motion Ltd.*, 764 F.3d 1392, 1400 (Fed. Cir. 2014) (affirming "the district court's grant of JMOL of no infringement").

[15] *Bill Barrett*, 918 F.3d at 766.

[16] ClearPlay's Suppl. Brief at 2.

[17] *Harris Corp. v. Ericsson Inc.*, 417 F.3d 1241, 1252 (Fed. Cir. 2005).

[18] *Braun v. Medtronic Sofamor Danek, Inc.*, 141 F. Supp. 3d 1177, 1187 (D. Utah 2015), *aff'd*, 719 F. App'x 782 (10th Cir. 2017).

jury was free to disbelieve" DISH's evidence and credit ClearPlay's evidence, including expert testimony.[19]

This is "a high hurdle to overcome" for the party moving for judgment as a matter of law.[20] But when the hurdle is overcome, the court must ensure that judgment is not entered contrary to law.[21] The complex issues and extraordinary amount of briefing involved with DISH's JMOL meant time was needed to become fully familiar with the case, settled in the law, and confident in granting judgment as a matter of law. The record considered for DISH's JMOL closed at the end of ClearPlay's case-in-chief.

## II.    BACKGROUND

1.    On March 13, 2014, ClearPlay filed a complaint asserting that the operation of AutoHop, "a commercial skipping feature" available on DISH's Hopper 1, Hopper 2, and Hopper 3 set-top boxes, infringed several of its patents.[22] By the close of ClearPlay's case-in-chief, the three claims remaining at issue were claim 12 of the '799 Patent and claims 28

---

[19] *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 850 (Fed. Cir. 2010), *aff'd*, 564 U.S. 91 (2011).

[20] *Hampton v. Dillard Dep't Stores, Inc.*, 247 F.3d 1091, 1099 (10th Cir. 2001).

[21] *See, e.g.*, *Auraria Student Hous. at the Regency, LLC v. Campus Vill. Apartments, LLC*, 843 F.3d 1225, 1247 (10th Cir. 2016) ("Judgment as a matter of law is appropriate only if the evidence points but one way and is susceptible to no reasonable inferences which may support the nonmoving party's position. This standard mirrors the summary judgment standard in that the trial judge *must* direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict.") (emphasis added) (internal quotation marks & citations omitted); *Henry v. Storey*, 658 F.3d 1235, 1237-38 (10th Cir. 2011) ("JMOL is appropriate if, after a party has presented its evidence, the court 'finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue.'") (quoting Fed. R. Civ. P. 50(a)(1)); *see also Heuft Systemtechnik GMBH v. Indus. Dynamics Co., Ltd.*, 282 Fed. App'x 836, 838 (Fed. Cir. 2008) ("Judgment as a matter of law 'is proper if the evidence, construed in the light most favorable to the nonmoving party, permits only one reasonable conclusion, and that conclusion is contrary to the jury's verdict.'") (quoting *Pavao v. Pagay*, 307 F.3d 915, 918 (9th Cir. 2002)).

[22] Complaint for Patent Infringement, underline docket no. 2, filed Mar. 13, 2014; Tr. (Minnick – Direct) 342:12-17 (discussing Trial Ex. 49 (2012 Minnick Declaration) ¶ 59); *see also* Feamster Demonstratives Slide 41 (citing Trial Ex. 32 at EchoStar_CP0000380-81) ("Scrubs is the internal code name for the STB function called 'Time Saver'. The purpose of Time Saver [a prior name for AutoHop] is to automatically skip portions of the DVR event that are considered superfluous (example, commercials). . . . When the [set-top box] plays back the event in Time Saver mode it will play from event scene start to event scene end and jump to the next event scene start resulting in the unrelated material being skipped.").

and 33 of the '970 Patent ("Asserted Claims"), each of which requires "a plurality of navigation objects."[23]

2.      The parties agreed during claim construction, at DISH's suggestion, that "navigation object" be given its "plain and ordinary meaning (as defined by the terms of the claims themselves)."[24] The Asserted Claims state that "each" navigation object "defin[es] a start position and a stop position and a specific filtering action to be performed on a portion of the multimedia content."[25] "Defines" (or "defining") was construed to mean "assign or specify [a start position, stop position, or filtering action]," and ClearPlay agreed to this construction.[26]

3.      At summary judgment, it was determined that based on the claim construction, a navigation object is a *single* "object, file, or data structure" containing all required elements "within the navigation object."[27] That is consistent with the specification, which repeatedly describes and illustrates "all of a navigation object's elements [as] being contained within the navigation object."[28] A navigation object could not merely be "a formless assigning or specifying of associated or linked information from multiple sources"—what has been referred to as the "multi-object approach"—because "the navigation object ceases to be *an object.*"[29] The multi-object approach would, for example, permit the same "programming item" to "be

---

[23] Trial Ex. 1 ('970 Patent) 23:36-40; Trial Ex. 4 ('799 Patent) 21:58-65. ClearPlay also initially asserted claim 37 of the '970 Patent at trial but withdrew its infringement assertions as to that claim during the cross-examination of Dr. Feamster. Tr. (Williams) 733:18-19; *compare* Jury Instructions at 10, docket no. 924, filed Mar. 15, 2023, *with id.* at 37.

[24] Memorandum Decision and Order Regarding Claim Construction ("Claim Construction Order") at 5, 18, docket no. 309, filed Aug. 26, 2019.

[25] Trial Ex. 1 ('970 Patent) 23:37-39; Trial Ex. 4 ('799 Patent) 21:60-65 (similar).

[26] Claim Construction Order at 17-18.

[27] Memorandum Decision and Order Granting in part and Denying in part Dish's Motion for Summary Judgment ("Summary Judgment Order") at 10-11, docket no. 653, filed under seal Jan. 31, 2023.

[28] *Id.* at 13 (discussing, e.g., Trial Ex. 1 ('970 Patent) FIGs. 1-7); *see also* Trial Ex. 1 ('970 Patent) 4:49-52, 4:62-67, 11:63-12:10, FIGs. 3A-3C, FIGs. 4A-4B, FIGs. 5A-B.

[29] Summary Judgment Order at 11 (emphasis in original).

associated with multiple start and stop times."[30] That would erase the boundaries between navigation objects in a way that renders the claims' requirement of a "*plurality* of navigation objects" meaningless; taken to its logical end, this approach would mean that "a single navigation object would also be a plurality of navigation objects."[31] Because the Asserted Claims describe "each navigation object in the plurality [of navigation objects] as containing its own specific elements," several of ClearPlay's infringement theories that relied on the multi-object approach were dismissed on summary judgment.[32]

    4.      At trial, the jury was instructed consistent with the claim construction and summary judgment rulings: "In all claims, the start, stop, and filter elements that comprise the navigation object must be contained within the same object, file, or data structure."[33]

    5.      At the time of trial, the parties also disputed limitations other than "navigation objects" specific to each Asserted Claim. At issue for the '970 Patent were claims 28 and 33 (the "Disabling Claims"), which depend from independent claim 27:

> In a computerized system for enabling a consumer to filter multimedia content that is comprised of video content, audio content, or both, and wherein a consumer computer system includes a processor, a memory, a decoder, and an output device for playing the multimedia content, a method for assisting the consumer to identify portions of the multimedia content that are to be filtered and to thereafter filter the identified portions, the method comprising:
>
>> accessing a plurality of navigation objects, each defining a start position and a stop position and a specific filtering action to be performed on a portion of the multimedia content;

---

[30] *Id.* at 12 (citing ClearPlay's Appendix A Response to Additional Material Facts Alleged in Dish's Argument at 4, docket no. 454-1, filed under seal Aug. 25, 2022).

[31] *Id*. (emphasis in original).

[32] *Id.* at 11, 14-15.

[33] Jury Instructions at 42-43; *see also* Summary Judgment Order at 10-12.

*providing for disabling of one or more of the navigation objects such that the specific filtering action specified by the disabled navigation object is ignored*;

updating a position code in association with decoding the multimedia content on the consumer computer system;

comparing the position code with the navigation objects to determine whether the position code corresponding to the multimedia content falls within the start and stop position defined by one of the navigation objects;

activating the filtering action assigned to the corresponding navigation object in order to filter the portion of the multimedia content defined by the corresponding navigation object; and

*playing the multimedia content at the output device excluding the portion thereof which is filtered in accordance with the corresponding navigation object and ignoring the filtering action specified by any disabled navigation objects*.[34]

6.     At summary judgment, it was determined that it is "[c]lear from the ordinary and customary meaning and scope of the Disabling Claims, and supported by the specification's language, [] that some action must be taken to disable a navigation object so that its filtering action is ignored."[35] The specification supports that ordinary meaning when it states that navigation objects "marked as disabled" would not be part of the eventual "filtering process."[36] "[D]isabling AutoHop functionality as a whole is broader than the Disabling Claims' limitations for disabling navigation objects" and cannot "be reasonably viewed as satisfying the Disabling Claims' limitations."[37]

7.     At trial and consistent with earlier proceedings, the jury was instructed that:

"providing for disabling of one or more of the navigation objects such that the specific filtering action specified by the disabled

---

[34] Trial Ex. 1 ('970 Patent) 23:29-58 (emphasis added).

[35] Summary Judgment Order at 23-24 (citing Trial Ex. 1 ('970 Patent) 18:64-19:4); *see also* Trial Ex. 1 ('970 Patent) 23:41-43, FIG. 6.

[36] Summary Judgment Order at 23-24 (discussing and quoting '970 Patent 18:64-19:4).

[37] *Id*. at 24.

navigation object is ignored" means "providing for some action to be taken to disable a navigation object so that its filtering action is ignored." An action must directly *disable* a navigation object so that its filtering action is *ignored*, as opposed to disabling something other than the navigation object that results in the navigation object's filtering action being ignored.[38]

8.   Independent claim 12 of the '799 Patent (the "Configuration Identifier Claim")

requires:

In a computerized system for enabling a consumer to digitally filter multimedia content that is comprised of video content, audio content, or both, and wherein a consumer computer system includes a processor, a memory, a decoder, and an output device for playing the multimedia content, a method for assisting the consumer to automatically identify portions of the multimedia content that are to be filtered and to thereafter automatically filter the identified portions, the method comprising the acts of:

creating an object store which can be loaded into a memory of the consumer computer system, the object store including *a plurality of navigation objects, each of which defines a portion of the multimedia content that is to be filtered by defining a start position and a stop position and a specific filtering action to be performed on the portion of the multimedia content defined by the start and stop positions for that portion*;

decoding the multimedia content on the consumer computer system and as the multimedia content is output from a decoder of the consumer computer system, continuously updating a position code;

as the multimedia content is decoding, continuously monitoring the position code to determine whether the position code of the multimedia content falls is within the star and stop positions defined by one of the navigation objects;

when the position code is determined to fall within the star and stop positions defined by a particular navigation object, activating the filtering action assigned to the particular navigation object in

---

[38] Jury Instructions at 43. This language was not originally included in the draft jury instructions prepared by the court. However, it became clear the language was necessary based on ClearPlay's briefing on DISH's JMOL regarding the disabling limitations. The discussion of the disabling limitations and arguments made in ClearPlay's briefing were contrary to the law of the case regarding the ordinary and customary meaning and scope of the Disabling Claims as determined at summary judgment. *Compare* ClearPlay's Supplemental Briefing Regarding Disabling, *with* Summary Judgment Order at 23-24.

order to filter the portion of the multimedia content defined by the particular navigation object;

transferring the multimedia content to an output device, whereby the multimedia content is played at the output device excluding each portion thereof which is filtered in accordance with the plurality of navigation objects;

assigning a configuration identifier to the decoder;

comparing *the configuration identifier of the particular navigation object* with the configuration identifier of the decoder to determine if the particular navigation object applies to the decoder; and

determining that the particular navigation object applies to the decoder based on *the configuration identifier of the particular navigation object* matching the configuration identifier of the decoder.[39]

9.      At claim construction, the parties agreed that "configuration identifier" is properly construed as an "identifier of the consumer system (including hardware and software) that is used to determine if the navigation objects apply to the particular consumer system.[40]

10.     At summary judgment, the court explained that "the elements that a navigation object 'defines' or 'comprises' are contained within the same object, file, or data structure (that being the navigation object)" and that "claim 12 of the '799 Patent . . . require[s] the configuration identifier to be contained within the navigation object."[41]

11.     At trial and consistent with previous proceedings, the jury was instructed:

"configuration identifier" means "an identifier of the consumer system (including hardware and software) that is used to determine if the navigation objects apply to the particular consumer system." Claim 12 of the '799 Patent requires the configuration identifier to be contained within the navigation object.[42]

---

[39] Trial Ex. 4 ('799 Patent) 21:49-22:25 (emphasis added).

[40] Claim Construction Order at 12-13.

[41] Summary Judgment Order at 10, 20-22.

[42] Jury Instructions at 42-43; *see also* Summary Judgment Order at 21-22.

## III.   CLEARPLAY'S CASE-IN-CHIEF PRESENTATION OF EVIDENCE

12.     ClearPlay's expert on infringement, Dr. Nicholas Feamster, attempted to establish infringement by showing that DISH's accused products contain and use navigation objects for playback of recorded programs by "match[ing] the language in the claims to the implementation in the Dish source code."[43] Dr. Feamster testified "that to really understand if the software is meeting these claims, one has to read the code" and "match[] the language in the claims to the implementation in the Dish source code that satisfied these limitations specifically."[44] But to provide context to his understanding of the source code, Dr. Feamster also relied on the technical documents and testimony regarding the code and operation of AutoHop that were produced during the litigation and testimony elicited during ClearPlay's case-in-chief from DISH's software engineers, Dan Minnick and Mark Templeman.[45]

### A.      DISH's AutoHop Operation

13.     The AutoHop feature provides for skipping over commercials during playback of certain shows, where the shows were previously recorded with DISH's PrimeTime Anytime feature and playback by the user occurs one to seven days after the show initially aired.[46]

---

[43] Tr. (Feamster – Direct) 534:11-20 ("We're essentially looking at elements in the claim specific language we'll dive into here and then we will go and look at how the -- how the AutoHop system functions and works, both how it is described in the technical documentation as well as *what the source code is actually doing* and we'll match those up one to one.") (emphasis added), 703:2-5 ("I refer to them [the claim elements] specifically by the language in the claims, and then *I matched the language in the claims to the implementation in the Dish source code* that satisfied these limitations specifically.") (emphasis added).

[44] Tr. (Feamster – Redirect) 858:3-7; *see also* Tr. (Feamster – Direct) 530:24-531:1, 531:7-23, Tr. (Feamster – Cross) 702:23-703:10; Tr. (Feamster – Redirect) 828:3-4 ("asking [the jury] to trust my expert opinion because -- because I read the source code"). Dr. Feamster's testimony that the DISH source code—rather than technical documents, marketing materials, and internal communications—is the relevant evidence for his infringement analysis was consistent with his earlier declaration that the source code is "ultimately the focus of our inquiry." Declaration of Dr. Nick Feamster ¶¶ 15-16, docket no. 244-4, filed under seal Feb. 8, 2018.

[45] Tr. (Feamster – Direct) 530:18-531:6, 556:13-17, 602:2-603:21; Tr. (Feamster – Cross) 667:9-11, 707:5-7; Tr. (Feamster – Redirect) 854:14-16. ClearPlay presented no infringement evidence during its rebuttal case.

[46] Tr. (Minnick – Direct) 342:12-17; Tr. (Minnick – Cross) 432:24-433:16, 434:23-435:1; Trial Ex. 33 (Scrubs Architecture) EchoStar_CP0000336-338.

Specifically, AutoHop works with shows that the user has recorded with DISH's PrimeTime Anytime feature, which enables a user to set a single DVR timer to record all primetime shows on the four major broadcast networks (ABC, CBS, FOX and NBC).[47]

      14.     AutoHop is not automatically or always enabled.[48] When a user chooses to watch a show for which AutoHop is available, a message will pop-up asking whether the user would like to use AutoHop to skip commercials for this particular playback of the show.[49] The user can select either "Yes" or "No Thanks."[50]



*Figure 1[51]*

      15.     If the user does not select either option ["No Thanks" or "Yes"], the system will time out after a few minutes, and return to live TV.[52]

---

[47] *Id.*

[48] Tr. (Minnick – Cross) 432:24-433:16 (explaining that AutoHop only works on PrimeTime Anytime shows), 435:13-22 (explaining that PrimeTime Anytime has to be enabled by a user), 439:6-20 (explaining a user has to "select 'yes' to watch" a recorded show using AutoHop).

[49] Tr. (Minnick – Cross) 439:6-20 (explaining a user has to "select 'yes' to watch" a recorded show using AutoHop); Instruction Mar. 8, 2023, docket no. 924-1, filed Mar. 15, 2023.

[50] Instruction Mar. 8, 2023.

[51] Feamster Demonstratives Slide 11 (citing Trial Ex. 49 at DISH_CP0027663).

[52] Instruction Mar. 8, 2023.

16.     If a user presses "Yes" and thus chooses to use AutoHop for an AutoHop-enabled show, "the user can put the remote control down and watch the recorded show without the commercials."[53] At the end of each segment of a show, when a viewer would ordinarily see a commercial break, the recording will automatically skip ahead to the next segment of the show.[54]

17.     At a technical level, AutoHop works by way of a Show Metadata "announcement file" that is created at DISH's uplink facility in Cheyenne, Wyoming by a technician watching the show and using a tool to mark the beginning and end of show segments within each PrimeTime Anytime-eligible show.[55] Closed captioning and timing information for the show, for identifying the start and end positions of each show segment, are stored in the announcement file, which is then sent via satellite to the Hopper set-top boxes.

18.     The announcement file is used by AutoHop software on a Hopper set-top box, in conjunction with timing information in the particular PrimeTime Anytime show recording on the Hopper set-top box, to create a segment bookmark file.[56] Each segment bookmark file contains segment bookmarks that identify the start and end times of each show segment for that recording.[57] These segment bookmarks are used by the AutoHop software to play the show segments and (except for the first start time and the last end time) skip the portion of commercial breaks occurring between the identified end and start times of the show segments.[58]

---

[53] Tr. (Minnick – Direct) 345:7-11, 374:5-12, 378:24-379:4; Trial Ex. 49 (2012 Minnick Declaration) ¶¶ 60, 63.

[54] Tr. (Minnick – Direct) 343:12-24; Trial Ex. 49, ¶¶ 60, 63.

[55] Tr. (Minnick – Direct) 346:20-347:6, 347:16-21, 355:14-356:4, 361:21-365:10, 380:18-21; Tr. (Minnick – Cross) 425:10-427:9; Ex. 49 (2012 Minnick Declaration) ¶¶ 67-71, 74.

[56] Tr. (Minnick – Direct) 356:05-358:4, 394:3-395:2; Ex. 49 (2012 Minnick Declaration) ¶ 74; Tr. (Templeman – Deposition Tr.) 27:3-27:18.

[57] Tr. (Minnick – Direct) 362:3-8 (discussing Ex. 49 (2012 Minnick Declaration) ¶ 67), 369:5-10; Tr. (Minnick – Cross) 459:18-23; Tr. (Feamster – Direct) 560:22-561:10.

[58] *Id*.

19.     The AutoHop software, *i.e.*, the source "code that executes" on the Hoppers, is separate and distinct from the announcement files and the segment bookmark files.[59]

**B.     The '970 Patent**

20.     Dr. Feamster testified that he had two theories regarding how DISH's Hoppers disable navigation objects and practice the claimed methods:[60] (1) based on a user selecting "No Thanks" on the AutoHop pop-up message to turn off AutoHop for a particular show; or (2) by a user fast-forwarding or rewinding into a commercial segment for a show in which the AutoHop feature is enabled.[61]

        **1.     Trial evidence addressing the alleged navigation objects in DISH's segment bookmark files**

21.     ClearPlay accused segment bookmark pairs as the "navigation objects" of the '970 Patent.[62] Specifically, ClearPlay alleged that a pair of segment bookmarks within the segment bookmark file is a "navigation object," with the first bookmarks' segment end position time stamp ("PTS") serving as the claimed "start position," the second bookmarks' segment start PTS serving as the claimed "stop position," and the first bookmark's SEGMENT_END flag serving as the claimed "filtering action."[63]

---

[59] Tr. (Feamster – Recross) 864:16-865:5, 867:14-15.

[60] Tr. (Feamster – Cross) 811:17-18.

[61] Tr. (Feamster – Direct) 612:4-14; Tr. (Feamster – Cross) 812:4-16. ClearPlay also presented multi-viewing and multi-device theories that rely on the two theories discussed by Dr. Feamster. *See, e.g.*, Tr. (Feamster – Direct) 613:24-614:21 (multi-viewing and multi-device infringement theories); *see also* Tr. (Minnick – Redirect) 478:5-479:8; ClearPlay's Opposition at 3.

[62] Tr. (Feamster – Direct) 606:11-19.

[63] ClearPlay's Proposed Findings of Fact and Conclusions of Law ¶¶ 6-9, docket no. 912, filed under seal Mar. 10, 2023; Feamster Demonstrative Slide 49 (citing Trial Ex. 37); Feamster Demonstratives Slide 28 (citing Trial Ex. 395 at DISH-CP-SC00197, Trial Ex. 33 at EchoStar_CP0000338).

22.    As to both theories, ClearPlay and Dr. Feamster did not present evidence that the segment bookmarks themselves are directly disabled.[64] Instead, ClearPlay's case and Dr. Feamster's testimony was limited to argument and evidence that a user could "disable skipping" (or bypass or ignore segment bookmarks as opposed to disabling segment bookmarks) based on "check-in conditions" in the AutoHop software.[65]

### 2.    Trial evidence addressing the alleged disabling based on "No Thanks" on the AutoHop pop-up message

23.    ClearPlay first argued that DISH's accused products "provid[e] for disabling of one or more navigation objects" and then at playback "ignor[e] the filtering action specified by any disabled navigation objects"[66] because when a user presses "No Thanks" in response to the enable AutoHop pop up, no commercials are skipped.[67]

24.    Dr. Feamster testified that a variable called "████" (████████████ in Figure 2) in the AutoHop software controls whether AutoHop commercial skipping is enabled and relied on the "████" variable to meet the limitations in the Disabling Claims.[68]

25.    The "████" variable is stored in the ████████ data structure, as shown below in Figure 2.[69] The ████████ data structure is found only in the AutoHop software

---

[64] Tr. (Feamster – Direct) 578:10-579:13 (discussing Feamster Demonstratives Slide 26 showing AutoHop code that uses "a data structure" that "contains a lot of variables controlling the state of playback"), 613:13-614:21; *see also* Feamster Demonstratives Slide 11 (citing Trial Ex. 49 at DISH_CP00[00281]), Slide 28 (citing Trial Ex. 395 at DISH-CP-SC00197).

[65] Tr. (Feamster – Direct) 578:10-579:13 (discussing Feamster Demonstratives Slide 26 showing AutoHop code that uses "a data structure" that "contains a lot of variables controlling the state of playback"), 613:13-614:21; *see also* Feamster Demonstratives Slide 11 (citing Trial Ex. 49 at DISH_CP00[00281]), Slide 28 (citing Trial Ex. 395 at DISH-CP-SC00197).

[66] Trial Ex. 1 ('970 Patent) 23:42-43, 23:54-58.

[67] Tr. (Feamster – Direct) 613:14-23.

[68] Tr. (Feamster – Direct) 616:17-617:19 (discussing "████" variable setting to FALSE); Feamster Demonstratives Slide 57 (citing Trial Ex. 395 at DISH-CP-SC00236); Instruction Mar. 8, 2023.

[69] Tr. (Feamster – Direct) 578:23-579:13; Trial Ex. 395 at DISH-CP-SC00262-266.

and not in the segment bookmarks.[70] Dr. Feamster never offered any testimony or evidence that setting the "████" variable directly disabled any particular segment bookmark.



*Figure 2*[71]

26.     Dr. Feamster testified that a user choosing "No Thanks" at the pop-up message causes the AutoHop software to set the "████" variable to ████, which "disable[s] the skipping over the commercial breaks for the playback of that show."[72] He also testified that a user selecting "Yes" sets the "████" variable to ████, which "enabl[es AutoHop] skipping for that show."[73]

---

[70] Tr. (Feamster – Direct) 616:17-618:15 (discussing "████" variable setting to FALSE); Feamster Demonstratives Slide 57 (citing Trial Ex. 395 at DISH-CP-SC00236); *compare* Trial Ex. 395 at DISH-CP-SC00262-266 (showing the variables within the ████████ data structure stored in the AutoHop software), *with* Trial Ex. 395 at DISH-CP-SC00197 (showing the variables within the ████ data structure stored in the ████████); Tr. (Feamster – Direct) 578:23-579:13.

[71] Feamster Demonstratives Slide 57 (citing Trial Ex. 395 at DISH-CP-SC00236).

[72] *See* ClearPlay's Proposed Findings of Fact and Conclusions of Law ¶ 1 (citing Tr. (Feamster – Direct) 610:17-621:4), Tr. (Feamster – Direct) 541:7-541:23, 617:16-618:6; Instruction Mar. 8, 2023; *supra* Figure 1, Figure 2; *see also* Tr. (Minnick – Direct) 395:17-22 (discussing Trial Ex. 32-0002).

[73] Instruction Mar. 8, 2023; *see supra* Figure 1, Figure 2; *see also* Tr. (Minnick – Cross) 439:6-20 (the AutoHop pop-up message appears once when playing back a particular show); Tr. (Feamster – Direct) 578:23-579:13 (explaining the ████████ data structure "contains a lot of variables controlling the state of playback" for AutoHop); Ex. 395 at DISH-CP-SC00262-266 (showing the "████" variable is stored within the ████████

13

27.     Dr. Feamster testified that when AutoHop is turned off, the "pair of segment bookmarks" is ignored—as is every other pair of segment bookmarks.[74] Dr. Feamster testified that when AutoHop is turned off, all segment bookmarks and their identified filtering actions are not "activated" and therefore playback will not skip commercials.[75] Indeed, the parties do not dispute that, as Mr. Minnick testified, pressing "No Thanks" or "Yes" is an "all or none" approach.[76]

### 3.     Trial evidence addressing the alleged disabling based on fast-forward/rewind into commercials

28.     ClearPlay also offered a fast-forward/rewind theory to argue that DISH's products satisfy the Disabling Claims' requirements.[77]

29.     To argue that navigation objects are disabled by fast-forwarding or rewinding, Dr. Feamster relied on portions of the AutoHop software that bypass or ignore the standard AutoHop playback operation when a user "fast forwards over a segment end or, in other words, into a commercial break."[78] Specifically, Dr. Feamster testified that a variable called "███████████" (█████████████████ in Figure 3), which is located within the AutoHop software, controls whether "skipping would be disabled" and relied on the "████████" variable to address the limitations in the Disabling Claims.[79]

---

data structure); Tr. (Feamster – Direct) 616:17-618:15 (explaining, using Figure 2, that the ████████████████ when shown the AutoHop pop-up message, and that the "████" variable enables (or disables) AutoHop); Feamster Demonstratives Slide 57 (citing Trial Ex. 395 at DISH-CP-SC00236), Slide 55 (citing Trial Ex. 49 at EchoStar_CP0000281).

[74] Tr. (Feamster – Direct) 541:7-541:23, 616:17-618:15, 620:6-14.

[75] Tr. (Feamster – Recross) 838:10-23.

[76] Tr. (Minnick – Direct) 440:1-5; Tr. (Feamster – Direct) 541:7-541:23, 616:17-618:15.

[77] Trial Ex. 1 ('970 Patent) 23:42-43, 23:54-58.

[78] Tr. (Feamster – Direct) 612:7-11.

[79] Tr. (Feamster – Direct) 618:16-620:17; Trial Ex. 395 at DISH-CP-SC-00304. Note that the ████████ variable was transcribed as "████████." Tr. (Feamster) 619:10-11.

14



```
5808        /* should we send a auto skip msg */
5809        if((sendMsg == TRUE )          &&
5810           (scb->avPvrCtrl.scrub == TRUE) &&
5811           (bmType == temp_end_type )     &&
5812           (direction == PVR_MOVING_FORWARD) &&
5813        )
5814
```

*Figure 3*[80]

30.     The "████████" variable is stored in the ██████████ data structure, as shown in Figure 3 and, as noted above, the ████████ data structure is found only in the AutoHop software and not in the segment bookmarks.[81]

31.     As an indirect consequence of bypassing or ignoring the standard AutoHop playback operation when fast-forwarding or rewinding, the AutoHop software that uses a segment bookmark to skip a commercial, which would be run when the media is in standard playback mode, is ignored when the playback is fast forwarded or rewound into a commercial.[82]

32.     Dr. Feamster explained that ████████ in Figure 3 ████████████████ ██████████████████████████████████████████████████ ███████████████████████████████████████████ — and *not* in the segment bookmarks in the segment bookmark file.[83]

33.     Dr. Feamster never offered any testimony or evidence that setting the "████████" variable directly disabled any particular segment bookmark directly.[84] Dr. Feamster, at most, testified generally that "skipping would be disabled" rather than identifying any specific or direct action to disable the segment bookmark—the accused navigation object.

---

[80] Feamster Demonstratives Slide 59 (Ex. 395 at DISH-CP-SC00304).

[81] Tr. (Feamster – Direct) 578:23-579:13, 618:13-619:24; Trial Ex. 395 at DISH-CP-SC00262-266.

[82] Tr. (Feamster – Direct) 618:16-619:24; *see also* Feamster Demonstratives Slide 59 (Ex. 395 at DISH-CP-SC00304); ClearPlay's Proposed Findings of Fact and Conclusions of Law ¶ 2 (citing Tr. (Feamster – Direct) 610:17-621:4).

[83] Tr. (Feamster – Direct) 618:16-620:17; Trial Ex. 395 at DISH-CP-SC-00304.

[84] *Id.*

ClearPlay presented no evidence that any segment bookmark file, nor the accused navigation object elements within the segment bookmark file (including the start PTS, the end PTS, or the SEGMENT_END flag in the DISH segment bookmark files) was ever directly disabled after the segment bookmark file is created.

      **C.**    **The '799 Patent**

              **1.**    **Trial evidence addressing the alleged filtering action in DISH's announcement files**

      34.    ClearPlay identified only DISH's Show Metadata announcement files as containing navigation objects for claim 12 of the '799 Patent.[85]

      35.    Each announcement file includes only one package_type descriptor, which contains a value that identifies the type of announcement file.[86] For the Show Metadata announcement files, the package_type descriptor contains a value of 0x08.[87]

      36.    Dr. Feamster testified that the single 0x08 value "specifies" the "filtering action," within the literal meaning of that claim term, for each of the navigation objects contained within the Show Metadata announcement files, *i.e.*, that the single 0x08 value is a filtering action "shared" by the plurality of alleged navigation objects.[88]

---

[85] ClearPlay's Proposed Findings of Fact and Conclusions of Law ¶ 4 (citing Tr. (Feamster – Direct) 631:15-19); *see also* Tr. (Feamster – Direct) 652:16-25; Tr. (Feamster – Cross) 677:13-678:1; Summary Judgment Order at 2 ("Dish is entitled to summary judgment of noninfringement as a matter of law on ClearPlay's literal infringement theories for the Configuration Identifier Claims, except for the theories that rely on the announcement file as the alleged navigation object."), 22-23, 29.

[86] Trial Ex. 31 at DISH_CP0027627; Tr. (Feamster – Direct) 663:17-664:24; Tr. (Feamster – Cross) 803:10-23, 804:3-804:13, 804:16-805:3.

[87] Trial Ex. 31 at DISH_CP0027627; Tr. (Feamster – Direct) 663:17-664:24; Tr. (Feamster – Cross) 803:10-23, 804:3-804:13, 804:16-805:3.

[88] ClearPlay's Proposed Finding of Fact ¶ 16 (citing Tr. (Feamster – Direct) 649:7-13, 650:19-652:6); *see also* Tr. (Feamster – Direct) 646:24-9; Tr. (Feamster – Cross) 752:10-15, 802:22-25, 803:10-23, 804:3-805:3, 809:21-810:3. Dr. Feamster also initially testified that the "position" of the end offsets in the Show Metadata announcement file specifies a skip filtering action, but subsequently clarified any assertion that the offsets specify a skip filtering action by (1) admitting the end offset is only "used to generate the segment end bookmark" and "derive a start position" and (2) identifying only the "Show Metadata type field" as "specifying" the filtering action. Tr. (Feamster – Direct)

16

37.     Dr. Feamster also stated that if sharing the single 0x08 value between a plurality of purported navigation objects does not literally define a "filtering action" for each navigation object, as claim 12 requires, it is "not substantially different" from the court's construction requiring the filtering action, along with the start and stop positions, to "be contained within the same object, file, or data structure."[89]

38.     Dr. Feamster also testified that "repeating the 0x08 for every single navigation object in the file" would be an "inefficient and pretty bad way of writing the code."[90]

### 2.     Trial evidence addressing the alleged configuration identifier in DISH's announcement files

39.     ClearPlay identified the model_targeting descriptor contained in the Show Metadata announcement files as the alleged configuration identifier.[91]

40.     Each Show Metadata announcement file includes only one model_targeting descriptor.[92]

41.     Dr. Feamster testified that the single model_targeting_descriptor is the configuration identifier, within the literal meaning of that term, for each of the navigation objects contained within the Show Metadata announcement files, *i.e.*, that the single

---

632:9-633:14, 639:7-14; Tr. (Feamster – Cross) 751:22-752:4, 755:14-756:3, 795:24-796:8, 801:17-24; Feamster Demonstratives Slide 21.

[89] Tr. (Feamster – Direct) 649:7-13 ("It's not substantially different"), 650:20-22 (similar); Jury Instructions at 42-43.

[90] Tr. (Feamster – Direct) 651:3-652:6.

[91] ClearPlay's Proposed Findings of Fact and Conclusions of Law ¶ 14 (citing Tr. (Minnick – Direct) 339:18-22; Tr. (Minnick – Cross) 470:17-21; Trial Ex. 36-0001, -0002; Tr. (Feamster – Direct) 656:16-659:2; Trial Ex. 31-0025); *see also* Tr. (Feamster – Direct) 662:15-663:12; Feamster Demonstrative Slide 96 (citing Trial Ex. 36 at 1-2).

[92] Tr. (Feamster – Direct) 664:14-664:24 ("There's only one model targeting descriptor."); Tr (Feamster – Cross) 750:23-751:12.

model_targeting_descriptor is a configuration identifier "shared" by the plurality of alleged navigation objects.[93]

42.     Dr. Feamster also stated that if sharing the single model_targeting_descriptor between a plurality of purported navigation objects does not literally provide a "configuration identifier" for each navigation object, as claim 12 requires, it is not substantially different from a "configuration identifier to be contained within the navigation object."[94]

43.     However, Dr. Feamster also testified that (1) "it would be silly to check every pair of segment bookmarks" for the configuration identifier; (2) that doing so "would just be a ridiculous way to write your code"; and (3) that "it wouldn't make any sense at all to repeat that [configuration identifier] value multiple times throughout the announcement file."[95] Dr. Feamster further testified that "the better way to write [the code] is to check [configuration identifier] once" and that it "doesn't make as much sense, in the context of the implementation and the announcement file, to repeat a value that has the same value over and over and over again -- to repeat it throughout the file."[96]

## IV.     ANALYSIS OF THE EVIDENCE

ClearPlay presented evidence from DISH's technical documents, advertising, and internal communications consisting of descriptions of AutoHop and its functionality.[97] This evidence,

---

[93] ClearPlay's Proposed Findings of Fact and Conclusions of Law ¶ 17 (citing Tr. (Feamster – Direct) 663:15-665:4, 745:7-20); *see also* Tr. (Feamster – Cross) 750:22-751:12, 801:17-24, 802:22-25, 804:3-805:3 ("that single element applies to each and every one of the navigation objects in this file. It is the same value for all of them").

[94] ClearPlay's Proposed Findings of Fact and Conclusions of Law ¶ 17 (citing Tr. (Feamster – Direct) 663:15-665:4, 745:7-20); Jury Instructions at 43; *see also* Tr. (Feamster – Cross) 750:22-751:12.

[95] Tr. (Feamster – Direct) 663:15-664:24, 745:6-19.

[96] Tr. (Feamster – Direct) 663:15-664:24, 747:6-21.

[97] *See, e.g.*, Tr. (Feamster – Direct) 542:19-543:1 (discussing Trial Ex. 44), 583:21-586:24 (discussing Trial Ex. 33), 569:14-571:14 (discussing Trial Ex. 32), 592:1-594:2 (discussing Trial Ex. 40), 602:2-603:1 (discussing Trial Ex. 58), 603:24-606:19 (discussing Trial Ex. 37), 637:8-25 (discussing Tr. 163), 660:6-18, 662:15-663:12 (discussing Trial Ex. 97); Feamster Demonstratives Slide 12 (citing Trial Ex. 44), Slides 23, 27-28 (citing Trial Ex. 33),

while helpful and appealing to the jury in terms they understand, is legally insufficient to

establish the actual operation and functionality of DISH's accused products.[98] The relevant

evidence presented came from ClearPlay's expert, Dr. Feamster, who testified that DISH's

*source code*—rather than technical documents, marketing materials, and internal

communications which merely add context to the source code—is the dispositive relevant

evidence for his infringement analysis.[99]

Those descriptions of DISH's technology in this evidence are high-level ways of

discussing the results of AutoHop, *i.e.*, that commercials are skipped. There are only so many

ways of conveying the message that commercials are not played. This high-level evidence

---

Slides 24, 41 (citing Trial Ex. 32), Slide 29 (citing Trial Ex. 40), Slide 35 (citing Trial Ex. 58), Slides 42, 44-49 (citing Trial Ex. 37), Slides 54, 86, 89 (citing Trial Ex. 34), Slide 81 (citing Trial Ex. 163), Slide 98 (citing Trial Ex. 97).

[98] Other courts have recognized that software's operation is critical to infringement analysis. *See, e.g., Fantasy Sports Props, Inc. v. Sportsline.com, Inc.*, 287 F.3d 1108, 1119 (Fed. Cir. 2002) (remanding "the case for [the district court] to determine, using a direct infringement analysis, whether the *software* underlying that [accused] product supports" the claimed method) (emphasis added); *Uni-Sys., LLC v. U.S. Tennis Ass'n*, No. 17 CV 147 (KAM) (CLP), 2017 WL 4081904, at *6 (E.D.N.Y. Sept. 13, 2017) ("the source code is critical to an understanding of how defendants' system works") (citing Fed. R. Civ. P. 26(b)(1)); *cf. Hilgraeve Corp. v. McAfee Assocs.*, 70 F. Supp. 2d 738, 756 (E.D. Mich. 1999), *aff'd in part, vacated in part*, 224 F.3d 1349 (Fed. Cir. 2000) (finding, at summary judgment, that "marketing and promotional documents . . . do not disclose the accused product's source code" or "provide technical details about the accused product's operating steps" and therefore "do not give rise to the inference that the accused product infringes" the asserted patents because "the Court examines evidence concerning how the product *actually* operates.").

[99] Tr. (Feamster – Redirect) 858:3-7 ("The level of detail is such that to really understand if the software is meeting these claims, *one has to read the code*.") (emphasis added). Dr. Feamster also testified, for instance, that to assess infringement he "matched the language in the claims to the implementation in the Dish source code that satisfied these limitations specifically." Tr. (Feamster – Direct) 530:24-531:1; Tr. (Feamster – Cross) 702:23-703:10; *see* Declaration of Dr. Nick Feamster ¶¶ 15-16 ("Even a relatively good set of technical documents, of course, does not obviate the need to look at the code itself before preparing any sort of analysis or forming any opinions. … [T]he actual code may be different from what is described in the documentation … [and] *is ultimately the focus of our inquiry*.") (emphasis added). He further explained that he "rel[ied] on the code" because "the true judge of what a piece of software does is the code. We look at the code to figure out what it does and when it does it. . . . [Technical documentation] is often extremely helpful for providing context for what we think that code is supposed to be doing *but we don't know what it's actually doing unless we look at the code.*" Tr. (Feamster – Direct) 531:7-23 (emphasis added); *see also* Tr. (Feamster – Direct) 534:11-20; Tr. (Feamster – Cross) 703:2-5; Tr. (Feamster – Redirect) 828:3-4 ("asking [the jury] to trust my expert opinion because -- because I read the source code").

demonstrates the unremarkable and undisputed fact that AutoHop skips commercials.[100] The evidence of similar terms in advertising or internal management documents and communications does not demonstrate what AutoHop code is actually doing and thus whether DISH's accused products used ClearPlay's patented methods.[101]

ClearPlay's evidence demonstrating what DISH's accused products are actually doing came from Dr. Feamster's testimony and opinions about the AutoHop software, as well as the more technical testimony regarding the code and operation of AutoHop elicited during ClearPlay's case-in-chief from Dan Minnick, Vivek Khemka, and Mark Templeman.[102] The legal insufficiency of this evidence for establishing infringement is discussed below. Similar to the high-level discussions and illustrations mentioned above, the parties' arguments and presentation of evidence necessarily included discussions of end-user experiences and analogies to common experiences such as turning lights on and off in a house.[103] But none of these educational tools and techniques bear on the heart of the real issues.

The parties' evidence and arguments necessarily include some latitude to ensure that each party was able to try its case under its theories. Trial was the conclusive submission of the best

---

[100] Tr. (DISH Opening Statement) 52:10-19 ("Now, let me own something right up front. Dish, to every user that we offer it to, and to the networks that complain about it, *we skip commercials. We skip commercials*. But this is a method claim, ladies and gentlemen, and their particular method in doing it, which identifies the thing to be skipped, the thing to be edited, is different than identifying the thing to be played."); Tr. (Jarman – Cross) 201:25-202:2 (agreeing that he did not invent "all ways of skipping commercials"); Tr. (Minnick – Direct) 342:12-17 (agreeing "AutoHop is a commercial skipping feature"), 366:19-24 ("the software does the skip").

[101] *See supra* notes 98-99.

[102] *Supra* note 45 (citing Tr. (Feamster – Direct) 530:18-531:6, 556:13-17, 602:2-603:21; Tr. (Feamster – Cross) 667:9-11, 707:5-7; Tr. (Feamster – Redirect) 854:14-16); *see also supra* notes 46, 53-57; Tr. (Minnick – Direct) 342:12-17, 343:12-24, 345:7-11, 346:20-347:6, 347:16-21, 355:14-356:4, 356:05-358:4, 361:21-365:10, 362:3-8, 369:5-10, 374:5-12, 378:24-379:4, 380:18-21, 394:3-395:2; Tr. (Minnick – Cross) 425:10-427:9, 432:24-433:16, 434:23-435:1, 459:18-23; Trial Ex. 49 (2012 Minnick Declaration) ¶¶ 60, 63, 67-71, 74; Tr. (Templeman – Deposition Tr.) 27:3-27:18; Tr. (Feamster – Direct) 560:22-561:10. *See generally* Tr. (Minnick – Direct) 335:13-490:20; Tr. (Templeman – Video Deposition) 495:15-498:10; 504:1-3 (Vivek Khemka – Video Deposition).

[103] Tr. (DISH JMOL Oral Arguments) 1778:17-1779:19; *see also* Tr. (ClearPlay Opening Statement) 36:16-37:17 (comparing the "disabling" limitations to "modern thermometers"); Tr. (Minnick – Direct) 370:11-373:20 (discussing a traffic light analogy), 481:17-484:10 (discussing a boat analogy).

effort of each party, both for the jury as trier of fact and for the judge as legal arbiter. This latitude arising from the natural development of a trial and counsel's reticence to object and interrupt an adversary's flow allowed the jury to hear matters beyond the centrally relevant evidence.

Further, patent cases are necessarily complex, dealing with patent claims and technology outside the experience of the average person. In this case, the technical nature of the Asserted Patents and the wide distance between the actual claims and the common-sense operation of a video recording and playing device presented unusual challenges for a jury hearing the evidence and for a judge who was simultaneously analyzing the record for legal sufficiency. It is not surprising that ClearPlay's position in the case would broaden its patent claims beyond their scope. A patentee must exercise diligence in protecting and prosecuting claims. But this assertion of rights cannot be permitted to extend beyond the actual patent claims.

It is now certain that submission of the issues of infringement to the jury was improper. DISH's JMOL should have been granted at the end of ClearPlay's case-in-chief. The inability to intercede at an earlier time was due to the complexity of the case, its rapid development in trial, the need to continue with the jury once empaneled, and the benefit of having a complete transcribed record, including the complex technology of each party, developed in ClearPlay's case-in-chief. Now there is sufficient knowledge and a level of confidence necessary to make such a weighty decision.

### A.    Background on "providing for disabling" limitation

The jury instruction regarding the "providing for disabling" limitation is supported by the plain and ordinary meaning of the claim language itself, as was discussed and determined on

summary judgment.[104] As noted, claims 28 and 33 both depend from claim 27, which recites a method "for assisting the consumer to identify portions of the multimedia content that are to be filtered and to thereafter filter the identified portions."[105]

> 27. In a computerized system for enabling a consumer to filter multimedia content that is comprised of video content, audio content, or both … a method for assisting the consumer to identify portions of the multimedia content that are to be filtered and thereafter filter the identified portions, the method comprising:
>
>> accessing a plurality of navigation objects, each defining a start position and a stop position and a specific filtering action to be performed on a portion of the multimedia content;
>>
>> *providing for disabling of one or more of the navigation objects such that the specific filtering action specified by the disabled navigation object is ignored*;
>>
>> . . .
>>
>> activating the filtering action assigned to the corresponding navigation object in order to filter the portion of the multimedia content defined by the corresponding navigation object; and
>>
>> *playing the multimedia content at the output device excluding the portion thereof which is filtered in accordance with the corresponding navigation object and ignoring the filtering action specified by any disabled navigation objects.*[106]

The method begins when the computerized system accesses navigation objects, and it ends when the system plays multimedia content in accordance with the navigation objects. In between, the claim requires several intermediate steps.[107]

---

[104] Jury Instructions at 43; Summary Judgment Order at 23-24.

[105] Trial Ex. 1 ('970 Patent) Claim 27, 23:29-58 (emphasis added).

[106] *Id*.

[107] *Id*.; *see generally Limelight Networks, Inc v. Akamai Techs., Inc.*, 572 U.S. 915, 921 (2014) ("A method patent claims a number of steps; under this Court's case law, the patent is not infringed unless all the steps are carried out . . . [A] patentee's rights extend only to the claimed combination of elements, and no further.") (internal citations omitted); *see Mformation*, 764 F.3d at 1398-1400 (affirming JMOL of noninfringement based on "an order-of-steps requirement" in method claim created by "the claim language, as a matter of logic and grammar" (quotation marks omitted)); *see also, e.g.*, *Amgen Inc. v. Sandoz Inc.*, 923 F.3d 1023, 1028-29 (Fed. Cir. 2019), *reh'g granted, opinion modified on other grounds*, 776 Fed. App'x 707 (Fed. Cir. 2019) (where method claim "logically requires a series of steps . . . be performed in sequence," accused product that did not follow that sequence did not infringe as a matter of law).

The first such step is "providing for disabling of one or more of the navigation objects."[108] Disabling a navigation object is a way to ensure "that the specific filtering action specified by the disabled navigation object is ignored."[109] That ignoring, in turn, takes place at the final "playback" step, when the system "ignor[es] the filtering action specified by any disabled navigation objects."[110] "Disabling" and "ignoring" are two different actions that must be performed at two different steps. As the court explained at summary judgment, the specification "provides insight for how disabling a navigation object may occur" before "its filtering action is ignored."[111] The specification describes one way of disabling a navigation object by "including an indication within the navigation objects that they should not be part of the filtering process" during subsequent playback, such that they are "eliminated from being used in filtering multimedia content."[112] Though "a specification cannot create an additional limitation for the Disabling Claims," the specification makes clear that the plain meaning of the Disabling Claims require some action to disable a navigation object.[113]

Another intermediate step in claim 27's method is "activating the filtering action" for at least one "navigation object in order to filter the portion of the multimedia content defined by the corresponding navigation object."[114] That filtering also does not take place until the final playback step: The system "exclud[es] the portion thereof which is filtered in accordance with

---

[108] Trial Ex. 1 ('970 Patent) 23:41.

[109] Trial Ex. 1 ('970 Patent) 23:42-43.

[110] Trial Ex. 1 ('970 Patent) 23:56-58.

[111] Summary Judgment Order at 23-24.

[112] *Id.* (quoting Trial Ex. 1 ('970 Patent) 18:64-19:4).

[113] *Id.*

[114] Trial Ex. 1 ('970 Patent) 23:50-53.

the corresponding navigation object."[115] The plain and ordinary meaning requires (a) "activating the filtering action assigned to the corresponding navigation object in order to filter the portion of the multimedia content defined by the corresponding navigation object" and (b) "playing the multimedia content at the output excluding the portion thereof which is filtered in accordance with the corresponding navigation object" while also (c) "ignoring the filtering action specified by any disabled navigation objects" during playback.[116] In other words, when the system ultimately begins "playing the multimedia content," it must *both* apply the filtering action specified by at least one navigation object *and* ignore the filtering action specified by any "disabled navigation objects."

As explained in the summary judgment decision, it is "[c]lear from the ordinary and customary meaning" of the Disabling Claims that "some action must be taken" at the "disabling" step to "disable *a navigation object*" specifically.[117] And disabling the entire filtering system by "disabling AutoHop functionality as a whole is broader than the Disabling Claims' limitations for disabling navigation objects."[118]

**B.     ClearPlay failed to present legally sufficient evidence of "providing for disabling the alleged navigation object such that the filtering action of the disabled navigation object is ignored" as required by the Disabling Claims of the '970 Patent**

First, there is no evidence of direct infringement of the Asserted Claims of the '970 Patent, sometimes referred to as the "Disabling Claims." For the '970 Patent claims,

---

[115] Trial Ex. 1 ('970 Patent) 23:54-56.

[116] *Id*. at 23:50-58.

[117] Summary Judgment Order at 24.

[118] *Id*.

ClearPlay accused a pair of segment bookmarks as the navigation object.[119] The issue for judgment as a matter of law regarding the '970 Patent is not whether ClearPlay has presented legally sufficient evidence of a navigation object in DISH's accused products. ClearPlay has presented evidence that DISH's segment bookmarks contain the required elements of a navigation object for the '970 Patent: a start position (the "pts" code of the segment end bookmark); a stop position (the "pts" code of the segment start bookmark); and a filtering action, albeit an implied filtering action (the "type" flag of the segment end bookmark). Rather, the issue for judgment as a matter of law in the '970 Patent is whether ClearPlay presented legally sufficient evidence that DISH's accused products meet the "providing for disabling" element of claim 27 of the '970 Patent.[120] ClearPlay's evidence demonstrates that DISH's accused products do not literally infringe the claim element of "providing for disabling the alleged navigation object such that the filtering action of the disabled navigation object is ignored."

As explained above, the ordinary and customary meaning of this "providing for disabling" limitation requires providing for an action that "directly disable[s] a navigation object so that its filtering action is ignored, as opposed to disabling something other than navigation object that results in the navigation object's filtering action being ignored."[121] In other words, the

---

[119] *Supra* III.B.1, ¶ 21 (citing ClearPlay's Proposed Findings of Fact and Conclusions of Law ¶¶ 6-9; Feamster Demonstrative Slide 49 (citing Trial Ex. 37); Feamster Demonstratives Slide 28 (citing Trial Ex. 395 at DISH-CP-SC00197, Trial Ex. 33 at EchoStar_CP0000338)).

[120] DISH also argued its accused products do not contain the claimed "navigation objects," but judgment as a matter of law is not granted on that ground.

[121] Jury Instructions at 43. Contrary to ClearPlay's suggestion, ClearPlay's Supplemental Briefing Regarding Disabling at 9 n.30 (citing *Loggerhead Tools, LLC v. Sears Holding Corp.*, 328 F. Supp. 3d 885, 899 (N.D. Ill. 2018)) and ClearPlay's Response to Proposed Jury Instruction No. 31, docket no. 905, filed Mar. 8, 2023, it was made clear as early as summary judgment that "disabling" and "ignoring" are two different actions. *See* Summary Judgment Order at 24 ("Clear from the ordinary and customary meaning and scope of the Disabling Claims, and supported by the specification's language, is that some action must be taken to disable a navigation object so that its filtering action is ignored."). ClearPlay has been on notice since before trial that the "ordinary and customary meaning and scope of the Disabling Claims" requires both "disabling" and "ignoring," and the issuance of this express instruction during trial did not prejudice ClearPlay. *Cf. Pressure Prod. Med. Supplies, Inc. v. Greatbatch*

"action must directly disable" DISH's segment bookmarks rather than acting on or disabling something else that indirectly affects the segment bookmark or simply results in the segment bookmarks being ignored.[122] The plain meaning of the claims requires evidence that a segment bookmark, *itself*, must be disabled, and it must be disabled in such a way that its filtering action is ignored.[123] This construction is consistent with the disabling examples within the '970 Patent specification.[124] Although these specification examples are not limiting and do not define the actual requirements of the claim element, they are helpful to understanding the claim element.[125] Specifically, under the '970 Patent claims, terms, and language, the navigation object itself must be disabled such that its filtering action is ignored.

ClearPlay's statement in its supplemental briefing "that the claims never require that any navigation objects be disabled" is contrary to the requirements of this claim element.[126] And ClearPlay's statement in its supplemental briefing that the segment bookmarks "are directly disabled because the AutoHop software ignores the filtering action (skipping)" is the opposite of the requirements of this claim element.[127] The "providing for disabling" limitation is not *ignoring* a navigation object's filtering action so that the navigation object is disabled. It is

---

*Ltd.*, 599 F.3d 1308, 1315-16 (Fed. Cir. 2010) (concluding "that it was proper for the trial court to supplement" claim construction at trial). Additionally, while no claim constructions were revised after the close of ClearPlay's case-in-chief, the Federal Circuit recognizes that a district court may revisit claim construction, even during trial, "as its understanding of the technology evolves." *See, e.g., id.* at 1316; *Pfizer, Inc. v. Teva Pharm., USA, Inc.*, 429 F.3d 1364, 1377 (Fed. Cir. 2005).

[122] *See* Jury Instructions at 43.

[123] Summary Judgment Order at 24.

[124] Trial Ex. 1 ('970 Patent) 18:64-19:4, FIG. 6.

[125] *See, e.g., ScriptPro LLC v. Innovation Assocs., Inc.*, 833 F.3d 1336, 1339 (Fed. Cir. 2016) ("the specification does not limit the claimed invention").

[126] ClearPlay's Supplemental Briefing Regarding Disabling at 3.

[127] ClearPlay's Suppl. Brief at 16.

*disabling* a navigation object such that its filtering action is ignored.[128] Construing the providing for disabling element as ClearPlay argues would be contrary to the ordinary and customary meaning of the claim language and would greatly and unreasonably broaden the claimed invention. ClearPlay failed to present legally sufficient evidence from which a reasonable jury could determine that some action is taken on one or more of DISH's segment bookmarks (the alleged navigation objects) to disable them, as opposed to merely ignoring the entire segment bookmarks during playback conditions.[129] In fact, the evidence confirmed that no action is taken on the segment bookmarks under either of ClearPlay's two theories.

ClearPlay argued at trial that DISH's accused products perform the claimed disabling limitations in two different scenarios: (1) a "No Thanks" selection from the AutoHop pop-up message prior to playback, and (2) a fast-forwarding or rewinding into a commercial.[130] ClearPlay's own evidence establishes that DISH's accused products fail to directly disable the alleged navigation object, the segment bookmarks, as a matter of law.

### 1. The "No Thanks" pop-up message does not directly disable segment bookmarks

First, ClearPlay presented no evidence that selecting "No Thanks" provides for disabling segment bookmark pairs—the asserted "navigation objects"—rather than disabling AutoHop as a whole.[131] The undisputed evidence presented by ClearPlay demonstrates that AutoHop is

---

[128] Trial Ex. 1 ('970 Patent) 23:41-43.

[129] *See, e.g., supra* III.B.1, ¶ 22 (citing Tr. (Feamster – Direct) 578:10-579:13, 613:13-614:21; Trial Ex. 395 at DISH-CP-SC00197; Feamster Demonstratives Slide 11 (citing Trial Ex. 49 at DISH_CP00[00281])).

[130] *Supra* notes 60-61; *see also* Tr. (Feamster – Direct) 612:4-14; Tr. (Feamster – Cross) 811:17-18, 812:4-16. ClearPlay also presented multi-watch and a multi-viewing theories. However, these two theories fail for the same reasons. *Infra* note 142.

[131] *See supra* III.B.2, ¶ 26 (citing ClearPlay's Proposed Findings of Fact and Conclusions of Law ¶ 1 (citing Tr. (Feamster – Direct) 610:17-621:4), Tr. (Feamster – Direct) 541:7-541:23, 617:16-618:6; Instruction Mar. 8, 2023); *see also* Feamster Demonstratives Slide 11 (citing Trial Ex. 49 at DISH_CP0027663) (displaying "Yes" or "No Thanks" options).

enabled for playback of a selected recording only by a "Yes" selection from the pop-up message prior to playback.[132] If the user does not make a selection of "Yes" or "No Thanks" from the pop-up message, the system will time out after a few minutes, and return to live TV.[133] Dr. Feamster testified contrary to this at trial, but the parties agreed to the correct statement of the function of the AutoHop interface, and the jury was instructed to disregard any evidence or statements to the contrary.[134]

The undisputed evidence based on the parties' stipulation also demonstrates that when "No Thanks" is selected on the pop-up message prior to playback, AutoHop is not enabled for playback of the selected recording. This is outside the claim language that requires the navigation object to be disabled, as was pointed out at summary judgment.[135] Dr. Feamster testified that the "███" variable is set to ███ by a "No Thanks" selection.[136] But ClearPlay's evidence establishes that the "███" variable affects AutoHop as a whole—not the alleged navigation objects, *i.e.*, the segment bookmarks. Therefore, a "No Thanks" selection at the pop-up message does not disable the segment bookmarks for playback of the selected recording. Segment bookmarks are not disabled, but are rather bypassed or ignored because the whole of AutoHop is not enabled for the playback. ClearPlay and Dr. Feamster pointed to no code, command, or other process that would directly disable the segment bookmarks, as opposed to AutoHop as a whole, such as a command having some iteration or combination of the "███"

---

[132] *Supra* III.A, ¶ 14 (citing Tr. (Minnick – Cross) 432:24-16, 435:13-22, 439:6-20).

[133] Instruction Mar. 8, 2023.

[134] *Id*.

[135] Summary Judgment Order at 23-24.

[136] *See supra* III.B.2, ¶ 26 (citing Dkt. 912 (ClearPlay's Proposed Findings of Fact and Conclusions of Law ¶ 1; Tr. (Feamster – Direct) 541:7-541:23, 616:17-618:15; Instruction Mar. 8, 2023; *supra* Figure 1, Figure 2; Tr. (Minnick – Direct) 395:17-22 (discussing Trial Ex. 32-0002)).

variable leading to disabling of a segment bookmark such as the SEGMENT_END flag being set to ████.[137] There is no such evidence.

A user may rewatch the same media, or other media that may have AutoHop functionality, or may view media on a different output device, all of which are unaffected by the "No Thanks" selection for a selected recording playback.[138] But this does not mean that a "No Thanks" selection is directly disabling segment bookmarks. The "No Thanks" selection only causes AutoHop as a whole for the selected playback session to not be enabled. There is no action directly disabling the segment bookmarks. There is only an action to not enable AutoHop—*not* to disable the segment bookmarks—that indirectly affects the use made, or not made, of segment bookmarks.[139]

Second, a "No Thanks" selection does not meet the claim element of "playing the multimedia content at the output device excluding the portion thereof which is filtered in accordance with the corresponding navigation object and ignoring the filtering action specified

---

[137] *See supra* III.B.1, ¶ 22 (citing Tr. (Feamster – Direct) 578:10-579:13 (discussing Feamster Demonstratives Slide 26 showing AutoHop code that uses "a data structure" that "contains a lot of variables controlling the state of playback"), 613:13-614:21; *see also* Feamster Demonstratives Slide 11 (citing Trial Ex. 49 at DISH_CP00[00281]), Slide 28 (citing Trial Ex. 395 at DISH-CP-SC00197), ¶ 24 (citing Tr. (Feamster – Direct) 616:17-617:19 (discussing "████" variable setting to FALSE); Feamster Demonstratives Slide 57 (citing Trial Ex. 395 at DISH-CP-SC00236)), ¶ 25 (citing Tr. (Feamster – Direct) 616:17-618:15 (discussing "████" variable setting to FALSE); Feamster Demonstratives Slide 57 (citing Trial Ex. 395 at DISH-CP-SC00236); *compare* Trial Ex. 395 at DISH-CP-SC00262-266 (showing the variables within the ████████ data structure stored in the AutoHop software), *with* Trial Ex. 395 at DISH-CP-SC00197 (showing the variables within the ████ data structure stored in the ████████); Tr. (Feamster – Direct) 578:23-579:13); *supra* IV.B.2, ¶ 29(citing Tr. (Feamster – Direct) 619:19-620:17; Trial Ex. 395 at DISH-CP-SC-00304), ¶ 30 (citing Tr. (Feamster – Direct) 578:23-579:13, 618:13-619:24; Trial Ex. 395 at DISH-CP-SC00262-266).

[138] *Supra* note 61 (citing Tr. (Feamster – Direct) 613:24-614:21 (discussing ClearPlay's multi-viewing and multi-device infringement theories); *see also* Tr. (Minnick – Redirect) 478:5-479:8; ClearPlay's Opposition at 3).

[139] *Supra* III.B.1, ¶ 22 (citing Tr. (Feamster – Direct) 578:10-579:13 (discussing Feamster Demonstratives Slide 26 showing AutoHop code that uses "a data structure" that "contains a lot of variables controlling the state of playback"), 613:13-614:21; *see also* Feamster Demonstratives Slide 11 (citing Trial Ex. 49 at DISH_CP00[00281]), Slide 28 (citing Trial Ex. 395 at DISH-CP-SC00197)).

by any disabled navigation objects."[140] DISH's system does not support both playing and ignoring, as required by the Disabling Claims.

The "No Thanks" AutoHop selection is binary, because the whole of AutoHop is thereby not enabled for the selected media playback.[141] Either all navigation object segment bookmarks are ignored or bypassed if "No Thanks" is selected or, if "Yes" is selected, all the alleged navigation objects are observed and implemented. There is no evidence that, during playback, DISH's accused products are both *filtering* some media designated by navigation objects and *ignoring* the alleged filtering action specified by any allegedly disabled navigation objects when a user selects "No Thanks." DISH's system and accused products do not support both (a) excluding some media due to a navigation object's filtering action and (b) ignoring other disabled navigation objects' filtering actions, as required by claim 27. Therefore, this infringement theory for the Disabling Claims fails.[142]

> ### 2. Fast-forwarding or rewinding into commercials does not disable segment bookmarks

Regarding the "fast-forwarding or rewinding into a commercial" theory, ClearPlay's evidence again demonstrates that no action is taken to directly disable the alleged navigation object, *i.e.*, a pair of segment bookmarks. Fast-forwarding or rewinding into a commercial

---

[140] Trial Ex. 1 ('970 Patent) Claim 27, 23:54-58.

[141] *Supra* III.B.2, ¶ 27 (citing Tr. (Minnick – Direct) 440:1-5; Tr. (Feamster – Direct) 541:7-541:23, 616:17-618:15.).

[142] ClearPlay and Dr. Feamster proposed other versions of this infringement argument, all of which fail for the same reasons described above. For instance, Dr. Feamster testified that "another user in the house [may be] watching the same show" at a different time, Tr. (Feamster – Direct) 614:7-8, which ClearPlay has argued satisfies every step of the claimed method, ClearPlay's Supplemental Briefing Regarding Disabling at 6. But in such circumstances, there is still no direct disabling of the accused navigation objects—the segment bookmarks—and such circumstances cannot satisfy the Disabling Claims' limitation requiring "playing the multimedia content at the output device excluding the portion thereof which is filtered in accordance with the corresponding navigation object and ignoring the filtering action specified by any disabled navigation objects." Likewise, ClearPlay has argued that the capability of DISH's products to either turn on automatic skipping with AutoHop or leave it off demonstrates infringement, ClearPlay's Opposition at 3, but this argument fails for the same reasons.

bypasses or ignores segment bookmarks, but this does not meet the claim language requiring disabling a navigation object such that the disabled navigation object's filtering action is ignored.[143] Simply ignoring or bypassing a navigation object is different than disabling the navigation object such that the disabled navigation object's filtering action is ignored.

As described by Dr. Feamster, when a user fast-forwards or rewinds media during playback, the AutoHop software changes the playback state variable in the software, called the "███████," which would otherwise be set to "███████████," as shown in the following excerpt of AutoHop software in Figure 3.[144]

```
5808        /* should we send a auto skip msg */
5809        if((sendMsg == TRUE )          &&
5810            (scb->avPvrCtrl.scrub == TRUE) &&
5811            (bmType == temp_end_type )     &&
5812            (direction == PVR_MOVING_FORWARD) &&
5813        ███████████████████████████████████
5814        )
```

*Figure 3*[145]

When a user presses a fast forward or rewind button, however, the playback will not be in standard playback mode.[146] As an indirect consequence of not being in standard playback mode, the AutoHop software that uses a segment bookmark for skipping, which would be run when the media is in standard playback mode (*i.e.*, when the "███████" variable holds a value of

---

[143] Trial Ex. 1 ('970 Patent) 23:41-43.

[144] Tr. (Feamster – Direct) 618:16-619:24 ("the playback state variable indicates is that the set-top box is in play mode. In other words, not fast forwarding and not rewinding.") To determine whether standard AutoHop commercial skipping is enabled, the AutoHop software checks the "███████████████████████ ███████████████████ in Figure 3 to see whether the show is in "███████████." Tr. (Feamster – Direct) 619:10-619:14; *see also* Tr. (Feamster – Direct) 578:23-579:13, 616:17-618:15; Feamster Demonstratives Slide 57 (citing Trial Ex. 395 at DISH-CP-SC00236); Trial Ex. 395 at DISH-CP-SC00262-266. When that variable is set to ███████████, as in Figure 3 above, and the other conditions are also satisfied, AutoHop skips commercials.

[145] Feamster Demonstratives Slide 59 (Ex. 395 at DISH-CP-SC00304).

[146] *Supra* III.B.3, ¶ 31 (citing Tr. (Feamster – Direct) 618:16-619:24 (explaining that the ███████████ ███████████████████, and instead "this variable would take on a different value," and "skipping would be disabled.")); *see also* Tr. (Feamster – Direct) 620:6-14; Ex. 395 at DISH-CP-SC-00304.

██████████████ ), is ignored when the playback is fast-forwarded or rewound into a commercial.[147]

There is no evidence that pressing the fast-forward or rewind button directly disables a segment bookmark. The AutoHop software checks whether "the set-top box is in play mode" by looking at a variable stored in the AutoHop software—and *not* looking in the segment bookmarks within the segment bookmark file.[148] In other words, the AutoHop software merely verifies the set-top box mode—whether "it's playing" and is "not fast forwarding and not rewinding" based on a variable in the AutoHop software.[149] And Dr. Feamster agreed that the AutoHop software, *i.e.*, the source "code that executes" on the Hoppers, is separate and distinct from the announcement files and the segment bookmark files.[150] Critically, no change is made to disable the segment bookmarks, nor does Dr. Feamster identify anything other than ignoring the skip action that would have resulted. Indeed, as Mr. Minnick demonstrated, the AutoHop software used certain segment bookmarks during normal playback to AutoHop over a commercial,[151] the same segment bookmarks were ignored as he put playback into rewind, resumed play, and "when it hit the break, it did the AutoHop again."[152] This evidences that the segment bookmark has not changed or been disabled at all.

ClearPlay and Dr. Feamster pointed to no code or other process that disables *a segment bookmark* (the accused navigation object) itself as required by the "providing for disabling"

---

[147] *Supra* III.B.3, ¶ 31 (citing Tr. (Feamster – Direct) 618:16-619:24; Feamster Demonstratives Slide 59 (Ex. 395 at DISH-CP-SC00304); Dkt. 912 (ClearPlay's Proposed Findings of Fact and Conclusions of Law ¶ 2 (citing Tr. (Feamster – Direct) 610:17-621:4).

[148] *Supra* III.B.3, ¶ 32 (citing Tr. (Feamster – Direct) 618:16-620:17; Trial Ex. 395 at DISH-CP-SC-00304).

[149] Tr. (Feamster – Direct) 619:13-14.

[150] *Supra* III.A, ¶ 19 (citing (Feamster – Recross) 864:16-865:5).

[151] Tr. (Minnick – Cross) 443:16-19 ("you can see it just did an AutoHop").

[152] Tr. (Minnick – Cross) 443:20-443:23.

limitation.[153] ClearPlay and Dr. Feamster pointed only to code that bypasses or ignores the standard playback software, which thereby indirectly affects the use made of segment bookmarks when the media is fast-forwarded or rewound into a commercial.[154]

Therefore, ClearPlay failed to present legally sufficient evidence that DISH's accused products literally infringed the '970 Patent. Further, no evidence was offered of a doctrine of equivalents infringement theory for the asserted claims of the '970 Patent.[155]

### C.      ClearPlay failed to present legally sufficient evidence of the "plurality of navigation objects" required by claim 12 of the '799 Patent

Regarding the '799 Patent, ClearPlay presented legally insufficient evidence of literal infringement of claim 12 of the '799 Patent, which was often referred to as the "Configuration Identifier Patent."[156] The issue for judgment as a matter of law regarding literal infringement of claim 12 of the '799 Patent is whether ClearPlay presented sufficient evidence of a navigation object.[157]

---

[153] Trial Ex. 1 ('970 Patent) 18:64-19:4; Tr. (Feamster – Direct) 615:7-620:14; *see also* Dish's Suppl. Brief at 8-10; *see supra* III.B.2, ¶ 27 (citing Tr. (Feamster – Direct) 620:6-14; Tr. (Feamster – Recross) 838:10-23.

[154] *Supra* III.B.3, ¶¶ 29-32 (citing Tr. (Feamster – Direct) 578:23-579:13, 618:16-620:17; Trial Ex. 395 at DISH-CP-SC00262-266, -00304).

[155] Tr. (Williams) 1529:23-1530:2; *compare also* Lodged Documents at 26-28, docket no. 909, filed March 10, 2023, *with id.* at 32-34 (showing ClearPlay dropped assertions of infringement of the Disabling Claims under the doctrine of equivalents).

[156] *See supra* III.C, ¶ 37 (citing Tr. (Feamster – Direct) 649:7-13 ("It's not substantially different"), 650:20-22 (similar); Jury Instructions at 42-43), ¶ 41 (citing ClearPlay's Proposed Findings of Fact and Conclusions of Law ¶ 17 (citing Tr. (Feamster – Direct) 663:15-665:4, 745:7-20); *see also* Tr. (Feamster – Cross) 750:22-751:12, 801:17-24, 802:22-25, 804:3-805:3 ("that single element applies to each and every one of the navigation objects in this file. It is the same value for all of them")).

[157] DISH also argued its accused products do not contain the claimed "configuration identifier," which this court construed as "an identifier of the consumer system (including hardware and software) that is used to determine if the navigation objects apply to the particular consumer system." But judgment as a matter of law is not granted on that ground.

Under the court's claim construction, claim 12 of the '799 Patent requires that *each* navigation object must contain a start position, stop position, filtering action, and configuration identifier, as explained at length at summary judgment and in the jury instructions.[158]

### 1.    DISH's single-object "comparison" argument does not compel judgment as a matter of law

DISH argued that ClearPlay was presenting a multi-object "derived theory" that the segment bookmarks, derived from the announcement file, are used to determine whether the position code is at a start and stop position defined by an accused navigation object in the announcement file. DISH argued this violates the single-object construction by reading into claim 12 of the '799 Patent a limitation that requires comparison of the position code to the navigation object. Because the announcement file does not exist at the time of playback, it is DISH's position that the limitation cannot occur in the DISH system. However, DISH's reading and the comparison limitation is not consistent with the claim language of claim 12 of the '799 Patent. Unlike the claim language of other ClearPlay patents, such as claim 16 of the '970 Patent, claim 12 of the '799 Patent does not require the navigation objects to exist at the time of

---

[158] Summary Judgment Order at 10-15 ("It is clear from the Asserted Patents' language, as properly construed and consistent with this court's claim construction, that the single-object approach to navigation object is the only reasonable approach to navigation object. The multi-object approach is precluded by this court's claim construction and the ordinary and customary meaning of the Asserted Patents."), 21-23 ("The Configuration Identifier Claims require that the alleged configuration identifier must be contained within the alleged navigation object."); Jury Instructions at 42-43; *see also*, *e.g.*, Trial Ex. 4 ('799 Patent) FIGs. 3A-3C, 4A, 5A; Tr. (Jarman – Cross) 281:10-13 ("the navigation object includes the configuration identifier"); Tr. (Feamster – Cross) 744:24-745:5 (agreeing that claim 12 of the '799 Patent requires "that the navigation object not only contains start, stop, and filtering action, but also a configuration identifier"). Dr. Feamster disagreed with this court's construction for "navigation object" and asserted that each navigation object need not contain its own filtering action or its own configuration identifier. *Compare* Tr. (Feamster – Cross) 692:16-20 (emphasis added) *with* Jury Instructions at 42-43; Tr. (Feamster – Cross) 677:13-678:1.

monitoring or comparison of the stop and start positions with the running position code. This non-issue is therefore ignored as contrary to the patent language.[159]

### 2. DISH's announcement file cannot satisfy the "plurality of navigation objects" limitations in claim 12 of the '799 Patent

Judgment as a matter of law is granted on claim 12 of the '799 Patent because ClearPlay's infringement theories require the alleged plurality of navigation objects to share a single filtering action and a single configuration identifier.[160] This violates the single-object approach required by the court's claim construction.[161]

The evidence ClearPlay presented establishes that the announcement file,[162] which under ClearPlay's theory serves as (1) the object store; (2) the plurality of navigation objects; and (3) each particular navigation object, does not read on claim 12 of the '799 Patent. Dr. Feamster's testimony and opinions regarding the announcement file theory pointed to an alleged filtering action (DISH's Show Metadata element), and an alleged configuration identifier (DISH's model_targeting descriptor).[163] Dr. Feamster expressly acknowledged that these two

---

[159] DISH also argued that the announcement file is deleted before playback so that its accused filtering action—the 0x08 Show Metadata announcement file type—no longer exists and cannot satisfy the "*activating the filtering action assigned to the corresponding navigation object*" in order to filter the portion of the multimedia content defined by the corresponding navigation object". But judgment as a matter of law is not granted on that ground.

[160] *Supra* III.C.1, ¶ 35, III.C.2, ¶¶ 40-41; *see also* Trial Ex. 31 at DISH_CP0027627; Tr. (Feamster – Direct) 663:17-664:24; Tr. (Feamster – Cross) 803:10-23, 804:3-804:13, 804:16-805:3.

[161] *Supra* II, ¶ 2 (citing Claim Construction Order at 17-18), ¶ 3 (citing Summary Judgment Order at 10-14); Jury Instructions at 42-43.

[162] *Supra* III.C.1, ¶ 34 (citing ClearPlay's Proposed Findings of Fact and Conclusions of Law ¶ 4; Tr. (Feamster – Direct) 652:16-25; Tr. (Feamster – Cross) 677:13-678:1; Summary Judgment Order at 2, 22-23, 29).

[163] *Supra* III.C.1, ¶ 36 (citing ClearPlay's Proposed Findings of Fact and Conclusions of Law ¶ 16 (citing Tr. (Feamster – Direct) 649:7-13, 650:19-652:6); Tr. (Feamster – Direct) 646:24-9; Tr. (Feamster – Cross) 752:10-15, 802:22-25, 803:10-23, 804:3-805:3, 809:21-810:3), III.C.2, ¶ 39 (citing ClearPlay's Proposed Findings of Fact and Conclusions of Law ¶ 14 (citing Tr. (Minnick – Direct) 339:18-22; Tr. (Minnick – Cross) 470:17-21; Trial Ex. 36-0001, -0002; Tr. (Feamster – Direct) 656:16-659:2; Trial Ex. 31-0025); *see also* Tr. (Feamster – Direct) 662:15-663:12; Feamster Demonstrative Slide 96 (citing Trial Ex. 36 at 1-2). Dr. Feamster (1) admitted the end offset is only "used to generate the segment end bookmark" and "derive a start position" and (2) identified only the "Show Metadata type field" as "specifying" the filtering action. Tr. (Feamster – Direct) 632:9-633:14, 639:7-14; Tr. (Feamster – Cross) 750:22-751:3, 755:14-756:3, 795:24-796:8, 801:17-24; Feamster Demonstratives Slide 21.

elements are not contained in each particular navigation object in DISH's accused products.[164] And this shared filtering action and shared configuration identifier theory is espoused in ClearPlay's proposed findings of fact and conclusions of law regarding DISH's JMOL.[165]

ClearPlay's evidence demonstrates that the alleged navigation object—DISH's announcement file—contains a plurality of alleged navigation objects only if each alleged navigation object shares the single alleged filtering action and the single alleged configuration identifier. This is contrary to the claim construction that each particular navigation object must define its own start position, stop position, and filtering action, and contain its own configuration identifier.[166] The parties agreed and the court construed navigation object as "plain and ordinary meaning (as defined by the terms of the claims themselves)."[167] In the context of the Asserted Patents, an object "is not an abstract and it is singular. It is not a formless assigning or specifying of associated or linked information from multiple sources. It is a structured object. It is an object that defines (assigns or specifies) [] specific elements used to filter portions of multimedia content during playback. These elements must be contained within the navigation object. Otherwise, the navigation object ceases to be *an object*."[168]

---

[164] Tr. (Feamster – Direct) 648:2-9, 650:19-652:6; Tr. (Feamster – Cross) 803:17-804:13; *see also* ClearPlay's Suppl. Brief ¶¶ 60, 65-72.

[165] ClearPlay's Opposition at 13; ClearPlay's Proposed Findings of Fact and Conclusions of Law ¶¶ 16-17; ClearPlay's Suppl. Brief at 25, 31-32 ("the ⬛⬛⬛⬛⬛⬛ announcement file type specifies to skip and is shared among all the navigation objects in that announcement file. . . . Similarly, the "configuration identifier" limitation only appears once in the announcement files as part of the model_targeting_descriptor – however, it applies equally to and is shared by each of the navigation objects within the same file and therefore satisfies the single object, file, or data structure construction.").

[166] Jury Instructions at 42-43; *see also, e.g.*, Summary Judgment Order at 12 ("The plurality of navigation objects limitation has no meaningful purpose in the Asserted Patents if a navigation object does not contain all its elements.").

[167] Claim Construction Order at 5, 18.

[168] Summary Judgment Order at 11-12 (emphasis in original).

"The plurality of navigation objects limitation has no meaningful purpose in the Asserted

Patents if a navigation object does not contain all its elements. If a navigation object only assigns

or specifies elements from various sources [] to filter multimedia content, a single navigation

object would also be a plurality of navigation objects,"[169] which is precisely ClearPlay's theory

regarding the announcement file.[170] The "elements that a navigation object 'defines' [] are

contained within the same object, file, or data structure (that being the navigation object)."[171]

Therefore, as the jury was instructed, in all the Asserted Claims, the start, stop, and filter

elements that comprise the navigation object must be contained within the same object, file, or

data structure.[172]

For claim 12 of the '799 Patent, the configuration identifier element must be contained

within the navigation object.[173] "Claim 12 of the '799 Patent . . . do[es] not expressly identify

what is 'assigning' a configuration identifier to the decoder. However, the language identifies

'the configuration identifier of the particular navigation object.' The term 'of' has an ordinary

and customary meaning that expresses a relationship between a *part* and a *whole*. For claim 12 of

the '799 Patent . . ., the *part* is a configuration identifier and the *whole* is the navigation object.

Therefore, claim 12 of the '799 Patent . . . require[s] the configuration identifier to be contained

within [each particular] navigation object."[174] ClearPlay's theory, in contrast, pointed to an

---

[169] Summary Judgment Order at 12.

[170] *See, e.g.*, ClearPlay's Opposition at 13; ClearPlay's Suppl. Brief ¶¶ 60, 65-72.

[171] Summary Judgment Order at 10.

[172] Jury Instructions at 42-43; *see also* Summary Judgment Order at 11.

[173] Jury Instructions at 43; Summary Judgment Order at 22; *see also* Trial Ex. 1 ('970 Patent) 11:63-12:10, 12:30-32 and 13:3-6 (discussing the contents of a navigation object including configuration identifier 329c), 14:22-36 (discussing retrieving "the next navigation object" if a configuration identifier does not match), FIGs. 3A-3C, 14:37-43 (discussing FIG. 4A), 5A.

[174] Summary Judgment Order at 21-22. That is also consistent with the specification. *See* Trial Ex. 4 ('799 Patent) 14:50-51, 12:6-16, FIGS. 3A, 3B, 3C.

alleged configuration identifier shared by multiple navigation objects and not contained within any of them.

Therefore, ClearPlay failed to present legally sufficient evidence that DISH's accused products literally infringe claim 12 of the '799 Patent.

### D. ClearPlay failed to present legally sufficient evidence of the "plurality of navigation objects" required by Claim 12 of the '799 Patent under the doctrine of equivalents

ClearPlay also failed to present evidence of the alternative theory of infringement under the doctrine of equivalents for claim 12 of the '799 Patent.

#### 1. Dr. Feamster did not offer particularized testimony under either of the function-way-result or the insubstantial difference tests

Infringement of claim 12 of the '799 Patent under the doctrine of equivalents turns first on whether Dr. Feamster offered "particularized testimony and linking argument" for each prong of the function-way-result test, or the insubstantial difference test,[175] for the navigation objects' shared configuration identifier and filtering action limitations. He failed to do so. The following excerpts are key to understanding the inadequacy of Dr. Feamster's testimony:

> Q:   I'm going to ask you some questions about the 0x08 announcement file that relates to this issue of -- it's called doctrine of equivalents. So bear with me. You believe that -- if the jury were to find that there is not literal infringement as it relates to the 0x08 file type being shared or assigned to each of the set of

---

[175] *See, e.g.*, *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*, 493 F.3d 1368, 1377 (Fed. Cir. 2007); *Lear Siegler, Inc. v. Sealy Mattress Co. of Mich., Inc.*, 873 F.2d 1422, 1425-26 (Fed. Cir. 1989); *see also Augme Techs., Inc. v. Yahoo! Inc.*, 755 F.3d 1326, 1336 (Fed. Cir. 2014) ("To survive summary judgment of noninfringement under the doctrine of equivalents, Augme had to present evidence of equivalence under each prong of the function-way-result test.") (citing *Perkin–Elmer Corp. v. Westinghouse Elec. Corp.*, 822 F.2d 1528, 1532 n.6 (Fed. Cir. 1987)); *Tex. Instruments Inc. v. Cypress Semiconductor Corp.*, 90 F.3d 1558, 1567 (Fed. Cir. 1996) (patentee must provide "particularized testimony and linking arguments as to the 'insubstantiality of the differences' between the claimed invention and the accused device or process . . . on a limitation-by-limitation basis."). "To find infringement under the doctrine of equivalents, any differences between the claimed invention and the accused product must be insubstantial." *VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1322 (Fed. Cir. 2014) (citing *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 608 (1950)). For the function-way-result test, courts consider whether the accused product or process performs substantially the same function, in substantially the same way, to achieve substantially the same result as each element of each asserted claim. *Id.* For the insubstantial differences test, courts look at whether the differences between the accused product and the claimed invention are insubstantial. *Id.*

38

start and stop positions, then do you have an opinion whether this arrangement is substantially different from the navigation object limitation of the '799 Patent?

A:    It's not substantially different.[176]

Q:    You've described for us how the -- well, let's move on. Can you tell me whether the 0x08 designation is -- whether it's substantially similar or not?

A:    I would say that it is not substantially different. I'd be happy to explain a little bit more about why I think it achieves the same function in substantially the same way, to achieve basically the same results.[177]

Q:    I'm struggling getting the right question out so I appreciate that.

A:    Remember, we talked about the object store, the object store containing a plurality of navigation objects. And plurality meaning more than one. And remember that the navigation object in this case has to have a start position, a stop position, and a filtering action. So I think that the question at issue about literal versus the doctrine of equivalents is whether -- there's only one 0x08 type on the file. Right? The 0x08 shows up once, but hang on, the file has -- it's supposed to have a plurality of these navigation objects. So the question I think being asked is, well, it only shows up once. There's only one -- you've said 0x08 is a filtering action, but it's only there once, so how could we have a plurality of navigation objects? So I think we've talked about how that occurs. But if that is the argument, then the question is: Well, do you need to have it like every single time for every single navigation object in the announcement file or -- but it's there only once. And what I'm asserting is that you don't need it there every single time. Like anyone who is basically writing code in the same way would recognize that to be an inefficient and pretty bad way of writing the code. So putting it there once basically is achieving the same function in the same way, to achieve the same result, as just repeating the 0x08 for every single navigation object in the file.[178]

Q:    Just one moment. Back to these questions, I don't do well, but we'll see if I get through it. If the jury were to find there's not literal infringement because the model targeting descriptor in the AutoHop system is shared or assigned to each of the sets of start and stop positions and navigation objects in the announcement file, then do you have an opinion on whether this arrangement -- whether or not this arrangement is substantially different from the navigation object limitation in the -- or from the configuration identifier limitation in the '799 Patent?

---

[176] Tr. (Feamster – Direct) 649:4-13.

[177] Tr. (Feamster – Direct) 650:19-25.

[178] Tr. (Feamster – Direct) 651:3-652:6.

A:    I do have an opinion. My opinion is that it's not substantially different. And my opinion is based on the same -- the same logic, same argument, that we used for the 0x08 announcement files. So remember in that case the question was, well, 0x08 only appears once and the file has this plurality of navigation objects. Doesn't it have to appear for every pair of start and end offsets? And remember I talked us through why my opinion was that it didn't need to do that to achieve the same function in the same way, to achieve the same results, which is doctrine of equivalents. It's the same argument here, just like there's only one 0x08, but you could achieve the same thing with one versus one for each pair. There's only one configuration identifier in the announcement file. There's only one model targeting descriptor. But we know you're sending it to the -- you're sending it to one set-top box. The set-top box that's received it, there's only one of them that's processing it at that time, it would be silly to check every pair of segment bookmarks to see, oh, does this one apply to me? Does this one apply to me? No, that would just be a ridiculous way to write your code. Like the better way to write it is to check it once, and then we know either all these apply or each and every one of them applies or none of them apply.

Q:    Okay. In your answer you said 'segment bookmarks' were –
A:    I'm sorry.

Q:    -- for '799, referring to the announcement file navigation objects?
A:    If I said that, I mean start and end offset pair.[179]

Q:    And you explained to the jury how it would be ridiculous for someone to write code in which there was a separate configuration identifier in every navigation object; right?
A:    I described a particular implementation there. I -- I was describing the announcement file. Okay. And as we talked about in that case, I matched the claim of configuration identifier to model target descriptor. And there's only one of those in the announcement file, which I think we all agree with. And I said it -- I don't know if I used the word "ridiculous," but something to that effect, like it wouldn't make any sense at all to repeat that value multiple times throughout the announcement file. And that it made absolute perfect sense to how I would implement it to have it only once in that file.[180]

      Dr. Feamster did not provide legally sufficient testimony regarding infringement of claim 12 of the '799 Patent under the doctrine of equivalents. Dr. Feamster's testimony above was

---

[179] Tr. (Feamster – Direct) 663:15-665:4.

[180] Tr. (Feamster – Cross) 745:7-20.

conclusory, not particularized, and did not link to the function, way, and result of each limitation, or explain how the components are not substantially different from the claim language.[181]

Additionally, whether something is "inefficient"[182] or "a ridiculous way" of writing code[183] is not the relevant inquiry. The relevant inquiry is what the claim limitations require, and whether the accused products' features read on those limitations by performing the same function, in the same way, to achieve the same result, or are insubstantially different.[184] Dr. Feamster's testimony does not come close to being legally sufficient particularized testimony for the relevant inquiry. In fact, he established substantial differences.[185] By testifying that including the filtering actions and configuration identifiers *within each* navigation object, as is literally claimed, would be so inefficient as to be ridiculous, Dr. Feamster "conceded that [DISH's] products differed from the patented invention."[186] In light of that concession, the question is whether Dr. Feamster "presented evidence that this conceded advantage is an 'insubstantial

---

[181] *See, e.g.*, *Festo*, 493 F.3d at 1377; *Lear Siegler*, 873 F.2d at 1425-26; *Augme*, 755 F.3d at 1336; *Tex. Instruments*, 90 F.3d at 1567.

[182] Tr. (Feamster – Direct) 650:19-652:6.

[183] *See* Tr. (Feamster – Direct) 663:15-664:24; Tr. (Feamster – Cross) 745:7-20.

[184] *See, e.g.*, *Festo*, 493 F.3d at 1377; *Lear Siegler*, 873 F.2d at 1425-26; *Augme*, 755 F.3d at 1336; *Tex. Instruments*, 90 F.3d at 1567.

[185] *Supra* III.C.1, ¶ 38, III.C.2, ¶ 43; *see Amgen*, 923 F.3d at 1029 (finding no infringement "under the doctrine of equivalents because [accused infringer's] one-step, one-solution purification process works in a substantially different way from the claimed three-step, three-solution process"); *Bid for Position, LLC v. AOL, LLC*, 601 F.3d 1311, 1319 (Fed. Cir. 2010) (finding difference in the way "is sufficiently fundamental" that no infringement under DOE); *Perkin-Elmer*, 822 F.2d at 1532 n.6 ("That a claimed invention and an accused device may perform substantially the same function and may achieve the same result will not make the latter an infringement under the doctrine of equivalents where it performs the function and achieves the result *in a substantially different way*.") (emphasis added); *Sealed Air Corp. v. U. S. Int'l Trade Comm'n*, 645 F.2d 976, 984 (C.C.P.A. 1981) (finding no equivalents when accused process did not operate in substantially same way); *B-K Lighting, Inc. v. Vision3 Lighting*, 930 F. Supp. 2d 1102, 1141-42 (C.D. Cal. 2013) ("The Federal Circuit has held that a patent that 'claims a precise arrangement of structural elements that cooperate in a particular way to achieve a certain result' is not infringed by an accused product that achieves the same result 'by a different arrangement of elements.'") (quoting *Sage Prods., Inc. v. Devon Indus., Inc.*, 126 F.3d 1420, 1423-25 (Fed. Cir. 1997)).

[186] *Plastic Omnium Advanced Innovation & Rsch. v. Donghee Am., Inc.*, 943 F.3d 929, 938 (Fed. Cir. 2019).

difference.'"[187] Dr. Feamster's testimony was conclusory[188] and legally insufficient to prove DISH's implementation was insubstantially different from the claim language.[189]

As a point of comparison to what particularized testimony regarding the doctrine of equivalents should be, one need only look to Dr. Goldberg's doctrine of equivalents testimony and opinions on March 7 and 8, transcript pages 1589 to 1598.[190] This reference to Dr. Goldberg does not mean that this Memorandum Decision and Order depends in any way on the substance of Dr. Goldberg's testimony. The court is not relying on or weighing his testimony. Rather, this reference highlights the insufficiency and conclusory nature of Dr. Feamster's testimony on equivalents by comparison to Dr. Goldberg's testimony.

Because Dr. Feamster failed to offer particularized testimony of the function-way-result test, or the insubstantial difference test, for the navigation objects' shared configuration identifier

---

[187] *Id.* (citations omitted).

[188] Tr. (Feamster – Direct) 649:7-13 ("It's not substantially different"), 650:20-22 (similar), 663:17-664:3 (similar).

[189] *See, e.g.*, *Stumbo v. Eastman Outdoors, Inc.*, 508 F.3d 1358, 1364-65 (Fed. Cir. 2007) (finding expert declaration on DOE conclusory when he did not explain either operation or how the differences were insubstantial); *Tex. Instruments*, 90 F.3d at 1567-68 (affirming JMOL because the plaintiff "failed to present sufficient evidence to support a finding of infringement under the doctrine of equivalents," including an expert's testimony that was not particularized and did "not support a finding that the differences were 'insubstantial'"); *Am. Calcar, Inc. v. Am. Honda Motor Co., Inc.*, No. 06CV2433 DMS (CAB), 2007 WL 7757969, at *6 (S.D. Cal. July 10, 2007), *aff'd*, 651 F.3d 1318 (Fed. Cir. 2011) (granting summary judgment when an expert's "statements are conclusory and generalized, and they fail to provide particularized testimony or evidence going to a material fact"); *see also N5 Techs. LLC v. Capital One N.A.*, 56 F. Supp. 3d 755, 763–64 (E.D. Va. 2014) (granting summary judgment because "the differences between two systems are insubstantial requires particularized testimony and linking argument explaining *how* and *why* the differences are insubstantial; *conclusory statements or evidence submitted for other purposes will not suffice*.") (second emphasis added).

[190] Tr. (Goldberg – Direct) 1589:2-1598:14; *compare* Tr. (Feamster – Direct) 650:20-25 ("I think it achieves the same function in substantially the same way, to achieve basically the same results."), 652:1-6 (similar), 664:8-24 (similar) *with* Tr. (Goldberg – Direct) 1592:2-21 (explaining the "function for the claimed filtering action" differs from the function of the "Type 8 indicator"), 1592:22-1593:22 (explaining the way the claimed filtering action is used requires "a separate filtering action for each navigation object," which differs from the way DISH's AutoHop system uses the information in the announcement file), 1593:23-1594:7 (explaining that the claimed filtering action supports filtering that is "just not possible in the DISH system") 1594:22-1595:11 (explaining the function of the claimed configuration identifier), 1595:12-20 (explaining the way the claimed configuration identifier is used by putting "that configuration identifier in the navigation object for each portion to be filtered"), 1595:21-1596:6 (explaining the result of the claimed configuration identifier implementation supports "further customization based on the different kinds of players you can have"), 1596:7-1598:14 (explaining the how the function-way-result of the claimed configuration identifier differ from the model targeting descriptor used in DISH's announcement files).

and filtering action limitations, ClearPlay's evidence of infringement of claim 12 of the

'799 Patent under the doctrine of equivalents is legally insufficient.

### 2.    ClearPlay's evidence for the "navigation object" limitation is legally insufficient for infringement under the doctrine of equivalents

Additionally, ClearPlay's evidence of infringement of claim 12 of the '799 Patent under

the doctrine of equivalents is legally insufficient due to structural variants. Legally, the multi-

object structure cannot be an equivalent of the single-object structure.[191] "The concept of

equivalency cannot embrace a structure that is specifically excluded from the scope of the

claims."[192] "While [the Federal Circuit has] recognized that a literal failure to meet a claim

limitation does not necessarily constitute a specific exclusion, [it has] found specific exclusion

where the patentee seeks to encompass [by equivalents] a structural feature that is the opposite

of, or inconsistent with, the recited limitation."[193] Because the ClearPlay patents made clear that

they claim only a single structure navigation object,[194] a multi-object equivalent cannot possess

---

[191] *B-K Lighting*, 930 F. Supp. 2d at 1141-42 ("The Federal Circuit has held that a patent that 'claims a precise arrangement of structural elements that cooperate in a particular way to achieve a certain result' is not infringed by an accused product that achieves the same result 'by a different arrangement of elements.'") (quoting *Sage Prods.*, 126 F.3d at 1423-25); *see also Perkin-Elmer*, 822 F.2d at 1532 n.6 ("That a claimed invention and an accused device may perform substantially the same function and may achieve the same result will not make the latter an infringement under the doctrine of equivalents where it performs the function and achieves the result *in a substantially different way.*") (emphasis added); Summary Judgment Order at 11 ("The multi-object approach is precluded by this court's claim construction and the ordinary and customary meaning of the Asserted Patents.").

[192] *Augme*, 755 F.3d at 1335 (concluding the court's construction precluded a finding of equivalence) (quoting *Dolly, Inc. v. Spalding & Evenflo Cos., Inc.*, 16 F.3d 394, 400 (Fed. Cir. 1994)) (internal quotations and citations omitted).

[193] *Augme*, 755 F.3d at 1335 (citing to *SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*, 242 F.3d 1337, 1346-47 (Fed. Cir. 2001); *Ethicon Endo-Surgery, Inc. v. U.S. Surgical Corp.*, 149 F.3d 1309, 1317 (Fed. Cir. 1998)).

[194] *See, e.g.*, Trial Ex. 1 ('970 Patent) Abstract ("Each navigation object defines a start position, a stop position, and an filtering action to perform on the portion of the multimedia content that begins at the start position and ends at the stop position."); *see also id.* at 4:49-52, 4:62-67, 11:63-12:10, FIGs. 3A-3C, FIGs. 4A-4B, FIGs. 5A-B.

only insubstantial differences.[195] For this other reason, ClearPlay's shared filtering action and configuration identifier theory fail under the doctrine of equivalents as a matter of law.

## V.     SUMMARY

ClearPlay's claims for infringement, induced infringement, and willful infringement fail as a matter of law because the accused products do not practice the methods of the Asserted Claims of the '970 and '799 Patents and do not literally, or under the doctrine of equivalents, infringe the Asserted Claims. DISH's JMOL[196] is GRANTED and final judgment will enter accordingly. DISH may seek costs as the prevailing party pursuant to Federal Rule of Civil Procedure 54(d)(1).

In light of this ruling of noninfringement pursuant to Rule 50(a), the other issues raised in DISH's motions for judgment as a matter of law, including DISH's motion for judgment as a matter of law regarding damages (and its oral motions made at the close of all evidence),[197] are denied as MOOT. ClearPlay's oral motion for judgment as a matter of law on validity made at the close of evidence[198] is also denied as MOOT.

This resolution of DISH's JMOL may also render moot forthcoming motions by the parties on other issues, such as issues that may be raised under Rule 50(b), 52, and 59, though no

---

[195] *See, e.g.*, Trial Ex. 1 ('970 Patent) Abstract ("Each navigation object defines a start position, a stop position, and an filtering action to perform on the portion of the multimedia content that begins at the start position and ends at the stop position."); *see also id.* at 4:49-52, 4:62-67, 11:63-12:10, FIGs. 3A-3C, FIGs. 4A-4B, FIGs. 5A-B.

[196] Docket no. 862, filed Mar. 3, 2023.

[197] Defendants' Motion for Judgment as a Matter of Law Under Rule 50(a), docket no. 880, filed Mar. 7, 2023; Minute Entry for Proceedings Held Before Judge David Nuffer, docket no. 954, filed Mar. 21, 2023; Tr. (Lynn) 1912:6-1913:13; *Cave Consulting Grp., LLC v. OptumInsight, Inc.*, 725 Fed. App'x 988, 992 (Fed. Cir. 2018); *Cardinal Chem. Co. v. Morton Int'l Inc.*, 508 U.S. 83, 99-102 (1993); *see also, e.g., SSI Techs., LLC v. Dongguan Zhengyang Elec. Mechanical Ltd.*, 59 F.4th 1328, 1338-39 (Fed. Cir. 2023); *AstraZeneca LP v. Breath Ltd.*, 542 F. App'x 971, 982 (Fed. Cir. 2013).

[198] Tr. (Jordan) 1911:23-1912:4; *Cave Consulting*, 725 Fed. App'x at 992; *Cardinal Chem.*, 508 U.S. at 99-102; *SSI Techs.*, 59 F.4th at 1338-39; *AstraZeneca*, 542 Fed. App'x at 982.

position is taken in this Memorandum Decision and Order on the necessity or futility of filing such motions.

## VI.     ORDER

IT IS HEREBY ORDERED that DISH's JMOL[199] is GRANTED.

IT IS FURTHER ORDERED that DISH's motion for judgment as a matter of law regarding damages[200] and DISH's oral motions made at the close of all evidence[201] are denied as MOOT, and ClearPlay's oral motion for judgment as a matter of law on validity made at the close of evidence[202] is denied as MOOT.

The Clerk is directed to close the case.

Signed June 2, 2023

BY THE COURT

David Nuffer
United States District Judge

---

[199] Docket no. 862, filed Mar. 3, 2023.

[200] Docket no. 880, filed Mar. 7, 2023

[201] Tr. (Lynn) 1912:6-1913:13.

[202] Tr. (Jordan) 1911:23-1912:4.